UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
MICHAEL STEPSKI, KIRSTEN STEPSKI, Wife,   :    ECF CASE
GEAL RODERICK and BENJAMIN SCHOBER,       :
                                          :    06 CV 01694 (CM)
                        Plaintiffs,       :
                                          :
        -against-                         :
                                          :
The M/V NORASIA ALYA, her owners,         :
operators, etc., and MS "ALENA"           :
SCHIFFAHRTSGESELLSCHAFT mbH & CO. KG,    :
PETER DOEHLE SCHIFFAHARTS-KG,             :
                                          :
                        Defendants.       :
-----------------------------------------------------------------X

### REPLY MEMORANDUM OF LAW IN SUPPORT OF
### DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

BLANK ROME LLP
Richard V. Singleton
Alan M. Weigel
Attorneys For Defendants
The Chrysler Building
405 Lexington Avenue
New York, New York  10174-0208
Telephone:  212-885-5000

&

FREEHILL HOGAN & MAHAR LLP
Michael Unger
Attorneys for Defendants
80 Pine Street
New York, New York 10005
Telephone: 212-425-1900

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT ..................................................................................................................... 1

POINT I ............................................................................................................................. 1
    THE COURT SHOULD DISREGARD PLAINTIFF'S STATEMENTS IN OPPOSITION TO DEFENDANTS' LOCAL RULE 56.1 STATEMENT BECAUSE THEY ARE IMPERMISSIBLY ARGUMENTATIVE AND FAIL TO CITE TO RELEVANT ADMISSIBLE EVIDENCE.................................................................................... 1

POINT II ............................................................................................................................ 2
    DEFENDANTS' EVIDENCE IN SUPPORT OF PARTIAL SUMMARY JUDGMENT IS ADMISSIBLE .................................................................................................... 2
    A.   Attorneys Singleton and Unger's Affidavits............................................... 2
    B.   Deposition Testimony .................................................................................. 3
    C.   USCG Documents ........................................................................................ 3
    D.   Captain Kowalewski's Declaration and Annexed Exhibits ......................... 5

POINT III ........................................................................................................................... 7
    THE UNCONTRADICTED EVIDENCE DEMONSTRATES THAT AVA CLAIRE'S NAVIGATION WAS GOVERNED BY COLREG 19 ...................................... 7

POINT IV ........................................................................................................................... 9
    THERE IS NO BASIS IN FACT OR LAW TO SUSTAIN PLAINTIFFS' PUNITIVE DAMAGES CLAIM ................................................................................................ 9

POINT V ............................................................................................................................ 10
    KIRSTEN STEPSKI HAS FAILED TO MAKE OUT A *PRIMA FACIE* CASE FOR EMOTIONAL DAMAGE ..................................................................................... 10

POINT VI .......................................................................................................................... 11
    KIRSTEN STEPSKI'S CLAIM IS BARRED UNDER THE GENERAL MARITIME LAW FOR LOSS OF CONSORTIUM .................................................................. 11

POINT VII ......................................................................................................................... 13
    THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT PLAINTIFFS FAILED TO MITIGATE THEIR DAMAGES ........................................................ 13

POINT VII ......................................................................................................................... 14
    DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT IN RESPECT TO THEIR COUNTERCLAIMS ................................................................................... 14

CONCLUSION .................................................................................................................. 15

601230.00001/6739939v.1

# TABLE OF AUTHORITIES

## FEDERAL CASES

Ariza v. City of New York, 139 F.3d 132 (2d Cir. 1998)...................................................................4

Bridgeway Corp. v. Citibank, 201 F.3d 134 (2d Cir. 2000) ..............................................................4

Brooks v. Miles, No. 98 Civ. 5763, 2001 U.S. Dist. LEXIS 10677 (S.D.N.Y. May 9, 2001) ................................................................................................................................2

CEH, Inc. v. F/V Seafarer, 70 F.3d 694 (1st Cir. 1995) ..............................................................10, 11

Campoli v. Chubb Group of Insurance Cos., No. 04 CV 1004, 2006 U.S. Dist. LEXIS 1564 (S.D.N.Y.)..............................................................................................14

Chemical Bank v. Hartford Acci. & Indemnity Co., 82 F.R.D. 376 (S.D.N.Y. 1979) ................................................................................................................................5

In re Danos & Curole Marine, 278 F. Supp. 2d 783 (E.D. La. 2003)..................................4

Friedman v. Cunard Line Ltd., 996 F. Supp. 303 (S.D.N.Y. 1998)..................................11

Gulf USA Corp. v. Federal Insurance Co., 259 F.3d 1049 (9th Cir. 2001).........................3

Hollander v. American Cyanamid Co., 172 F.3d 192 (2d Cir. 1999)..................................3

In Re Horizon, 101 F. Supp. 2d 20, 241 (S.D.N.Y. 2000)..................................................13

Igneri v. Cie de Transport Oceaniques, 323 F.2d 257 (2d Cir. 1963) ...............................12

Jack Schwartz Shoes v. Skechers U.S.A., No. 00 Civ. 7721, 2002 U.S. Dist. LEXIS 25699 (S.D.N.Y. Sept. 10, 2002) .....................................................................6

Leboeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham, 185 F.3d 61 (2d Cir. 1999) ................................................................................................................................5

Maritime & Mercantile International L.L.C. v. United States, No. 02 CV 1446, 2007 U.S. Dist. LEXIS 19792 (S.D.N.Y. Feb. 28, 2007)..............................................8

Miles v. Apex Marine Corp., 498 U.S. 19, 32 (1990) ..................................................11, 12

Mitchell v. Victoria Home, 377 F. Supp. 2d 361 (S.D.N.Y. 2005) ....................................4

Mobile Oil Co. v. Higginbotham, 436 U.S. 618 (1978) ....................................................12

Nycal Corp. v. Inoco PLC, 988 F. Supp. 296 (S.D.N.Y. 1997)...........................................3

Otal Investments Ltd. V. M/V CLARY, 494 F.3d 40 (2d Cir. 2007)............................8, 10

Pacheco v. Serendensky, 393 F.3d 348 (2d Cir. 2004).......................................................14

Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438 (2d Cir. 1980)....................1

Reed v. Aetna Casualty & Sur. Co., 160 F.R.D. 572 (N.D. Ind. 1995 ...............................2

Trans-Orient Marine Corp. v. Star Trading & Marine, Inc., 925 F.2d 566 (2d Cir.
    1991) ..............................................................................................................................5

Union Carbide Corp. v. Montell N.V., 179 F.R.D. 425 (S.D.N.Y. 1998) ...........................1

Uzdavines v. Weeks Marine, Inc., 418 F.3d 138 (2d Cir. 2005) .......................................15

Yamaha Motor Corp. v. Calhoun, 516 U.S. 199 (1996).....................................................12

601230.00001/6739939v.1

**PRELIMINARY STATEMENT**

Defendants MS "ALENA" Schiffahrts GmbH & Co. KG and Peter Doehle Schiffaharts-KG, owner and manager of M/V NORASIA ALYA ("NORASIA ALYA")(collectively, "Defendants"), submit this Reply in support of their motion for summary judgment. Defendants also submit a further Local Rule 56.1 Statement ("Def.'s 56.1 Reply") reply to "Plaintiffs' Counter-Statement in Opposition to Defendants' Local Rule 56.1(a) Statement" (Plaintiffs did not submit a 56.1 statement as required by Local Rules) and the Reply Affidavit of Richard V. Singleton, Esq. sworn to May 1, 2009 ("Singleton Reply Aff.").

**ARGUMENT**

**POINT I**

**THE COURT SHOULD DISREGARD PLAINTIFF'S STATEMENTS IN OPPOSITION TO DEFENDANTS' LOCAL RULE 56.1 STATEMENT BECAUSE THEY ARE IMPERMISSIBLY ARGUMENTATIVE AND FAIL TO CITE TO RELEVANT ADMISSIBLE EVIDENCE**

Local Rule 56.1 requires a party opposing summary judgment to respond with a statement of material facts, with citations to admissible evidence as to which triable issues remain. A litigant opposing summary judgment "may not rest upon mere conclusory allegations or denials as a vehicle for obtaining a trial." Quinn v. Syracuse Model Neighborhood Corp., 613 F.2d 438, 445 (2d Cir. 1980). Statements of "fact" that are simply a summary of the arguments a party will make at trial are a "derogation" of Local Rule 56.1 and may be disregarded by the Court. Union Carbide Corp. v. Montell N.V., 179 F.R.D. 425 (S.D.N.Y. 1998). And where a party opposing a motion for summary judgment fails to submit a statement of the material facts that the party believes are in dispute, the Court may accept all of the facts in the moving party's properly filed Rule 56.1 Statement as uncontroverted and admitted for purposes of addressing its

1

summary judgment motion.  Brooks v. Miles, No. 98 Civ. 5763, 2001 U.S. Dist. LEXIS 10677, *12-13 (S.D.N.Y. May 9, 2001).

Plaintiffs did not submit a Rule 56.1 Statement choosing instead to criticize Defendants' Local Rule 56.1(a) Statement. This is insufficient to create a dispute of material fact.  Moreover, Plaintiffs' "Counter-Statement" is replete with impermissible arguments and statements unsupported by citations to admissible evidence.  Defendants have submitted a further Rule 56.1 Statement identifying those "statements" of Plaintiffs that should be disregarded by the court.

## POINT II

### DEFENDANTS' EVIDENCE IN SUPPORT OF PARTIAL SUMMARY JUDGMENT IS ADMISSIBLE

Plaintiffs raise several collateral attacks on the evidence submitted by Defendants in support of their motion, which attacks are without merit as a matter of fact, or law, or both.

**A.**     **Attorneys Singleton and Unger's Affidavits**

Rule 56 expressly contemplates the submissions of affidavits in support of summary judgment motions.  An affidavit is not improper simply because it was signed by an attorney of record.  Reed v. Aetna Cas. & Sur. Co., 160 F.R.D. 572 (N.D. Ind. 1995)(attorney's affidavit concerning discovery materials of which he had personal knowledge admissible under Rule 56(e)).  The Singleton and Unger Affidavits were submitted to place before the Court "true and correct copies" of sworn testimony and documents obtained or produced during discovery, as required by Fed. R. Civ. P. 56(e)(1).  Any further facts contained in either affidavit are summaries or quotes from the referenced transcripts or documents were to inform the Court of the document's relevance and were not intended to submit any facts independent of the testimony or documents.  To the extent the Court determines that such summaries or quotes are

improper, the Court should only strike those portions and not the entire affidavits or the exhibits annexed to them. Hollander v. American Cyanamid Co., 172 F.3d 192, 198 (2d Cir. 1999).

B.  **Deposition Testimony**

Plaintiffs' argument that the Court should not consider Plaintiffs' own deposition testimony or the deposition testimony of the crew of NORASIA ALYA is frivolous. Sworn deposition testimony may be used against a party on summary judgment. Gulf USA Corp. v. Fed. Ins. Co., 259 F.3d 1049, 1056 (9th Cir. 2001). Such testimony is considered to be an affidavit pursuant to Federal Rule of Civil Procedure 56(c), and may be used against a party on summary judgment as long as the testimony was made on personal knowledge and sets forth facts that were admissible in evidence. Nycal Corp. v. Inoco PLC, 988 F. Supp. 296, 300 (S.D.N.Y. 1997). The depositions challenged here were taken under oath and concerned matters of which the deponents had personal knowledge, and Plaintiffs have not objected to any facts stated in the depositions as inadmissible. Accordingly, there are no grounds for the Court to strike the transcripts.[1]

C.  **USCG Documents**

The USCG message cancelling the search for AVA CLAIRE (Singleton Aff., Ex. G) and the USCG press release reporting the helicopter rescue (Singleton Aff., Ex. F) objected to by Plaintiffs (Pls.' Br. at 3, 5) are not excludable under either statutory or hearsay grounds. Under 46 U.S.C. § 6308(a), "findings of fact, opinions, recommendations, deliberations, or conclusions" contained in a USCG marine casualty investigation are inadmissible as evidence in civil proceedings. The documents be attached as exhibits to a USCG report, however, are not

---

[1] The speciousness of Plaintiffs' request to strike the deposition testimony is amply demonstrated by the fact that Plaintiffs' themselves make numerous references to deposition testimony in their opposition and attempted cross-motion. (See, e.g., Pls.' Br. at 7 – 8 and Pls.' Rule 56.1(a) Statement.)

3

inadmissible.  In re Danos & Curole Marine, 278 F. Supp. 2d 783, 785 (E.D. La. 2003). Accordingly, the USCG message is not inadmissible on statutory grounds.[2]

Plaintiffs' evidence also is not excluded under Federal Rule of Evidence 803(8)(C), which allows "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."[3] Once a party demonstrates compliance with the minimum requirements of the Rule 803(8)(c), the admissibility of such factual findings is presumed.  Bridgeway Corp. v. Citibank, 201 F.3d 134, 143-144 (2d Cir. 2000).  The burden to show "a lack of trustworthiness" then shifts to the party opposing admission.  Ariza v. City of New York, 139 F.3d 132, 134 (2d Cir. 1998).

In this case, the USCG message and the press release are reporting "factual findings." Moreover, the message and press release were prepared pursuant to legal authority: federal law requires that the USCG establish and operate rescue facilities, 14 USCS §§ 2, and authorizes USCG to perform any and all acts necessary to rescue and aid persons and protect and save property.  14 USCS § 88(a)(1).  Accordingly, the message and press release[4] are presumptively admissible and Plaintiff has offered no grounds to strike them.

---

[2] The speciousness of this argument is amply demonstrated by the fact that Plaintiffs' own Rule 56.1(a) Statement in support of their cross-motion makes repeated references to and attaches an page from the USCG Findings of Fact

[3] When evaluating the trustworthiness of a factual report, the court looks to (a) the timeliness of the investigation, (b) the special skills or experience of the official, (c) whether a hearing was held and the level at which it was conducted, and (d) possible motivation problems.  See Fed. R. Evid. 803(8)(C) advisory committee's note.  With the exception of (c), which is not determinative by itself, cf. id. ("The rule . . . assumes admissibility in the first instance but with ample provision for escape if sufficient negative factors are present.") and not relevant in the present context, nothing about the message or press release calls into question their reliability with respect to these factors. The message and press release were prepared on the day of Plaintiffs' accident and were therefore investigated in a timely manner.  And nothing in the record or in Plaintiffs' brief indicates that the USCG had any motive for misrepresenting the facts.

[4] The Court may also take judicial notice of the government issued press release as a matter of public record. Mitchell v. Victoria Home, 377 F. Supp. 2d 361, 367 (S.D.N.Y. 2005).

4

**D.     Captain Kowalewski's Declaration and Annexed Exhibits**

Rule 56(e) provides that a motion for summary judgment may be accompanied by sworn affidavits setting forth admissible facts based on personal knowledge.  In accordance with 28 U.S.C. § 1746 (1988), unsworn declarations, dated and subscribed by the declarant as true under penalty of perjury, using language identical to that suggested in §1746, may be substituted for affidavits.  <u>Leboeuf, Lamb, Greene & MacRae, L.L.P. v. Worsham</u>, 185 F.3d 61, 65-66 (2d Cir. 1999).  Captain Kowalewski's declaration complies with the requirements of §1746 and is clearly based on his personal knowledge of the "circumstances occurring on May 22, 2004 and afterward" on NORASIA ALYA.

Plaintiffs set forth no factual allegations that contradict the facts presented in Captain Kowalewski's declaration. Instead, they argue that Captain Kowalewski's declaration and the annexed exhibits are "untrustworthy," "non-probative" and lacking in "candor." (<u>See</u> Rider to Pls.' Br.)

First, a "naked attack upon the affidavits of a moving party, without more, is insufficient to place the credibility of the affiant in issue." <u>Chemical Bank v. Hartford Acci. & Indem. Co.</u>, 82 F.R.D. 376, 378 (S.D.N.Y. 1979).  Plaintiff "must set forth specific facts" demonstrating that there is a genuine triable issue concerning the credibility of the affiant. <u>Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.</u>, 925 F.2d 566, 572-573 (2d Cir. 1991).  This Plaintiffs have not and can not do.

Second, Plaintiffs' criticism of Captain Kowalewski's declaration mis-represents both his statements and the record.  Captain Kowalewski clearly states that, at the time of the collision, the visibility was so poor that he could not see the bow of his own vessel. (Kowalewski Dec. at ¶20.)  He makes no admission that he violated the COLREGS, and, even if violations can be inferred from his statements, there can be no inference that Defendants were aware of or

5

approved such violations. (Kowalewski Dec. at ¶14.) Further, Captain Kowalewski states that icebergs were encountered "during the transit" (Kowalewski Dec. at 13), not "off Long Island on 22 May" as suggested by Plaintiffs.

Plaintiffs' criticism of the exhibits annexed to Captain Kowalewski's declaration is similarly misplaced. Plaintiffs object to Exhibit 1 to Captain Kowalewski's declaration ("Statement of Facts") as incompetent evidence. (Pls.' Br. at 5.) They fail to specify, however, the disabilities which render the exhibit incompetent. Although the Statement of Facts is "unsworn," it is dated, "certified" as true by Captain Kowaleswki and the other three deck officers on NORASIA ALYA, and signed by them. It was attached to and authenticated by Captain Kowalewski's declaration. Accordingly, it may be considered by the Court as competent evidence. See, e.g., Jack Schwartz Shoes v. Skechers U.S.A., No. 00 Civ. 7721, 2002 U.S. Dist. LEXIS 25699 (S.D.N.Y. Sept. 10, 2002), adopted by 233 F. Supp. 2d 512 (S.D.N.Y. 2002).

Plaintiffs' criticism of Exhibit 3 (a photograph of NORASIA ALYA's radar display) is misleading. Captain Kowalewski did not state that the picture was taken on May 21, 2004 (Kowalewski Dec. ¶6) or that it was intended to show the radar picture that existed at the time of the alleged collision. Plaintiffs' criticism of Exhibit 6 ("Master's Standing Orders") ignores Captain Kowalewski's testimony that identical orders were in effect on May 22, 2004. (Kowalewski Tr. at 249.) Plaintiff's criticism of Exhibit 5 (email messages)[5], which Plaintiffs concede were sent to NORASIA ALYA by the vessel's charterers, and not to Defendants, is

---

[5] The messages were produced prior to, and marked at, Captain Kowalewski's deposition on September 12, 2007, (as part of Exhibit 13), not, as Plaintiffs suggest, for the first time as part of Defendants' motion. Moreover, Captain Kowalewski stated they were "email" not "radio" messages (Kowalewski Dec. at ¶13), making irrelevant Plaintiffs' criticism about "radio" logs, which, in any case, Defendants deny.

6

wholly speculation unsupported by citations to evidence. Accordingly, there are no valid grounds for the Court to strike Captain Kowalewski's declaration or any of the annexed exhibits.

## POINT III

### THE UNCONTRADICTED EVIDENCE DEMONSTRATES THAT AVA CLAIRE'S NAVIGATION WAS GOVERNED BY COLREG 19

COLREG 19 applies to vessels "not in sight of one another when navigating in or near areas of restricted visibility." [emphasis added]. The unrefuted testimony of Stepski, Schober and Roderick was that, at the time of their accident, the visibility was restricted by fog to nearly zero and that the approaching vessel was not seen until seconds before the alleged collision. (Stepski Tr. 190 – 91; Schober Tr. 60; Roderick Tr. 171.) Accordingly, when Stepski detected the approaching vessel on radar (Stepski Tr. at 153 – 54) he was obligated by COLREGS 19(d) to take action to avoid a collision. COLREG 18(a), which only applies to vessels "in sight of one another," was inapplicable, and Stepski was not allowed to assume the status of a stand-on fishing vessel with right-of-way over the approaching NORASIA ALYA.

Plaintiffs' argument that NORASIA ALYA "should have seen" AVA CLAIRE (Pls.' Br. at 7 – 8) misses the point. NORASIA ALYA's actions are not the issue. Nothing that Plaintiffs allege happened or was known on NORASIA ALYA's bridge (id.) could have relieved Stepski of his duty under COLREG 19 to take avoiding action. Nor is there an exception in COLREG 19 for fishing vessels or for navigating near fishing grounds which relieved Stepski of that duty.

Plaintiffs' focus on NORASIA ALYA's alleged faults is a disingenuous and baseless attempt to avoid their own liability. Contrary to Plaintiffs' argument, there is no provision in any of the COLREGs or in the case law interpreting them that imposes a "duty to see" another vessel when operating in restricted visibility. Significantly, Plaintiffs cite no legal authority in support of their argument. (Pls.' Br. at 7.) Instead they cite evidence alleging NORASIA ALYA's poor

7

seamanship, which is irrelevant, mis-leading or mis-represents Captain Kowalewski's testimony. And on the single most determinative issue, i.e., the visibility at the time of the alleged collision, Plaintiffs offer only the conclusory statements that "[t]he uncontradicted proof shows that the vessels were in sight" or that AVA CLAIRE "could be seen" (Pls. Br. at 6), both of which are devoid of evidentiary support.

Further, Plaintiffs fail to cite a single legal authority which supports their novel argument that both COLREG 18 and COLREG 19 can apply to the same vessel at the same time. Plaintiffs' citation to Otal Investments Ltd. V. M/V CLARY, 494 F.3d 40 (2d Cir. 2007), misconstrues that case's facts and legal holding.  Otal involved three vessels, two of which, KARIBA and CLARY could not see each other because they were operating in heavy fog and the Second Circuit clearly held that each was obligated to take action according to Rule 19.  A third vessel, TRICOLOR, was overtaking KARIBA, but had KARIBA's stern light in sight. Accordingly, the court held that TRICOLOR was obligated under COLREGS 13 and 16 to keep out of KARIBA's way.

Plaintiffs' citation to Mar. & Mercantile Int'l L.L.C. v. United States, No. 02 CV 1446, 2007 U.S. Dist. LEXIS 19792 (S.D.N.Y. Feb. 28, 2007), is equally mis-placed.  In Mar & Mercantile, this Court found that the vessels involved in the collision were operating in heavy fog and held that their actions were governed by COLREG 19.  This Court specifically held that COLREG 18 was not applicable. Id. at *128 – 131.

Accordingly, because there is no genuine issue concerning the material fact that visibility was restricted at the time of the collision, the Court should grant partial summary judgment holding, as a matter of law, that COLREG 19 governed AVA CLAIRE's navigation.

8

**POINT IV**

**THERE IS NO BASIS IN FACT OR LAW TO SUSTAIN PLAINTIFFS' PUNITIVE DAMAGES CLAIM**

Plaintiffs concede that neither the Supreme Court nor the Second Circuit has held that punitive damages can be awarded against a ship owner for the acts of a master where the ship owner did not authorize or ratify the acts or where the master is not acting as managerial official with authority to make decisions for the owner.  Far from being the "restrictive minority view" (Pls.' Br. at 15), this approach is followed by all circuits that have considered the issue, except the Ninth.

Plaintiffs' remaining arguments lack in both evidentiary and legal support.  None of the so-called "facts" alleged by Plaintiffs as evidence of "willful, wanton, reckless indifference" (Pls.' Br. at 9 – 10) are supported by a single citation to admissible evidence.  None of these allegations are evidence of willfulness, wantonness or recklessness on the part of anyone on NORASIA ALYA.  The most the Court could find is that a few of these acts – even if taken as true – could be negligent violations of the COLREGS.  But Plaintiffs have not cited to a single case where punitive damages were awarded for violating the COLREGS.

More importantly, even if these allegations could be characterized as willful, wanton or reckless, there is no evidence that Defendants participated in, were aware of or ratified the behavior. Plaintiffs allegations of "acts of acquiescence, participation or approval" by Defendants similarly are unsupported by citations to evidence. (Pls.'s Br. at 10 -11.)  They are <u>not</u> facts at all – only Plaintiffs' conclusory allegations about the operation of NORASIA ALYA. For example, there is no proof that Defendants set the vessels' schedule, pressured Captain Kowalewski to maintain a schedule, or was aware of the vessels speed and weather conditions at the time of the alleged collision.  In fact, the vessel's schedule was set without any involvement

9

by Defendants. (Kowalewski Dec. at ¶13.) Plaintiffs' allegation that the radio log has not been produced (Pls.' Br. at 11) likewise is untrue. NORASIA ALYA's GMDSS Radio Log was produced as part of its Fed. R. Civ. P. 26(a)(1) Initial Disclosures.[6] (Singleton Reply Aff., Ex. "M.") Accordingly, Plaintiffs unsupported allegations are insufficient to create an issue of material fact and defeat Defendants' motion for partial summary judgment on Plaintiffs' claim for punitive damages.

Plaintiffs misconstrue the facts and holding in CEH, Inc. v. F/V Seafarer, 70 F.3d 694 705 (1st Cir. 1995). (Pls.' Br. at 12 – 15, 17.) In Seafarer, in finding the ship owner liable for the master's wanton acts, the court also found the master had "nearly absolute managerial authority" and was not simply the owner's agent. Further, the court cautioned against imposing liability in circumstances that did not demonstrate any fault on the part of the ship owner. Id.

Defendants concede that Captain Kowalewski was in command of NORASIA ALYA's navigation. But that was where his authority ended. Captain Kowalewski was not a management official of either Defendant with authority to make decisions or to set policy, which is the level of authority required to subject either Defendant to punitive damages. Accordingly, Defendants are entitled as a matter of law to partial summary judgment dismissing Plaintiffs' Seventh and Eighth causes of action seeking an award of punitive damages.

## POINT V

**KIRSTEN STEPSKI HAS FAILED TO MAKE OUT A *PRIMA FACIE* CASE FOR EMOTIONAL DAMAGE**

Plaintiffs' opposition is remarkable not for what it says, but for what it ignores. Plaintiffs completely ignore Defendants' primary argument that Mrs. Stepski's claim cannot be maintained since she was not on board the AVA CLAIRE and thus not within the zone of danger at the time

---

[6] Plaintiffs' citation to Otal Invest. Ltd. V. M/V CLARY, supra, is inapposite. In Otal, the Court sanctioned CLARY for the falsification of logs; the court did not award punitive damages.

of the collision – a necessary predicate of recovery under the applicable law. Plaintiffs cite to no case law or other legal authority in support of her claim and make no attempt whatsoever to address or distinguish the case law cited by Defendants.

Plaintiffs likewise have failed to offer any proof that Mrs. Stepski experienced any physical injury or manifestation of bodily harm as a result of the collision – another necessary requirement. Mrs. Stepski simply alleges that she was pregnant and that her physical condition allegedly "worsened" after she learned from the U.S.C.G. the AVA CLAIRE's EPIRB had activated. No record of a physician is submitted to support her claims. This is not surprising as she admitted having no complications during her pregnancy or post-birth following the accident. (K. Stepski Tr. 134). Furthermore, Mrs. Stepski did not commence her drive to Cape Cod until after learning her husband had been safely rescued (Id. at 113, 114).

Mrs. Stepski has thus failed to raise a genuine issue of fact and her claim for emotional damages must be dismissed.

## POINT VI

**KIRSTEN STEPSKI'S CLAIM IS BARRED UNDER THE GENERAL MARITIME LAW FOR LOSS OF CONSORTIUM**

Plaintiffs try to distort the law relating to the loss of consortium by claiming that <u>Miles v. Apex Marine Corp.</u>, 498 U.S. 19 (1990), created "confusion" and "was limited to actions brought under statutorily created rights." (Pls.' Br. at 21-22). Contrary to Plaintiffs' contentions, the <u>Miles</u> decision settled the law in this area, squarely holding that the general maritime law does not provide a cause of action for loss of consortium caused by an injury occurring on the high seas. (<u>See</u> cases discussed in Defendants' moving brief including Judge Haight's opinion in <u>Friedman v. Cunard Line Ltd.</u>, 996 F. Supp. 303, 313 (S.D.N.Y. 1998)).

Plaintiffs admit in their Supplemental Amended Complaint that the general maritime law governs the claims of the "seamen" Plaintiffs and Mrs. Stepski. (See ¶¶ 1, 10, 11). Plaintiffs likewise do not dispute that the alleged accident occurred on the high seas. Miles therefore mandates summary judgment for Defendants on this issue.

Plaintiffs attempt to avoid Miles by relying on Yamaha Motor Corp. v. Calhoun, 516 U.S. 199 (1996). But in Yamaha the parents of a child killed in a jet ski accident sought damages from the jet ski manufacturer under *state law*. As the accident occurred in territorial waters, Miles did not apply and the Court allowed the importation of select state law remedies into the maritime wrongful death cause of action. The present case on the other hand, falls squarely with Miles. It involves a loss of consortium claim under the general maritime law for an accident occurring on the high seas.

Plaintiffs further aver that "Consortium remains viable unless directly clashing with Congressional intent". However, Plaintiffs cite no authority for the notion that loss of consortium damages are recoverable in an action under the general maritime law involving the wife of a seaman. Plaintiffs fail to appreciate that such recovery indeed would conflict with Congressional intent. Both the Jones Act (46 U.S.C. Appx. 688 et seq.) and Death on the High Seas Act (DOHSA) (46 U.S.C. Appx. 761 et seq.) do not permit recovery for non-pecuniary damages in the instant circumstances. See Mobile Oil Co. v. Higginbotham, 436 U.S. 618 (1978) (denying any recovery under DOHSA for loss of society); Igneri v. Cie de Transport Oceaniques, 323 F.2d 257 (2d Cir. 1963). Similarly, under the Jones Act, remedies of seamen injured or killed on the high seas are limited to pecuniary damages. Miles, 498 U.S. at 32.

The only other case cited by Plaintiffs is In Re Horizon, 101 F. Supp. 2d 204 (S.D.N.Y. 2000),[7] which concerned a punitive damage claim of a cruise ship passenger, not a claim for loss of consortium by the spouse of a seaman.  Plaintiffs' reliance on Horizon thus is misplaced.

The law relating to Kirsten Stepki's loss of consortium claim is clear and the facts are undisputed.  Kirsten Stepki's loss of consortium claim must be dismissed.

## POINT VII

**THERE IS NO GENUINE ISSUE OF MATERIAL FACT THAT PLAINTIFFS FAILED TO MITIGATE THEIR DAMAGES**

Plaintiffs' sole "opposition" to Defendants' argument that partial summary judgment should be granted due to Plaintiffs' failure to mitigate their damages is to complain that Defendants have somehow "misled the Court" and have not "preserved the issue". (Pls. Br. at 1-2). Both charges are false.[8]

The Twelfth Affirmative Defense set forth in Defendants' Answer to Plaintiffs' Supplemental Amended Complaint clearly preserves the failure to mitigate defense. The affirmative defense states, "Plaintiffs' alleged damages, if any, all of which are expressly denied, had been aggravated by Plaintiffs' failure to use reasonable diligence to mitigate them."[9] Full discovery was had as to the mental health claims of each of the Plaintiffs including what steps, if any, they took towards obtaining treatment. Only Michael Stepski and Geal Roderick visited with any mental health professional following the collision. Both discontinued after a few brief sessions with Dr. Small who indicated that she would have continued to treat them without payment subject to their promise to pay at the conclusion of this case.  Plaintiffs offer no

---

[7] Incorrectly cited as In Re Horizon, 101 F. Supp. 2d 241.

[8] The issue as to moving for partial summary judgment in respect to maintenance and cure was raised at the October 21, 2008 pre-motion conference, and Your Honor authorized the Defendants to so move on that issue.

[9] Defendants' Eighth Affirmative Defense also pleads that "if Plaintiffs sustained any injuries and/or damages as alleged … said injuries and/or damages were caused in whole or in part by Plaintiffs' …own willful acts, defaults or misbehavior."  Certainly, failing to obtain treatment when available is a willful act or default which should be held to be failure to mitigate.

13

response to the case law cited by Defendants, which holds that in failing to seek assistance and/or by discontinuing treatment, Plaintiffs are held, as a matter of law, to have failed to mitigate their damages. Accordingly, Defendants' motion for partial summary judgment finding that Plaintiffs have failed to mitigate their damages by seeking and/or obtaining treatment should be granted.

## POINT VII

**DEFENDANTS ARE ENTITLED TO SUMMARY JUDGMENT IN RESPECT TO THEIR COUNTERCLAIMS**

Defendants' motion for summary judgment on their counterclaims is proper and timely. Despite Plaintiffs' protestations, there has been substantial discovery in this case. That Plaintiffs may have chosen not to pursue discovery on an issue when afforded the opportunity cannot now provide the basis for the Court not to consider the counterclaim and instant motion.

Although Plaintiffs now wish to assert that Stepski is not the owner of the AVA CLAIRE, this fact has already been judicially admitted by Plaintiffs at ¶ 20 of their Supplemental Amended Complaint which specifically alleges, "Michael Stepski was at the time of the accident the owner of the AVA CLAIRE."

Plaintiffs are estopped from now denying this fact. Pacheco v. Serendensky, 393 F.3d 348 (2d Cir. 2004), citing Bellefonte Re Ins. Co. v. Argonaut Ins. Co., 757 F.2d 523, 528 (2d Cir. 1985) ("A party's assertion of fact in a pleading is a judicial admission by which [the party] normally is bound throughout the course of the proceeding."); accord Campoli v. Chubb Group of Ins. Cos., No. 04 CV 1004, 2006 U.S. Dist. LEXIS 1564 (S.D.N.Y.).

Plaintiffs also challenge whether they are seamen and thus covered under the Jones Act despite, again, admitting their status as such in their Supplemental Amended Complaint. (See ¶¶ 1, 13, 14). Plaintiffs' further attempt to escape their admission that Roderick and Schober were

14

"seamen" by claiming that Roderick regularly worked for his father and Schober was a shoreside cook before the incident are unavailing. The Supreme Court has unequivocally held "there [is] no…need to examine the nature of an employee's duties with prior employers". <u>Harbor Tug & Barge Co. v. Papai</u>, 520 U.S. 548, 557 (1997). Jones Act status does not turn exclusively on whether the plaintiffs' connection to the vessel "was temporary, rather than of indefinite or permanent duration." <u>Uzdavines v. Weeks Marine, Inc.</u>, 418 F.3d 138, 145 (2d Cir. 2005). The assessment of the substantiality of vessel-related work must be made on the basis of plantiffs' activities in their new position. <u>Chandris, Inc. v. Latsis</u>, 515 U.S. 347, 372 (1995).

As admitted owner of the vessel, Stepski had a non-delegable duty to provide maintenance and cure to Roderick and Schober.[10]  As such, to the extent Plaintiffs Roderick and Schober were damaged by reason of Stepski's failure to pay maintenance and cure, Defendants are entitled to indemnity and/or contribution from Stepski for breach of his cure obligations.

## **CONCLUSION**

Based on the foregoing, Defendants respectfully request that the Court enter partial summary judgment.

Dated: New York, New York
　　　　May 1, 2009

Respectfully submitted,

| BLANK ROME LLP | FREEHILL HOGAN & MAHAR LLP |
|---|---|
| /s/Richard V. Singleton | /s/Michael Unger |
| Richard V. Singleton, II | Michael Unger |
| Attorneys for Defendants | Attorneys for Defendants |
| 405 Lexington Avenue | 80 Pine Street |
| New York, New York 10174-0208 | New York, New York 10005 |
| Telephone:  (212) 885-5259/ | Telephone: 212-425-1900 |
| Facsimile:  (917) 332-3730 | Facsimile: 212-425-1901 |
| E-Mail: rsingleton@blankrome.com | E-Mail: munger@freehill.com |

---

[10] Despite that Roderick did see Dr. Small on a few occasions. Stepski failed to pay Dr. Small's bills for treatment which resulted in Roderick ceasing treatment.