BLANK ROME LLP
Attorneys for Defendants
The Chrysler Building
405 Lexington Avenue
New York, New York  10174-0208
(212) 885-5000
Richard V. Singleton (RS-9489)
Alan M. Weigel (AW-0800)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------------X

MICHAEL STEPSKI, KIRSTEN STEPSKI, Wife,
GEAL RODERICK and BENJAMIN SCHOBER,

                  Plaintiffs,

            -against-

The M/V NORASIA ALYA, her owners,
operators, etc., and MS "ALENA"
SCHIFFAHRTSGESELLSCHAFT mbH & CO. KG,
PETER DOEHLE SCHIFFAHARTS-KG,

                  Defendants.

-------------------------------------------------------------------X

ECF CASE

06 CV 01694 (CM)

**DEFENDANTS' REPLY TO PLAINTIFFS' OPPOSITION TO LOCAL RULE 56.1 STATEMENT**

Defendants MS "ALENA" Schiffahrts GmbH & Co. KG and Peter Doehle Schiffaharts-KG, owner and manager of M/V NORASIA ALYA ("NORASIA ALYA"), by their attorneys, Blank Rome LLP, replying to Plaintiffs' opposition to Defendants' statement of material facts as to which there exists no genuine issue to be tried, state as follows:

## GENERAL REPLIES

**A.**     Plaintiffs' Local Rule 56.1(a) statements should be disregarded as impermissibly argumentative and for failing to cite to relevant admissible evidence. Local Rule 56.1(b) requires a party opposing summary judgment to respond with a statement of facts as to which a triable issue remains.  Local Rule 56.1(d) requires statements of material facts be followed by citations to admissible evidence.  Watt v. New York Botanical Garden, No. 98 Civ. 1095, 2000 U.S. Dist. LEXIS 1611, at *2 n.1 (S.D.N.Y. Feb. 16, 2000)("where there are no citations or where the cited materials do not support the factual assertions in the Statements, the Court is free to disregard the assertion.")   Plaintiffs'   56.1(a)   Counter-Statement,   however,   is   replete   with impermissible arguments and statements unsupported by citations to admissible evidence. Defendants have submitted specific replies to Plaintiffs' statements cataloging these deviations from Local Rule 56.1.  All of these impermissible paragraphs cited herein should be disregarded by the court.

**B.**     The Affidavits of attorneys Richard Singleton and Michael Unger are competent to submit exhibits in support of Defendants' motion.  The Singleton and Unger Affidavits were submitted to place before the Court "true and correct copies" of sworn testimony and documents obtained or produced during discovery, as required by Fed. R. Civ. P. 56(e)(1).  The affidavits are competent for that purpose.

**C.**     Sworn deposition testimony is considered to be an affidavit pursuant to Federal Rule of Civil Procedure 56(c), and may be used against a party on summary judgment as long as the proffered depositions were made on personal knowledge and set

2

forth facts that were admissible in evidence.  The depositions submitted by Defendants in support of their motion satisfy this rule.  They were taken under oath and concerned matters of which the deponents had personal knowledge.  Moreover, Plaintiffs have not objected to any facts stated in the depositions as inadmissible.

    **D.**    Captain Kowalewski's Declaration and the annexed exhibits are competent evidence and an acceptable substitute for an affidavit pursuant to 28 U.S.C. § 1746.  On a motion for summary judgment, unsworn declarations, dated and subscribed by the declarant as true under penalty of perjury, using language identical to that suggested in 28 U.S.C. §1746, may be substituted for sworn affidavits setting forth admissible facts based on personal knowledge.  Here, Captain Kowalewski's declaration complies with the requirements of §1746 and is clearly based on his personal knowledge of the "circumstances occurring on May 22, 2004 and afterward" on NORASIA ALYA.  Moreover, it is credible and comports with his prior deposition testimony.

601230.00001/6740328v.1

## SPECIFIC REPLIES

**A.    AVA CLAIRE**

**1.    The Vessel and Crew**

1.    AVA CLAIRE was an 18 ton, 42 foot long, wood and fiberglass hulled fishing vessel.  (Affidavit of Richard V. Singleton, Esq. sworn to December 9, 2008 ("Singleton Aff."), Ex. "C" Stepski Tr. 40.)

Plaintiffs' Response:        Objection.  Irrelevant to issue.  Singleton Affidavit is an incompetent source.  Exhibits are without proper foundation.

Defendants' Reply:        The statement is relevant to establishing Plaintiffs' status as Jones Act seamen.  The Singleton Affidavit is competent to submit true and correct copies of deposition transcripts.  See General Reply B.  Sworn deposition testimony is admissible on motion for summary judgment.  See General Reply C.

2.    AVA CLAIRE was outfitted to handle gill nets and was equipped with a hydraulic net hauler operated from a control station aft of the wheel house.  (Ex. "C" Stepski Tr. 42, 131-32, 146.)

Plaintiff's Response:        Objection.  Irrelevant to issue.  Singleton Affidavit is an incompetent source.  Exhibits are without proper foundation.

Defendants' Reply:        The statement is relevant to establishing Plaintiffs' status as Jones Act seamen.  The Singleton Affidavit is competent to submit true and correct copies of deposition transcripts.  See General Reply B.  Sworn deposition testimony is admissible on motion for summary judgment.  See General Reply C.

3.      On May 22, 2004 the three persons in AVA CLAIRE's crew were Michael Stepski (Stepski"), who was serving as master; and Geal Roderick ("Roderick") and Benjamin Schober ("Schober"), who were serving as deck hands.  (Compl. ¶¶ 11, 13, 14.)

Plaintiff's Response:        Objection.  Irrelevant to issue.  Singleton Affidavit is an incompetent source.  Exhibits are without proper foundation.

Defendants' Reply:        The statement is relevant to establishing which Plaintiffs were directly involved in the accident.  The Singleton Affidavit is competent to submit true and correct copies of deposition transcripts.  See General Reply B.  Sworn deposition testimony is admissible on motion for summary judgment.  See General Reply C.

## 2.      The Accident on May 22, 2004

4.      On May 22, 2004, AVA CLAIRE was hauling its gill nets at a location about 30 miles south of Montauk Point, Long Island in the vicinity of the westbound lane of the Ambrose-Nantucket Safety Fairway used by large commercial vessels approaching the Port of New York.  (Singleton Aff. ¶ 8, Ex. "C" Stepski Tr. 226 - 28.)

Plaintiff's Response:        Denied.    Incompetent, selective, inaccurate and misleading.   (See plaintiff's submissions 1, 2, 3 and 4.)

Defendants' Reply:        Plaintiffs offer no facts to support their denial and it should be disregarded by the Court.  See General Reply A.  Plaintiffs do not specify anything in the statement that is inaccurate or mis-leading.  The Singleton Affidavit is competent to submit true and correct copies of deposition transcripts.  See General Reply

B.  Sworn deposition testimony is admissible on motion for summary judgment.  <u>See</u> General Reply C.

5.  AVA CLAIRE was fishing in heavy fog when it allegedly collided with a large commercial vessel at about 1233.  (Ex. "C" Stepski Tr. 191, 289; Ex. "D" Roderick Tr. 171; Ex. "E" Schober Tr. 60.)

<u>Plaintiff's Response</u>:  Denied.  Incompetent, selective, inaccurate and misleading.  (See plaintiff's submissions 1, 2, 3 and 4.)

<u>Defendants' Reply</u>:  Plaintiffs offer no facts to support their denial and it should be disregarded by the Court.  <u>See</u> General Reply A.  Plaintiffs do not specify anything in the statement that is inaccurate or mis-leading.  The Singleton Affidavit is competent to submit true and correct copies of deposition transcripts.  <u>See</u> General Reply B.  Sworn deposition testimony is admissible on motion for summary judgment.  <u>See</u> General Reply C.

6.  Stepski testified:

Q.  What were the visibility conditions as you were leaving the dock heading out to the ocean that day?

A.  It was calm and foggy.

Q.  What was the visibility when you started out?

A.  Started out, it was still dark and it was thick fog, very, very limited.

Q.  As the sun came up and you could sort of assess the visibility, what was the visibility say at 7:00 or 8:00 in the morning?

A.  We could probably see a hundred feet off the boat to one yard off the boat maybe, if that much.

> Q. Did that visibility change up to the time of the collision?
>
> A. It stayed pretty steady, thick like that.
>
> Q. At the time of the collision, what was the visibility?
>
> A. I would have to say less than a quarter mile.

(Stepski Tr. 190 - 91.)

Plaintiff's Response: Denied. Incompetent, selective, inaccurate and misleading. (See plaintiff's submissions 1, 2, 3 and 4.)

Defendants' Reply: Plaintiffs offer no facts to support their denial and it should be disregarded by the Court. See General Reply A. Plaintiffs do not specify anything in the statement that is inaccurate or mis-leading. The Singleton Affidavit is competent to submit true and correct copies of deposition transcripts. See General Reply B. Sworn deposition testimony is admissible on motion for summary judgment. See General Reply C.

7. Roderick testified:

> Q. What was the fog at that time? How much visibility do you think you had?
>
> A. At what point?
>
> Q. When the collision occurred?
>
> A. Maybe a hundred feet.

(Ex. "D" Roderick Tr. 171. See also Ex. "E" Schober Tr. 60 ("probably zero visibility").)

<u>Plaintiff's Response</u>:        Denied.      Incompetent, selective, inaccurate and misleading.   (See plaintiff's submissions 1, 2, 3 and 4.)

<u>Defendants' Reply</u>:        Plaintiffs offer no facts to support their denial and it should be disregarded by the Court.   <u>See</u> General Reply A.   Plaintiffs do not specify anything in the statement that is inaccurate or mis-leading.   The Singleton Affidavit is competent to submit true and correct copies of deposition transcripts.   <u>See</u> General Reply B.   Sworn deposition testimony is admissible on motion for summary judgment.   <u>See</u> General Reply C.

8.     AVA CLAIRE sank. (Ex. "C" Stepski Tr. 238.)   Stepski, Roderick and Schober entered the water and subsequently entered the boat's liferaft and donned survival suits.   (Id. 238 - 40.)

<u>Plaintiff's Response</u>:        Plaintiffs do not contest the content, but object to their relevance and so move to strike.

<u>Defendants' Reply</u>:        The statement is relevant to Defendants' defense to Plaintiffs' punitive damages claim.

9.     AVA CLAIRE's Emergency Position Indicating Radio Beacon ("EPIRB") was eventually activated.   (Id. 240 - 41.)

<u>Plaintiff's Response</u>:        Denied.  See plaintiffs' submission 6.

<u>Defendants' Reply</u>:        Plaintiffs offer no facts to support their denial and it should be disregarded by the Court.   <u>See</u> General Reply A.   Plaintiffs do not specify anything in the statement that is inaccurate or mis-leading.   The Singleton Affidavit is competent to submit true and correct copies of deposition transcripts.   <u>See</u> General Reply

8

B.   Sworn deposition testimony is admissible on motion for summary judgment.   <u>See</u>
General Reply C.

10.   By 1520 local time, AVA CLAIRE's crew was rescued by United States
Coast Guard ("USCG") helicopter.  (Singleton Aff., Exs. "F" and "G.")

<u>Plaintiff's Response</u>:        Plaintiffs do not contest the content, but object to their
relevance and so move to strike.

<u>Defendants' Reply</u>:        The statement is relevant to Defendants' defense to
Plaintiffs' punitive damages claim to establish that NORASIA ALYA's actions could not
have affected Plaintiffs' rescue.

**B.   NORASIA ALYA**

**1.   <u>The Vessel and Crew</u>**

11.   The Master of NORASIA ALYA on May 22, 2004 was Captain Maciej
Kowalewski.  (Declaration of Captain Maciej Kowalewski sworn to December 3, 2008.
("Kowalewski Decl.") ¶1.)

<u>Plaintiff's Response</u>:        Plaintiffs do not contest the content, but object to their
relevance and so move to strike.

<u>Defendants' Reply</u>:        The statement is relevant to establish that Captain
Kowalewski had personal knowledge of the events occurring on NORASIA ALYA on
May 22, 2004.

12.   At the time of the alleged collision, Captain Kowalewski had 23 years
experience at sea, 10 years as master of 11 different vessels.  (Kowalewski Decl. ¶¶ 2 -
3.)

9

Plaintiff's Response:        Plaintiffs do not contest the content, but object to their relevance and so move to strike.

Defendants' Reply:        The statement is relevant to Defendants' defense to Plaintiffs' punitive damages claim to establish the Defendants hired a competent master.

13.    The NORASIA ALYA is on long term time charter to CSAV Norasia, who controls all of the vessel's movements.  (Kowalewski Decl. ¶5, Ex. "2.")

Plaintiff's Response:        Denied.   Defendants cite in support (a) "ship's particulars" which is hearsay and irrelevant; (b) Kowalewski "declaration" Exhibit 5 is vague, incompetent and conclusory.  Plaintiffs  move to strike Exhibit 5.

Defendants' Reply:        Plaintiffs offer no facts to support their denial and it should be disregarded by the Court.   See General Reply A.   Exhibit 2 ("Ship's Particulars") is admissible as a business record and is relevant to establish that a party other than Defendants chartered the vessel and controlled its movements.  Exhibit 5 (email messages) were received on NORASIA ALYA in the normal course of business and plainly state communications between charterers and Captain Kowalewski.

14.    The NORASIA ALYA is equipped with an S-band and an X-band radar, both fitted with Automatic Radar Plotting Aids ("ARPA") and an Automatic Identification System ("AIS").

Plaintiff's Response:        Denied.  That NORASIA ALYA had such capabilities is irrelevant.  The issue is were they used.  The deck log and Kowalewski's examination before trial show that they were not.

10

<u>Defendants' Reply</u>:        Plaintiffs offer no facts to support their denial and it should be disregarded by the Court.  <u>See</u> General Reply A.  Plaintiffs' response is inappropriate argument.  The statement is relevant to Defendants' defense to Plaintiffs' punitive damages claim.

15.    Both of the ARPAs and the AIS are connected to an electronic charting display system ("ECDIS") which automatically records and plots the NORASIA ALYA's position and course as well as all targets acquired by the ARPAs or the AIS. (Kowalewski Decl. ¶¶6 - 8.)

<u>Plaintiff's Response</u>:        Denied.  That NORASIA ALYA had such capabilities is irrelevant.  The issue is were they used.  The deck log and Kowalewski's examination before trial show that they were not.

<u>Defendants' Reply</u>:        Plaintiffs offer no facts to support their denial and it should be disregarded by the Court.  <u>See</u> General Reply A.  Plaintiffs' response is inappropriate argument.  The statement is relevant to Defendants' defense to Plaintiffs' punitive damages claim.

16.    ARPA targets will be acquired automatically if they meet the criteria set as collision threats.  They also can be manually acquired by the operator.  The operator can stop the ECDIS from continuing to record a target, but cannot erase a voyage path or a target that has been acquired and recorded.  (Id. ¶9.)

<u>Plaintiff's Response</u>:        Denied.  That NORASIA ALYA had such capabilities is irrelevant.  The issue is were they used.  The deck log and Kowalewski's examination before trial show that they were not.

11

<u>Defendants' Reply</u>:        Plaintiffs offer no facts to support their denial and it should be disregarded by the Court.  <u>See</u> General Reply A.  Plaintiffs' response is inappropriate argument.  The statement is relevant to Defendants' defense to Plaintiffs' punitive damages claim.

17.      The NORASIA ALYA is also equipped with a "talk-back" system which consists of a microphone on the forecastle and a speaker on the bridge.  The microphone on the forecastle can be left on continuously, allowing the bridge watchstanders to hear any sounds coming from the forecastle or ahead of the vessel.  (Id. ¶10.)

<u>Plaintiff's Response</u>:        Denied.  That NORASIA ALYA had such capabilities is irrelevant.  The issue is were they used.  The deck log and Kowalewski's examination before trial show that they were not.

<u>Defendants' Reply</u>:        Plaintiffs offer no facts to support their denial and it should be disregarded by the Court.  <u>See</u> General Reply A.  Plaintiffs' response is inappropriate argument.  The statement is relevant to Defendants' defense to Plaintiffs' punitive damages claim to establish that Captain Kowalewski's actions were prudent..

## 2.      <u>NORASIA ALYA's Voyage to the United States</u>

18.      NORASIA ALYA departed Hamburg on May 15, 2004.  After departure, the vessel transmitted it sailing plan to the USCG's Automated Merchant Vessel Rescue System ("AMVER") and made daily noon position reports thereafter.  (Kowalewski Decl., Ex. "4.")

<u>Plaintiff's Response</u>:        Plaintiffs do not contest the content, but object to its relevance to the issues and so move to strike.

601230.00001/6740328v.1

Defendants' Reply:          The statement is relevant to Defendants' defense to Plaintiffs' punitive damages claim to establish that Defendants vessel was integrated into the USCG search and rescue planning.

19.     During the transit, the vessel encountered icebergs and an adverse current which delayed its expected arrival by about eight hours.  (Id. ¶13.)

Plaintiff's Response:          Denied.  There are no confirming entries in NORASIA ALYA deck log.

Defendants' Reply:          Plaintiffs offer no facts to support their denial and it should be disregarded by the Court.  See General Reply A.  The log entries are not definitive evidence of all events occurring on NORASIA ALYA.  Captain Kowalewski testified as to the cause for the delay.

20.     As a result of the delay, the charterer's agent requested that the vessel proceed to Ambrose at full speed in order to arrive in time to make a previously scheduled USCG inspection on May 22, 2004.  (Kowalewski Decl., Ex. "5.")

Plaintiff's Response:          Denied.  Kowalewski's "declaration," Exhibit 5 is incompetent and untrustworthy.

Defendants' Reply:          Plaintiffs offer no facts to support their denial and it should be disregarded by the Court.  See General Reply A.  Plaintiffs' response is inappropriate argument based wholly on speculation.  Captain Kowalewski's declaration complies with the requirements of 28 U.S.C. §1746, is based on his personal knowledge of the "circumstances occurring on May 22, 2004 and afterward" on NORASIA ALYA and comports with his prior deposition testimony.  See General Reply D.

21.     Although he complied with the charterer's agent's request, he was not under any obligation to do so and could and would have slowed down at any time if necessary for the vessel's safety and to comply with the COLREGS.  (Kowalewski Decl. ¶¶13 - 14.)

Plaintiff's Response:        Denied.   Kowalewski's "declaration", Exhibit 5 is incompetent and untrustworthy.

Defendants' Reply:        Plaintiffs offer no facts to support their denial and it should be disregarded by the Court.  See General Reply A.  Plaintiffs' response is inappropriate argument based wholly on speculation.  Captain Kowalewski's declaration complies with the requirements of 28 U.S.C. §1746, is based on his personal knowledge of the "circumstances occurring on May 22, 2004 and afterward" on NORASIA ALYA and comports with his prior deposition testimony.  See General Reply D.

3.     **The Transit of the Safety Fairway on May 22, 2004**

22.     As the vessel approached the East Coast of the United States during the early morning hours of May 22, 2004 it began to encounter heavy fog.

Plaintiff's Response:        Plaintiffs do not contest the content, but object to relevance and move to strike.

Defendants' Reply:        The statement is relevant to establishing that COLREG 19 applied.

23.     Pursuant to the Captain's Standing Orders (Kowalewski Decl., Ex. "6"), the Chief Officer, who stood watch from 0400 to 0800, summoned the Master to the Bridge at 0438 when visibility had reached less than four miles.

14

Plaintiff's Response:        Denied.   The referenced Captain's Standing Order (Defendants' Exhibit 6) is dated "at sea 30 June '04."  The collision was May 22, 2004.

Defendants' Reply:        Captain Kowalewski testified that identical orders were in effect on May 22, 2004.  (Kowalewski Tr. at 249.)

24.    Captain Kowalewski remained continuously on the bridge until the vessel arrived at Ambrose, except for a short break for a quick meal and to use the toilet.  (Id. ¶17.)

Plaintiff's Response:        Denied.   Kowalewski's "declaration", Exhibit 5 is incompetent and untrustworthy.

Defendants' Reply:        Plaintiffs offer no facts to support their denial and it should be disregarded by the Court.  See General Reply A.  Plaintiffs' response is inappropriate argument based wholly on speculation.  Captain Kowalewski's declaration complies with the requirements of 28 U.S.C. §1746, is based on his personal knowledge of the "circumstances occurring on May 22, 2004 and afterward" on NORASIA ALYA and comports with his prior deposition testimony.  See General Reply D.

25.    When he was off the bridge during this period, the bridge was still manned by the officer on watch, who maintained a continuous lookout using the radar until Captain Kowalewski returned.  At no time was the bridge unmanned.  (Id.)

Plaintiff's Response:        Denied.   Kowalewski's cannot testify to events when he was off the bridge.

15

<u>Defendants' Reply</u>:        Plaintiffs offer no facts to support their denial and it should be disregarded by the Court.  <u>See</u> General Reply A.  Plaintiffs' response is inappropriate argument.

26.    Captain Kowalewski did not leave the bridge at any time between 1100 to 1300.  (<u>Id.</u>)

<u>Plaintiff's Response</u>:        Denied.  The watch left the bridge for "meals and toilet."  1100 to 1300 was meal time.  Fog conditions were not constant.

<u>Defendants' Reply</u>:        Plaintiffs offer no facts to support their denial and it should be disregarded by the Court.  <u>See</u> General Reply A.  Plaintiffs' response is inappropriate argument based wholly on speculation.

27.    By 0700, when NORASIA ALYA had reached the extreme end of the Great South Channel off the Nantucket Shoals, visibility had become restricted to the length of the vessel.  (<u>Id.</u> ¶18.)

<u>Plaintiff's Response</u>:        Denied.  The watch left the bridge for "meals and toilet."  1100 to 1300 was meal time.  Fog conditions were not constant.

<u>Defendants' Reply</u>:        Plaintiffs offer no facts to support their denial and it should be disregarded by the Court.  <u>See</u> General Reply A.  Plaintiffs' response is inappropriate argument based wholly on speculation.

28.    By 0700, Captain Kowalewski and the officer on watch were relying on radar for navigation.  The vessel began sounding fog signals.  (<u>Id</u>.)

<u>Plaintiff's Response</u>:        Denied.  These are questions of fact.  The log does not confirm allegations regarding sounding fog signals.

16

Defendants' Reply:         Plaintiffs' response is inappropriate argument.  The log entries are not definitive evidence of all events occurring on NORASIA ALYA.  Captain Kowalewski testified as to the sounding of fog signals.  (Kowalewski Dec. ¶18; Kowalewski Tr. 184.)

29.      As the vessel approached the eastern end of the westbound Safety Fairway, visibility continued to deteriorate until only the aftermost of the vessel's three cranes could be seen from the bridge.  Winds and seas were calm with swells less than a foot. (Id. ¶¶18 - 20.)

Plaintiff's Response:         Denied.  The watch left the bridge for "meals and toilet."  1100 to 1300 was meal time.  Fog conditions were not constant.

Defendants' Reply:         Plaintiffs offer no facts to support their denial and it should be disregarded by the Court.  See General Reply A.  Plaintiffs' response is inappropriate argument based wholly on speculation.

30.      By 1000, NORASIA ALYA had entered the Safety Fairway on a course of 264° and a speed of 21.9 knots.  (Id. ¶21.)

Plaintiff's Response:         Plaintiffs do not contest the content, but object to relevance and move to strike.

Defendants' Reply:         The statement is relevant to establishing NORASIA ALYA's location prior to the alleged collision.

31.      By 1000, visibility remained restricted and Captain Kowalewski was navigating by continuously monitoring both radars.  (Id.)

601230.00001/6740328v.1

Plaintiff's Response:        Denied.  Given the undermanning of the bridge and the multiple tasks involved, the radars could not be monitored as required by COLREGS.

Defendants' Reply:        Plaintiffs offer no facts to support their denial and it should be disregarded by the Court.  See General Reply A.  Plaintiffs' response is inappropriate argument based wholly on speculation.

32.    Automatic target acquisition for the radars was set for any target approaching less than 6 nm.  An ARPA alarm was set for any target with a closest point of approach ("CPA") of less than 0.5 nm.  The radars were set on a six mile range scale, but Captain Kowalewski periodically adjusted the range scale to three miles to search for close targets.  (Id. ¶¶21 - 22.)

Plaintiff's Response:        Denied.  Vague and conclusory without times and particulars, no relevance is demonstrated.

Defendants' Reply:        Plaintiffs offer no facts to support their denial and it should be disregarded by the Court.  See General Reply A.  Plaintiffs' response is inappropriate argument based wholly on speculation.  The statement is relevant to Dedendants' defense to Plaintiffs' punitive damages claim to establish that Captain Kowalewski's actions were prudent.

33.    To supplement his lookout capabilities, Captain Kowalewski energized the talk-back system to listen for fog signals ahead of the vessel.  (Id. ¶23.)

Plaintiff's Response:        Denied.   As a matter of law, COLREGS 5 was violated.  There were no lookout and so none to "supplement."

Defendants' Reply:        Plaintiffs offer no facts to support their denial and it should be disregarded by the Court.  See General Reply A.  Plaintiffs' response is inappropriate argument based wholly on speculation.

34.    The lookout was supplemented by the watch officer, who also monitored the radar and periodically went out on the bridge wing to do a visual search and to listen for fog signals.  (Id.)

Plaintiff's Response:        Denied.   As a matter of law, COLREGS 5 was violated.  There were no lookout and so none to "supplement."

Defendants' Reply:        Plaintiffs offer no facts to support their denial and it should be disregarded by the Court.  See General Reply A.  Plaintiffs' response is inappropriate argument based wholly on speculation.

35.    By 1000, two vessels were detected on radar and by AIS ahead of NORASIA ALYA that were also westbound in the Safety Fairway.  (Id. ¶24.)

Plaintiff's Response:        Denied.  There is no probative proof in the present record.

Defendants' Reply:        Plaintiffs offer no facts to support their denial and it should be disregarded by the Court.  See General Reply A.  The two vessels are shown on the ECDIS printouts annexed as Exhibit 7 to Captain Kowalewski's declaration.

36.    By 11:00 a.m., NORASIA ALYA had overtaken and passed one of these vessels.  (Kowalewski Decl., Ex. "7.")

Plaintiff's Response:        Denied.  There is no probative proof in the present record.

601230.00001/6740328v.1

<u>Defendants' Reply</u>:        Plaintiffs offer no facts to support their denial and it should be disregarded by the Court.  <u>See</u> General Reply A.  NORASIA is shown passing one of the two vessels on the ECDIS printouts annexed as Exhibit 7 to Captain Kowalewski's declaration.

37.    Radar contact was also gained on an unidentified non-AIS craft about six miles south of NORASIA ALYA.  This craft was traveling north at about 10 knots and passed about seven miles astern of NORASIA ALYA.  (Id., Ex. "8.")

<u>Plaintiff's Response</u>:        Denied.  There is no probative proof in the present record.

<u>Defendants' Reply</u>:        Plaintiffs offer no facts to support their denial and it should be disregarded by the Court.  <u>See</u> General Reply A.  The non-AIS craft is shown on the ECDIS printouts annexed as Exhibit 8 to Captain Kowalewski's declaration.

38.    At approximately 1227, Captain Kowalewski altered NORASIA ALYA's course 10° to starboard to pass the second westbound vessel, later identified as the M/V PODRAVINA, at a distance of 2 nm to port, taking NORASIA ALYA slightly outside the northern boundary of the Northern Safety Fairway.  (<u>Id</u>. ¶27.)

<u>Plaintiff's Response</u>:        Denied.  There is no probative proof in the present record.

<u>Defendants' Reply</u>:  Plaintiffs offer no facts to support their denial and it should be disregarded by the Court.  <u>See</u> General Reply A.  NORASIA ALYA's course alteration is shown on the ECDIS printout annexed as Exhibit 9 to Captain Kowalewski's declaration.

39.     There were no radar or AIS targets detected outside of the Safety Fairway ahead of the vessel.  No fog signals were heard from the talk-back system.  (Kowalewski Decl. ¶27, Ex. "9.")

Plaintiff's Response:          Denied.  The NORASIA ALYA's failure to target and track AVA CLAIRE on its radar is proof of its negligence, not that there was no target.

Defendants' Reply:  Plaintiffs offer no facts to support their denial and it should be disregarded by the Court.  See General Reply A.  Plaintiffs' response is inappropriate argument.

40.     The fog conditions did not change from 1100-1300.  At the time AVA CLAIRE alleges the collision occurred the visibility was less than 0.1 miles.  (Id. ¶22, Kowalewski Tr. 161, 197, 227.)

Plaintiff's Response:          Denied.   Without proper foundation.   Since fog conditions varied, visibility limits remain a question of fact.

Defendants' Reply:          Plaintiffs offer no facts to support their denial and it should be disregarded by the Court.  See General Reply A.  Plaintiffs' response is inappropriate argument.

## 4.     The Voice and Text Messages From the USCG

41.     At about 1400, Captain Kowalewski heard a voice broadcast on VHF Channel 16 from the USCG about a report of a emergency signal from an Emergency Position Indicating Radio Beacon ("EPIRB") from the fishing vessel AVA CLAIRE. (Kowalewski Decl., Ex. "10.")

<u>Plaintiff's Response</u>:        Denied.  The statement "at about 1400" is incorrect. See defendant's Exhibit:  United States Coast Guard Record of Urgent Transmission.

<u>Defendants' Reply</u>:        Plaintiffs offer no facts to support their denial and it should be disregarded by the Court.  <u>See</u> General Reply A.  Captain Kowalewski's Declaration refers to a <u>voice</u> broadcast on VHF Channel 16 received at about 1400.  The "Urgent Marine Information Broadcast" (Kowalewski Dec., Exhibit 10) is an internal USCG <u>text</u> message and was not received on board NORASIA ALYA or any other vessels.  (Kowalewski Dec. ¶28.)

42.    He noted the position from the message and determined that he was approximately thirty-two miles past the reported area.  (<u>Id.</u> ¶29.)

<u>Plaintiff's Response</u>:        Denied.  Incompetent as based on "declaration."

<u>Defendants' Reply</u>:        Plaintiffs offer no facts to support their denial and it should be disregarded by the Court.  <u>See</u> General Reply A.  Plaintiffs' response is inappropriate argument based wholly on speculation.  Captain Kowalewski's declaration complies with the requirements of 28 U.S.C. §1746, is based on his personal knowledge of the "circumstances occurring on May 22, 2004 and afterward" on NORASIA ALYA and comports with his prior deposition testimony.  See General Reply D.

43.    Since he had already transmitted his daily AMVER noon position report to the USCG, he expected the USCG Rescue Coordination Center would contact NORASIA ALYA if its assistance was needed.  No such call was received.  (Kowalewski Decl. ¶29.)

<u>Plaintiff's Response</u>:        Denied.  Incompetent as based on "declaration."

601230.00001/6740328v.1

<u>Defendants' Reply</u>:         Plaintiffs offer no facts to support their denial and it should be disregarded by the Court.  <u>See</u> General Reply A.  Plaintiffs' response is inappropriate argument based wholly on speculation.  Captain Kowalewski's declaration complies with the requirements of 28 U.S.C. §1746, is based on his personal knowledge of the "circumstances occurring on May 22, 2004 and afterward" on NORASIA ALYA and comports with his prior deposition testimony.  <u>See</u> General Reply D.

44.     At 2247, NORASIA ALYA received a text message from the USGG containing the details of the reported collision between an unidentified commercial vessel and AVA CLAIRE.  (Kowalewski Decl., Ex. "11.")

<u>Plaintiff's Response</u>:         Denied.  Incompetent as based on "declaration."

<u>Defendants' Reply</u>:         Plaintiffs offer no facts to support their denial and it should be disregarded by the Court.  <u>See</u> General Reply A.  Captain Kowalewski's declaration complies with the requirements of 28 U.S.C. §1746, is based on his personal knowledge of the "circumstances occurring on May 22, 2004 and afterward" on NORASIA ALYA and comports with his prior deposition testimony.  <u>See</u> General Rply D.

45.     Upon receipt of this message from the USCG, Captain Kowalewski reviewed the chart and the ECDIS and determined that the position of NORASIA ALYA between 1100 and 1300 was no closer than two miles north of the position reported in the USCG message.  (Id. ¶ 30.)

<u>Plaintiff's Response</u>:         Denied.  Incompetent as based on "declaration."

<u>Defendants' Reply</u>:        Plaintiffs offer no facts to support their denial and it should be disregarded by the Court.  <u>See</u> General Reply A.  Captain Kowalewski's declaration complies with the requirements of 28 U.S.C. §1746, is based on his personal knowledge of the "circumstances occurring on May 22, 2004 and afterward" on NORASIA ALYA and comports with his prior deposition testimony.  <u>See</u> General Reply D.

## C.    POST-ACCIDENT INJURY/TREATMENT

46.    The alleged accident occurred on May 22, 2004, but Stepski did not seek treatment of any kind until July 8, 2004 when, at the suggestion of his attorney, he visited with Dr. Gloria Small, a psychologist.  (Affidavit of Michael E. Unger, Esq., sworn to December 9, 2008 ("Unger Aff."), Ex. "L" Small Tr. 16.)

<u>Plaintiff's Response</u>:        Denied.  Based on truncated citations to depositions and include counsel's comment.  A fair reading of the full materials show that plaintiffs Stepski, Roderick and Schober suffer from post-trumatic stress disorder, described by Dr. Merriam on examination before trial as a ". . .disorder is one that tends to be indelible. People generally do not return to their former selves and there is typically a pattern of recurrence during life stress. . ." (Merriam Deposition, p. what page??) See also, pgs. 31 lines 11-16; 60, 61, 71.  The plaintiffs have testified that they are without medical health insurance and have no financial resources.   (Merriam Deposition, pgs. 103-104) Questions of fact are involved.

<u>Defendants' Reply</u>:        Plaintiffs' response and objections are improper and inappropriate. The facts as asserted in Defendants' Rule 56(a) Statement should be

admitted as Plaintiffs have failed to meet the requirements of Local Rule 56.1(d).  <u>See</u> General Reply A.

47.    Roderick waited until July 19, 2004 to seek the assistance of a mental health professional when he also saw Dr. Small, again at the suggestion of his attorney. (Unger Aff., Ex. "L" Small Tr. 102, 116.)

<u>Plaintiff's Response</u>:    Denied.  Based on truncated citations to depositions and include counsel's comment.  A fair reading of the full materials show that plaintiffs Stepski, Roderick and Schober suffer from post-trumatic stress disorder, described by Dr. Merriam on examination before trial as a ". . .disorder is one that tends to be indelible. People generally do not return to their former selves and there is typically a pattern of recurrence during life stress. . ." (Merriam Deposition, p. what page??) See also, pgs. 31 lines 11-16; 60, 61, 71.  The plaintiffs have testified that they are without medical health insurance and have no financial resources.   (Merriam Deposition, pgs. 103-104) Questions of fact are involved.

<u>Defendants' Reply</u>:    Plaintiffs' comments are inappropriate and should be ignored. Further, Plaintiffs' response and objections are improper and inappropriate. The facts as asserted in Defendants' Rule 56(a) Statement should be admitted as Plaintiffs have failed to meet the requirements of Local Rule 56.1(d).

48.    Kirsten Stepski and Schober were never seen by Dr. Small and never sought treatment for their alleged injuries from any other mental health care provider. (Unger Aff., Ex. "L" Small Tr. 15-16.)

<u>Plaintiff's Response</u>:        Denied.  Based on truncated citations to depositions and include counsel's comment.  A fair reading of the full materials show that plaintiffs Stepski, Roderick and Schober suffer from post-trumatic stress disorder, described by Dr. Merriam on examination before trial as a ". . .disorder is one that tends to be indelible. People generally do not return to their former selves and there is typically a pattern of recurrence during life stress. . ." (Merriam Deposition, p. what page??) See also, pgs. 31 lines 11-16; 60, 61, 71.  The plaintiffs have testified that they are without medical health insurance and have no financial resources.   (Merriam Deposition, pgs. 103-104) Questions of fact are involved.

<u>Defendants' Reply</u>:        Plaintiffs' comments are inappropriate and should be ignored. Further, Plaintiffs' response and objections are improper and inappropriate. The facts as asserted in Defendants' Rule 56(a) Statement should be admitted as Plaintiffs have failed to meet the requirements of Local Rule 56.1(d).

49.     Stepski only treated with Dr. Small for a few months and has not seen her since February 2005. (Unger Aff., Ex. "L" Small Tr. 33-37.)

<u>Plaintiff's Response</u>:        Denied.  Based on truncated citations to depositions and include counsel's comment.  A fair reading of the full materials show that plaintiffs Stepski, Roderick and Schober suffer from post-trumatic stress disorder, described by Dr. Merriam on examination before trial as a ". . .disorder is one that tends to be indelible. People generally do not return to their former selves and there is typically a pattern of recurrence during life stress. . ." (Merriam Deposition, p. what page??) See also, pgs. 31 lines 11-16; 60, 61, 71.  The plaintiffs have testified that they are without medical health

insurance and have no financial resources.    (Merriam Deposition, pgs. 103-104) Questions of fact are involved.

Defendants' Reply:        Plaintiffs' comments are inappropriate and should be ignored. Further, Plaintiffs' response and objections are improper and inappropriate. The facts as asserted in Defendants' Rule 56(a) Statement should be admitted as Plaintiffs have failed to meet the requirements of Local Rule 56.1(d).

50.    Roderick only met with Dr. Small on three occasions in 2004 and on two occasions in 2006, after providing his deposition. (Unger Aff., Ex. "L" Small Tr. 102, 122.)

Plaintiff's Response:        Denied.  Based on truncated citations to depositions and include counsel's comment.  A fair reading of the full materials show that plaintiffs Stepski, Roderick and Schober suffer from post-trumatic stress disorder, described by Dr. Merriam on examination before trial as a ". . .disorder is one that tends to be indelible. People generally do not return to their former selves and there is typically a pattern of recurrence during life stress. . ." (Merriam Deposition, p. what page??) See also, pgs. 31 lines 11-16; 60, 61, 71.  The plaintiffs have testified that they are without medical health insurance and have no financial resources.    (Merriam Deposition, pgs. 103-104) Questions of fact are involved.

Defendants' Reply:        Plaintiffs' comments are inappropriate and should be ignored. Further, Plaintiffs' response and objections are improper and inappropriate. The facts as asserted in Defendants' Rule 56(a) Statement should be admitted as Plaintiffs have failed to meet the requirements of Local Rule 56.1(d).

51.     Stepski, Roderick and Schober were examined by plaintiffs' expert psychiatrist Dr. Arnold Merriam in May of 2007.  (Unger Aff.  Ex "K.")

Plaintiff's Response:        Admit.

Defendants' Reply:        No comment.

52.     Mrs. Stepski was not examined by Dr. Merriam.  (Id.)

Plaintiff's Response:        Admit.

Defendants' Reply:        No comment.

53.     After examining the plaintiffs, Dr. Merriam concluded that Stepski, Roderick and Schober would have benefited from treatment and should have received medication to treat their alleged injuries.   (Unger Aff., Ex "K" Merriam Tr. 137-139.)

Plaintiff's Response:        Denied.  Dr. Merriam's testimony must be read as a whole.  Counsel's selection of sound bites is misleading.

Defendants' Reply:        Plaintiffs' response and objections are improper and inappropriate. The facts as asserted in Defendants' Rule 56(a) Statement should be admitted as Plaintiffs have failed to meet the requirements of Local Rule 56.1(d).

54.     Dr. Merriam testified that with proper treatment the plaintiffs' prognosis was good.  (Unger Aff., Ex. "K" Merriam Tr. 131).

Plaintiff's Response:        Denied.  Dr. Merriam's testimony must be read as a whole.  Counsel's selection of sound bites is misleading.

Defendants' Reply:        Plaintiffs' response and objections are improper and inappropriate. The facts as asserted in Defendants' Rule 56(a) Statement should be admitted as Plaintiffs have failed to meet the requirements of Local Rule 56.1(d).

28

55.     Dr. Merriam was questioned specifically about whether the plaintiffs would benefit from treatment and medication and testified as follows:

Q.     What is your prognosis for these three if they do have treatment?

A.     Better than if they are not treated.  The disorder is one that tends to be indelible.  People generally do not return to their former selves ever.  And there is typically a pattern of recurrence during life stress.  But I think each of them deserves a trial of therapy and medication treatment.

Q.     And if they get medication and therapy, how do you expect Mr. Stepski will respond?

A.     I think he probably would respond pretty well.

Q.     What about Mr. Roderick?

A.     Mr. Roderick, I think, is less symptomatic than Mr. Stepski, but still should be treated.  For Mr. Schober, the alcohol substance abuse was exacerbation is central and he needs not only psychiatric treatment for the P.T.S.D., but he also needs to be in alcohol substance abuse counseling or he is going to be in long-term trouble.

*   *   *

Q.     You believe it would be beneficial for these three men to be on some kind of medication; is that correct?

A.     Yes, yes.

Q.     Something like Paxil, for instance?

A.     Yes.

Q.     And the purpose being to ameliorate the symptomatology?

A.     Yes.

Q.     And once you ameliorate, it's easier to hopefully get over the hump in terms of these issues that cause anxiety and any other problems; is that right?

A.     Yes.

Q.     You haven't done any investigation in terms of whether these men could get the proper medication prescribed to them?

A.     No.

Q.     Is that something that they should be investigating either themselves or –

A.     They should be in treatment and they should be on medication.

Q.     Okay.  If they had the resources and the ability to get medication and have treatment, but they haven't undertaken to do so, would that be a failure on their part to assist in their own healing process?

A.     If they had the ability to avail themselves of treatment, they should do so.

(Unger Aff., Ex. "K" Merriam Tr. 131, 137-139.)

Plaintiff's Response:       Denied.  Dr. Merriam's testimony must be read as a whole.  Counsel's selection of sound bites is misleading.

Defendants' Reply:       Plaintiffs' response and objections are improper and inappropriate. The facts as asserted in Defendants' Rule 56(a) Statement should be admitted as Plaintiffs have failed to meet the requirements of Local Rule 56.1(d).

56.     Dr. Small testified that she wanted Stepski to continue treating with her but he unilaterally elected to "solve his problems on his own".  (Unger Aff., Ex. "L" Small Tr. 97-99.)

<u>Plaintiff's Response</u>:        Denied.  Dr. Small's examination before trial must be read in full context.   Use of terms of characterization, e.g. "unilaterally elected", "successfully treated", "optimistically" are beliefs of Unger Affidavit, not facts.

<u>Defendants' Reply</u>:        Plaintiffs' response and objections are improper and inappropriate. The facts as asserted in Defendants' Rule 56(a) Statement should be admitted as Plaintiffs have failed to meet the requirements of Local Rule 56.1(d).

57.        Dr. Small further testified that the alleged injuries could have been successfully treated had Stepski and Roderick continued treating.  (Unger Aff., Ex. "L" Small Tr. 68-69.)

<u>Plaintiff's Response</u>:        Denied.  Dr. Small's examination before trial must be read in full context.   Use of terms of characterization, e.g. "unilaterally elected", "successfully treated", "optimistically" are beliefs of Unger Affidavit, not facts.

<u>Defendants' Reply</u>:        Plaintiffs' response and objections are improper and inappropriate. The facts as asserted in Defendants' Rule 56(a) Statement should be admitted as Plaintiffs have failed to meet the requirements of Local Rule 56.1(d).

58.        Dr. Small testified optimistically about the expected results of treatment, regarding Stepski as follows:

> Q.    Had Mr. Stepski seen you regularly from July 8th for whatever period you think would have been appropriate, do you anticipate that he would have had a favorable outcome in terms of his treatment?

> A.    Probably.  I've worked with many people who suffer from trauma and they have been successfully treated.

(Unger Aff., Ex. "L" Small Tr. 68-69.)

Plaintiff's Response:        Denied.  Dr. Small's examination before trial must be read in full context.   Use of terms of characterization, e.g. "unilaterally elected", "successfully treated", "optimistically" are beliefs of Unger Affidavit, not facts.

Defendants' Reply:        Plaintiffs' response and objections are improper and inappropriate. The facts as asserted in Defendants' Rule 56(a) Statement should be admitted as Plaintiffs have failed to meet the requirements of Local Rule 56.1(d).

59.      Stepski employed Roderick and Schober but failed to provide medical insurance nor did he offer to pay for any needed psychological treatment for their complaints of post-accident psychological symptoms.  (Singleton Aff., Ex. "D" Roderick Tr. 186-188.)

Plaintiff's Response:        Denied, without foundation.  Objectionable in form, assumes plaintiffs had legal obligations.

Defendants' Reply:        Plaintiffs' response and objections are improper and inappropriate. The facts as asserted in Defendants' Rule 56(a) Statement should be admitted as Plaintiffs have failed to meet the requirements of Local Rule 56.1(d).

60.      Despite this, Dr. Small testified that she would have continued treating Roderick on a weekly basis without pay.  (Unger Aff., Ex. "L" Small Tr. 116.)

Plaintiff's Response:        Denied, without foundation.  Objectionable in form, assumes plaintiffs had legal obligations.

601230.00001/6740328v.1

Defendants' Reply:         Plaintiffs' response and objections are improper and inappropriate. The facts as asserted in Defendants' Rule 56(a) Statement should be admitted as Plaintiffs have failed to meet the requirements of Local Rule 56.1(d).

61.         While Roderick testified that the limited treatment he received was helpful, he nevertheless unilaterally discontinued treating with Dr. Small.   (Singleton Aff., Ex. "D" Roderick Tr. 248.)

Plaintiff's Response:         Denied, without basis, bad in form, not factual, but contain attorney's commentary. Roderick testified that the limited treatment he received helped him.

Defendants' Reply: Plaintiffs' response and objections are improper and inappropriate. The facts as asserted in Defendants' Rule 56(a) Statement should be admitted as Plaintiffs have failed to meet the requirements of Local Rule 56.1(d).

62.         Roderick testified that the limited treatment he received helped him:

Q.     Did the visits with Dr. Small help you?

A.     A little bit, yes.

Q.     How did it help?

A.     Figure out exactly why it's bother—I'm trying to figure out why it's bothering me.

(Singleton Aff., Ex. "D" Roderick Tr. 248.)

Plaintiff's Response:         Denied, without basis, bad in form, not factual, but contain attorney's commentary. Roderick testified that the limited treatment he received helped him.

Defendants' Reply:          Plaintiffs' response and objections are improper and inappropriate. The facts as asserted in Defendants' Rule 56(a) Statement should be admitted as Plaintiffs have failed to meet the requirements of Local Rule 56.1(d).

63.     For unknown reasons, Roderick missed an appointment with Dr. Small scheduled for August 2, 2004 and did not see her again until November of 2006. (Unger Aff., Ex. "L" Small Tr. 121.)

Plaintiff's Response:          Denied, without basis, bad in form, not factual, but contain attorney's commentary. Roderick testified that the limited treatment he received helped him.

Defendants' Reply:          Plaintiffs' response and objections are improper and inappropriate. The facts as asserted in Defendants' Rule 56(a) Statement should be admitted as Plaintiffs have failed to meet the requirements of Local Rule 56.1(d).

64.     After seeing Dr. Small twice in 2006, Roderick simply stopped coming. (Unger Aff., Ex. "L" Small Tr. 125.)

Plaintiff's Response:          Denied, without basis, bad in form, not factual, but contain attorney's commentary. Roderick testified that the limited treatment he received helped him.

Defendants' Reply:          Plaintiffs' response and objections are improper and inappropriate. The facts as asserted in Defendants' Rule 56(a) Statement should be admitted as Plaintiffs have failed to meet the requirements of Local Rule 56.1(d).

65.     Roderick was questioned specifically about the lack of cure, for his alleged injury:

Q.    Did you have any insurance that paid for these visits?

A.    At that time, no.

Q.    Did you pay the doctor?

A.    Have I? Not yet.

Q.    So I take it then you owe the doctor a fee?

A.    Yes.

Q.    Approximately how much is that?

A.    I think it was $100 a visit.  I don't know.

Q.    So somewhere between $600 and $1,200, you figure?

A.    Roughly, yes.

Q.    Did you see any other medical or mental health professionals for any complaints that you have or symptoms that you have that you relate to the accident?

A.    Not at this time.

Q.    When you say "not at this time," does that indicate that you have a plan to go see mental health professionals or medical professionals in connection with some complaints or symptoms?

A.    If I could afford to, yes.

Q.    Who would you see if you could afford to?

A.    Probably go back to the existing doctor.

Q.    Dr. Small?

A.    Yes.

(See Singleton Aff., Ex. "D" Roderick Tr. 186-188)

<u>Plaintiff's Response</u>:        Denied.   Object.   The question of "cure" was never part of the issues joined, nor raised.

<u>Defendants' Reply</u>:        Plaintiffs' response and objections are improper and inappropriate. The facts as asserted in Defendants' Rule 56(a) Statement should be admitted as Plaintiffs have failed to meet the requirements of Local Rule 56.1(d).

Additionally, the issue of cure was joined in respect of Defendants' counterclaims against Michael Stepski as well as the Sixth Affirmative Defense to Plaintiffs' Supplemental Amended Complaint which avers that Plaintiffs' damages were caused by third persons, including Michael Stepski.

Dated:        New York, New York
              May 1, 2009
                                  BLANK ROME LLP

                                  <u>//s//Richard V. Singleton        </u>
                                  Richard V. Singleton (RS-9489)
                                  Attorneys For Defendants
                                  The Chrysler Building
                                  405 Lexington Avenue
                                  New York, New York  10174-0208

                                  &

                                  FREEHILL HOGAN & MAHAR LLP
                                  Attorneys for Defendants
                                  80 Pine Street
                                  New York, New York 10005
                                  Telephone: 212-425-1900
                                  Facsimile: 212-425-1901
                                  E-Mail: munger@freehill.com

601230.00001/6740328v.1