UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x

MICHAEL STEPSKI, KIRSTEN STEPSKI, Wife,
GEAL RODERICK AND BENJAMIN SCHOBER,

              Plaintiffs,

      -against-

                                06 Civil 1694
The M/V NORASIA ALYA, her owners,         (KMK)
operators, etc., and MS "ALENA"
SCHIFFAHRTSGESELLSCHAFT mbH & CO. KG,
PETER DOHLE SCHIFFAHRTS-KG,

              Defendants.

----------------------------------------x

**PLAINTIFFS' LOCAL RULE 56.1 STATEMENT
IN SUPPORT OF CROSS-MOTION FOR PARTIAL
SUMMARY JUDGMENT THAT DEFENDANT, AS A
MATTER OF LAW, VIOLATED THE FOLLOWING
COLREGS:  RULE 5 LOOKOUT
            RULE 6 SAFE SPEED
            RULE 7(a),(b) RISK OF COLLISION
            RULE 18(a) RESPONSIBILITIES
                    BETWEEN VESSELS**

    1.  On May 22, 2004, AVA CLAIRE commenced hauling its nets,
starting north of the Ambrose Nantucket Safety Fairway (hereinafter
"the fairway").  Each string was approximately one mile and angled
to east/northeast.

    2.  The fairway ran generally east to west. As the AVA CLAIRE
worked each string, it angled away from the fairway.

    3.  At the time of the collision, AVA CLAIRE was working its
second string north of the fairway. (M. Stepski Deposition, pg. 136

et seq., 219 et seq.)

4.   Generally, visibility was restricted by fog which varied at time and place from near zero to three miles. (Kowalewski Deposition)

5.   There was visibility at site of collision. (M.Stepski Deposition, p. 183-84; Schober Deposition, p. 66-75)

6.   AVA CLAIRE's EPIRB automatically self-activated at the time of the collision and immediately began transmitting. (See #26 below; U.S. Coast Guard facts; plaintiffs' Notice to Admit)

7.   Stepski, Roderick and Schober saw the vessel that hit the AVA CLAIRE.  They described her as a large container carrier about 800-feet long with an aft positioned lifeboat, blue hull, white super structure. (M. Stepski Deposition, p. 180 et seq.; Schober Deposition, p. 66-75)

8.   A 406 MHz signal from an EPIRB, with a signal/beacon identification of ADECO 216FD 41801 was first detected by the COSPAS-SARSAT system at 1237 Q time on May 22, 2004.

9.   1237Q time was 1237 p.m., afternoon in the time zone covering the general area southeast of Montauk Point, New York (hereafter local time).

10.   COSPAS stands for Russian Space System for search of vessels in distress.

11.   SARSAT stands for Search and Rescue Satellite-Aided

-2-

Tracking.

12.   The COSPAS-SARSAT 1237 p.m. information was reported to the United States Coast Guard First District at 1241Q, i.e. 12:41 p.m. on May 22, 2004.

13.   At 1239Q, i.e. 12:39 p.m. local time COSPAS-SARSAT satellite detected the EPIRB beacon in position 40 degrees 32.0 minutes N, 071 degrees 41.7 minutes W.

14.   The EPIRB ADECO 216-FD 41801 was registered as being on board the fishing vessel AVA CLAIRE.

(The above facts, [8-13] as documented in the U.S. Coast Guard "Report of Investigation into the Circumstances Involving AVA CLAIRE v. NORASIA ALYA Collision on 05/22/04" were the subject of plaintiffs' first request to admit, nos. 8, 9, 10, 11, 12, 13, 14.

15.   The AVA CLAIRE EPIRB activates the beacon when the EPIRB is out of its bracket and floating (U.S. Coast Guard fact, Exhibit A).

16.   On May 22, 2004 between 11:00 and 15:00, no crew member of the NORASIA ALYA was posted as lookout with no other duties.

17.   During this period (11:00 to 15:00, May 22, 2004), no crew was assigned to continuously monitor NORASIA ALYA's radar and plotting targets.

18.   NORASIA ALYA was on auto-pilot.   There was no helmsman.

19.   According to log, fog signal not activated.

-3-

20.   NORASIA ALYA maintained constant speed of 22 knots. (Exhibit B-NORASIA ALYA log)

21.   At time of collision, AVA CLAIRE was displaying signal lights indicating a fishing vessel. She also had radar reflectors positioned. (Stepski's examination before trial)

22.   The NORASIA ALYA'S radars were fully capable of targeting and tracking a fishing boat such as the AVA CLAIRE. (Kowalewski's Statement of Facts, dated Newport News, 25 May 2004, attached to Captain Kowalewski's Declaration)

23.   The NORASIA ALYA's radar due to design and placement of her radar transmitter, had a "blind zone" immediately to her front. (Exhibit C-NORASIA ALYA's radar data)

24.   The United States Coast Guard emergency message was broadcast on standard VHF Channel 16 which is regularly monitored by ocean traffic. (Kowalewski Deposition, p. 6)

25.   The message was received on board the NORASIA ALYA. (Kowalewski Deposition, p. 6 et seq.)

26.   The message sent on May 22, 2004 at 13:18 reads:

> Sent: Saturday, May 22, 2004 13:18
> Subject: O 221702Z May 04, URGENT
> MARINE    INFORMATION    BROADCAST,
> COMCOGARDGRU MORICHES NY
>
> O   221702Z   MAY   04   ZUI   ASN-
> A01143000054
> FM COMCOGARDGRU MORICHES NY
> TO CCGDONE BOSTON MA
> INFO COGARD STA SHINNECOCK NY

-4-

COGARD STA MONTAUK NY
COMCOGARDGRU LONG ISLAND SOUND NEW
HAVEN CT
BT
UNCLAS //N16130//
SUBJ:  URGENT  MARINE  INFORMATION
BROADCAST
1.    THE   FOLLOWING  URGENT  MARINE
INFORMATION   BROADCAST   HAS   BEEN
INITIATED: QUOTE "THE COAST GUARD IS
RECEIVING AN EMERGENCY SIGNAL FROM A
406    MHZ    EMERGENCY    POSITION
INDICATING  RADIO  BEACON  FROM  THE
FISHING   VESSEL   AVA   CLAIRE   IN
POSITION    40-32.0N,    071-41.7W,
APPROXIMATELY 30 NM SOUTH OF MONTAUK
POINT,   NY.   ALL   MARINERS   ARE
REQUESTED TO KEEP A SHARP LOOKOUT
FOR VESSELS IN DISTRESS, ASSIST IF
POSSIBLE AND REPORT ALL SIGHTINGS TO
THE  UNITED  STATES  COAST  GUARD."
UNQUOTE.

(conceded)

27.  At the time the United States Coast Guard message was received, the NORASIA ALYA was capable of rendering assistance, and there was no danger involved to her, or impediment of any kind preventing assistance. (Kowalweski Deposition, pgs. 49, 52)

28.  At 1318 hours, the NORASIA ALYA did not proceed to the assistance of the EPIRB signals which was to her east, but continued to run west at 22.5 knots. (Exhibit B)

29.  No entries were made in the log book as to receipt of United States Coast Guard urgent message, or the reasons why NORASIA ALYA refused to assist or reply to United States Coast Guard. (Exhibit B)

-5-

30. The ship's Radio Log Book has been demanded, but not produced.

31. The NORASIA ALYA was equipped with an Electronic Chart Display and Information System ("ECDIS") which recorded the NORASIA ALYA'S position, course and speed. (conceded)

Based on the ECDIS printouts, the following information was established: (Exhibit D)

32. On May 22, 2004, the NORASIA ALYA was proceeding westbound in the safety fairway at about 22 knots.[1]  Between 1100 hours[2] and 1115 hours, the NORASIA ALYA was on the extreme northern edge of the safety fairway until about 1119 hours when it turned back into the safety fairway.

33. At 1145 hours, NORASIA ALYA was approaching another ship (the PETROVINA).   The NORASIA ALYA continued closing on the PETROVINA until 1227 hours when the NORASIA ALYA changed course nine degrees to the north, from 268 degrees to 277 degrees, and changed course again at 1234 hours ten degrees to the north, from 276 degrees to 286 degrees.  At 1234 hours, the NORASIA ALYA left the safety fairway. (Exhibit D)

---

[1]    A knot is a nautical mile per hour.  A nautical mile is 6080 feet.  A land mile is 5280 feet.  The NORASIA ALYA was proceeding at 25.3 land miles per hour.

[2]    All times cited are local time and use the 24 hours clock.

-6-

34.   The NORASIA ALYA continued on course 286/285 degrees until 1246. At 1300 hours, the NORASIA ALYA was still out of the safety fairway. (See Exhibit D)

35.   The captain of the NORASIA ALYA was aware that outside of the safety fairway in the approaches to New York there were fishing grounds (Adrian Calimanescu Deposition, pgs. 34-35).

36.   The U.S. Coast Guard made a finding of fact that the NORASIA ALYA was the vessel that collided with AVA CLAIRE. (Exhibit A)

37.   Photographs of the NORASIA ALYA taken by U.S. Coast Guard on 23 May 2004 show recent scrape marks on the bow and sides of the NORASIA ALYA photo. (Exhibit E)

38. On May 23, 2004, the U.S. Coast Guard recovered fiberglass remnants to form the bulbous bow of the NORASIA ALYA. (conceded)

39. Prior to May 22, 2004, Kirsten Stepski was suffering from depression, was under professional care and medication. (K.Stepski Deposition, p. 84 et seq.)

40.   On May 22, 2004, Kirsten was advised by U.S. Coast Guard that they received distress signals from the AVA CLAIRE's EPIRB and the fate of the vessel and crew were unknown.   (K. Stepski Deposition, p. 112)

41.   Upon learning that the U.S. Coast Guard had rescued her husband, Roderick and Schober, she drove, alone, panicked and

-7-

pregnant to the Cape Cod U.S. Coast Guard station.   (K. Stepski Deposition, p. 112, et seq.)

42.   As a result, Kirsten Stepski's physical condition worsened and she suffered deeper depression. (K. Stepski Deposition, p. 102)

43. After the collision and the loss of the AVA CLAIRE, Michael Stepski was afflicted with post-traumatic stress disorder and his ability to function damaged. (Reports of Arnold Merriam, M.D. and Mark Rubinstein, M.D.)

44.   The Stepskis had put all their assets into expanding fishing business and upgrading AVA CLAIRE.

45.   They had no medical insurance and were without funds to purchase insurance or pay for medical treatment. (M. Stepski, K. Stepski Depositions)

46.   Geal Roderick is suffering from Post-Traumatic Stress Disorder as a result of the collision. (Reports of Arnold Merriam, M.D. and Mark Rubinstein, M.D.)

47.   Roderick's ability to be gainfully employed has been severely restricted.

48.   Roderick has no medical insurance and is without means to obtain insurance or medical care. (Roderick Deposition)

49.   Ben Schober is suffering from Post-Traumatic Stress Disorder as a result of the collision. (Reports of Arnold Merriam,

-8-

M.D. and Mark Rubinstein, M.D.)

50.   Schober's ability to be gainfully employed has been severely restricted.

51.   Schober has no medical insurance and is without means to obtain insurance or medical care.   (Schober Deposition)

DATED: NEW YORK, NEW YORK
       February 17, 2009

                          Yours, etc.

                          THOMAS H. HEALEY, ESQ.
                          Attorney for Plaintiffs


                    BY:
                          Thomas H. Healey (THH-3093)
                          17 Battery Place - Suite 605
                          New York, New York 10004
                          (212)943-3520

TO:   BLANK ROME LLP
      Attorney for Defendants
      405 Lexington Avenue
      New York, New York 10174

      FREEHILL, HOGAN & MAHAR
      80 Pine Street
      New York, New York 10005