UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------

:
MICHAEL STEPSKI, *et al.,*          :
:          CASE NO. 7:06-cv-01694
                Plaintiffs,          :
:
vs.                                  :          OPINION & ORDER
:          [Resolving Doc. Nos. 36, 52]
THE M/V NORASIA ALYA*, et al.,*      :
:
                Defendants.          :
:

-------------------------------------------------------

JAMES S. GWIN,[1] UNITED STATES DISTRICT JUDGE:

    The Defendants move the Court for partial summary judgment in this action arising out of

a boat collision.  [Doc. 36.]  The Plaintiffs oppose the motion and also move for partial summary

judgment.  [Doc. 49, 52.]  The Defendants have replied. [Doc. 43, 44.]  For the following reasons,

the Court **GRANTS IN PART** and **DENIES IN PART** the Defendants' motion for summary

judgment and **DENIES** the Plaintiffs' motion for summary judgment.

## I.  Background

    In their Complaint, the Plaintiffs claim damages for injuries resulting from an accident in

which the Defendants' ship allegedly struck the Plaintiffs' fishing boat.  Plaintiff Michael Stepski

("Stepski") owned and captained the Ava Claire, a 42-foot long wood-and-fiberglass-hulled fishing

vessel that was destroyed in a collision off Montauk Point, Long Island, New York on May 22,

2004.  [Doc. 53 at 1; Doc. 38 at 2; Stepski Dep. at 40.]  Plaintiffs Stepski, Geal Roderick, and

---

[1]The Honorable James S. Gwin of the United States District Court for the Northern District of Ohio, sitting
by designation.

Case No. 7:06-cv-01694
Gwin, J.

Benjamin Schober are fishermen who were aboard the Ava Claire as its captain and crew on the day

it sank.  Plaintiff Kirsten Stepski ("Kirsten") is the wife of Michael Stepski and claims a loss of

consortium and emotional damages.

Defendants MS "Alena" Sciffahrtsgesellschaft mbH & Co. KG and Peter Doehle Schiffahrts-

KG, both German entities, own and manage Defendant M/V Norasia Alya (collectively, "the

Defendants").  [Doc. 38 at 1.]  The M/V Norasia Alya ("Norasia Alya") is a 800-foot, steel-hulled

container vessel that is currently on long-term charter to CSAV Norasia.   [Doc. 53 at 1; Doc. 38 at

4.] On May 15, 2004, the Norasia Alya departed Hamburg, Germany bound for Port Elizabeth, New

York.  [*Id.* at 5.]  During the voyage, Captain Maciej Kowalewski ("Kowalewski") acted as the

ship's master.

On May 22, 2004, the Norasia Alya encountered heavy fog as it approached the East Coast

of the United States.  [*Id.* at 6.]  By 7:00 a.m., Kowalewski navigated the ship using radar after

visibility became limited to the length of the ship.  [*Id.*]  By 10:00 a.m., the Norasia Alya had

entered the westbound lane of the Ambrose-Nantucket Safety Fairway, used by large commercial

vessels approaching New York. [*Id.*] Between 11:00 a.m. and 1:00 p.m., the Norasia Alya detected

and passed two westbound vessels that were also in the Safety Fairway. [*Id.* at 7.] At approximately

12:27 p.m., the Norasia Alya passed the second of the two vessels, temporarily going outside the

Northern boundary of the Safety Fairway.  [*Id.* at 8.]  During this time, Kowalewski detected by

radar one other boat that passed approximately 7 miles astern of the Norasia Alya.  [*Id.*]  The

Norasia Alya did not detect any other boats during this time.  [*Id.*]

At sometime between 3:00 and 5:00 a.m. on May 22, 2004, the Ava Claire, captained by

Plaintiff Stepski and crewed by Roderick and Schober, departed from dock to retrieve catch from

Case No. 7:06-cv-01694
Gwin, J.

nets that Stepski had previously set off the southern coast of Long Island.  [Stepski Dep. at 134-36;

Roderick Dep. at 41-42; Schober Dep. at 49-51.]  Approximately six hours later, the Ava Claire

arrived at the first line of nets. [Stepski Dep. at 135; Roderick Dep. at 45; Schober Dep. at 49.]  The

visibility at the site of the nets was extremely limited due to fog.  [Stepski Dep. at 190-91; Roderick

Dep. at 171; Schober Dep. at 60.]  Plaintiffs Stepski, Roderick, and Schober spent approximately

two hours retrieving catch from the first line of nets.  [Stepski Dep. at 136-37; Roderick Dep. at 46;

Schober Dep. at 55.]  They then re-set the first line of nets and proceeded to the second line of nets.

[Stepski Dep. at 138-39.]

Around the time that they began working the second line, Stepski observed a target on the

Ava Claire's radar screen at a distance of approximately six miles.  [*Id.* at 151-58.] Plaintiff Stepski

believed that the target was on course to pass on the starboard side of the Ava Claire, but continued

to monitor the target as the Ava Claire proceeded along the second line of nets.  [*Id.* at 156-178.]

When Plaintiffs Stepski, Roderick, and Schober were approximately one-third to three-quarters of

the way down the second line, another vessel struck the Ava Claire. [Stepski Dep. at 142; Roderick

Dep. at 50; Schober Dep. at 57.]  Immediately before the collision, Stepski observed that the target

was on course to hit the Ava Claire and attempted to move his boat.  [Stepski Dep. at 176-181;

Schober Dep. at 64.]  Stepski and Schober both physically observed the other ship just seconds

before the collision.  [Stepski Dep. at 184; Schober Dep. at 67-68.]  Roderick never saw the ship

before it hit the Ava Claire.  [Roderick Dep. at 53, 55.]  The Ava Claire quickly sank as a result of

the collision.  [Stepski Dep. at 237-38; Schober Dep. at 76-77.]  Stepski, Roderick, and Schober all

entered the water, then climbed into a life raft and donned survival suits. [Stepski Dep. at 238-239;

Schober Dep. at 76-78.]  The United States Coast Guard ("USCG" or "Coast Guard") rescued

Stepski, Roderick, and Schober at approximately 3:20 p.m.  [Doc. 39-8.]  The Coast Guard

Case No. 7:06-cv-01694
Gwin, J.

interviewed Plaintiffs Stepski, Roderick and Schober about the incident. [Stepski Dep. at 196; Roderick Dep. at 115-18; Schober Dep. at 82-84.] Kirsten Stepski met Stepski, Roderick, and Schober at the UCSG station in Cape Cod, and then drove them home. [Kirsten Dep. at 114; Schober Dep. at 85.]

At approximately 2:00 p.m., the Norasia Alya received a message from the Coast Guard reporting an emergency signal from the Ava Claire's electronic position indicator radio beacon ("EPIRB"). [Doc. 40-10; Kowalewski Dep. at 10-11.] At that time, Kowalewski determined that the Norasia Alya was approximately 32 miles past (to the west of) the EPIRB location. [Doc. 40 at 7.] Kowalewski had reported the ship's position to the UCSG Automated Merchant Vessel Rescue System ("AMVER") that day at noon and expected the Coast Guard to contact the Norasia Alya if its assistance was needed. No such message was received. [*Id.* at 3, 7-8; Kowalewski Dep. at 65.] Kowalewski did not reverse the course of the Norasia Alya to render assistance to the Ava Claire; instead, the Norasia Alya continued west to New York. [*Id.* at 53-56.]

The Plaintiffs filed a Complaint in this Court on March 3, 2006, and amended their Complaint on May 12, 2006 and June 1, 2006.[2] In their Complaint, Plaintiffs Michael Stepski, Roderick, and Schober all bring claims for physical injury and mental and emotional distress suffered as a result of the accident. [Doc. 53 at 4-5.] Plaintiff Michael Stepski also brings a claim for the loss of his fishing vessel. [*Id.* at 4.] Plaintiff Kirsten Stepski brings claims for emotional distress and loss of consortium. [*Id.* at 5.] Plaintiffs Michael Stepski, Roderick, and Schober also bring claims for punitive damages, alleging that the Defendants acted recklessly and in violation of

---

[2] The Plaintiffs did not add or alter any claims in their Amended Complaints. It appears that they just changed the named Defendants, presumably after they identified the owners of the M/V Norasia Alya. In this Order, the Court will cite to the Plaintiffs' "Third Amended Complaint," filed June 1, 2006. [Doc. 53.]

Case No. 7:06-cv-01694
Gwin, J.

applicable rules and regulations.  [*Id.* at 6.]

The Defendants filed a motion for partial summary judgment.  In their motion, the Defendants argue that the Court should find, as a matter of law, that the Convention on the International Regulations for Preventing Collisions at Sea, Oct. 20, 1972, 28 U.S.T. 3459 (codified at 22 U.S.C. § 1602 *et seq*.) Rule 19 ("COLREG 19") is applicable to the events on May 22, 2004. [Doc. 37 at 9-10.]  The Defendants also argue that the Plaintiffs' claims for punitive damages and Kirsten Stepski's claims for infliction of emotion distress and loss of consortium should be dismissed as they are not recoverable under maritime law.  [*Id.* at 10-15, 16-20.]  The Defendants also seek partial summary judgment on the claims that Michael Stepski is liable for contribution for proportional fault and for failure to provide maintenance and cure, and that the Plaintiffs have failed to mitigate their damages.  [*Id.* at 15-16, 20-24.]

The Plaintiffs oppose the Defendants' motion for partial summary judgment and also move for partial summary judgment.  As a preliminary matter, the Plaintiffs move to strike the affidavits of Attorneys Singleton and Unger; the attached Defendants' exhibits C, D, E, F, G, H, I, J, K, and L; Kowalewski's declaration; and the attached Defendants' exhibits 1 and 3. [Doc. 49 at 5.] The Plaintiffs also move for sanctions, asking the Court to order the Defendants to pay the Plaintiffs' attorney fees incurred in responding to the motion for summary judgment.  [*Id.*]  The Plaintiffs oppose the Defendants' motion for summary judgment, arguing (1) that COLREG 18, not COLREG 19 applies to the boats' navigation because, according to the Plaintiffs, the vessels were in sight of each other; (2) that punitive damages are available in this case because the shipowner is vicariously liable for the actions of the master; and (3) that Kirsten Stepski's claims for negligent infliction of emotional damage and for loss of consortium are viable. [*Id.* at 5-18, 20-22.]  The Plaintiffs argue that the Defendants exceeded the scope of their leave to move for summary judgment and/or never

-5-

Case No. 7:06-cv-01694
Gwin, J.

made a counterclaim on the issues of contribution, failure to mitigate damages, and failure to provide maintenance and cure.   [*Id.* at 1-2; 19-20.]  Finally, the Plaintiffs also move for partial summary judgment, asking the Court to find that, as a matter of law, the Defendants violated COLREGS 5, 6, 7(A) and 7(B). [*Id.* at 23-28.]

The Defendants have replied, arguing that their evidence is admissible, that they are entitled to summary judgment on all of the claims put forth in their motion, and that the Plaintiffs' motion for partial summary judgment should be denied. [Doc. 43.]

## II.  Legal Standard

Summary judgment is appropriate where the evidence submitted shows "that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).  The moving party has the initial burden of showing the absence of a genuine issue of material fact as to an essential element of the non-moving party's case.  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997). "A fact is material . . . if it might affect the outcome of the suit under the governing law." *Mack v. Otis Elevator Co.*, 326 F.3d 116, 120 (2d Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986))).

The moving party meets its burden by "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp.,* 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)). However, the moving party is under no "express or implied" duty to "support its motion with affidavits or other similar materials negating the opponent's claim." *Id.*

Once the moving party satisfies its burden, the burden shifts to the nonmoving party to set

Case No. 7:06-cv-01694
Gwin, J.

forth specific facts showing a triable issue.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574, 587 (1986).  It is not sufficient for the nonmoving party merely to show that there is
some existence of doubt as to the material facts.  *See id.* at 586.  Nor can the nonmoving party rely
upon the mere allegations or denials of its pleadings.  Fed. R. Civ. P. 56(e).

In deciding a motion for summary judgment, the Court views the factual evidence and draws
all reasonable inferences in favor of the nonmoving party.  *McPherson v. Coombe*, 174 F.3d 276,
279-80 (2d Cir. 1999).  "The disputed issue does not have to be resolved conclusively in favor of
the non-moving party, but that party is required to present some significant probative evidence that
makes it necessary to resolve the parties' differing versions of the dispute at trial."  *McClellan v.*
*Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (citing *First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S.
253, 288-89 (1968)).  Ultimately the Court must decide "whether the evidence presents sufficient
disagreement to require submission to a jury or whether it is so one-sided that one party must prevail
as a matter of law."  *Kulak v. City of New York*, 88 F.3d 63, 70 (2d Cir. 1996) (quoting *Anderson*,
477 U.S. at 242).

### III.  Analysis

*A. Admissibility of Affidavits, Declarations, and Exhibits*

As a preliminary matter, the Court must consider whether certain documents and exhibits
are properly before the Court.  In their opposition to the Defendants' motion for partial summary
judgment/motion for partial summary judgment, the Plaintiffs move to strike the affidavits of
Attorneys Singleton and Unger; the attached Defendants' exhibits C, D, E, F, G, H, I, J, K, and L;
Kowalewski's declaration; and the attached Defendants' exhibits 1 and 3.  The Plaintiffs argue that
the affidavit of attorney Singleton is not based upon personal knowledge and is inadmissible under
Fed. R. Civ. P. 56.  The Plaintiffs also argue that the Declaration of Captain Kowalewski is

Case No. 7:06-cv-01694
Gwin, J.

inadmissible because it is "untrustworthy."    The Plaintiffs also argue that USCG documents attached as exhibits are inadmissible on statutory and hearsay grounds. The Plaintiffs have also requested that the court sanction the Defendants for this conduct and order the Defendants to pay the Plaintiffs' attorney fees incurred in responding to the motion for summary judgment.

The Court denies the Plaintiffs' request to strike and for sanctions in all respects.  The Defendants argue that the Singleton and Unger Affidavits were "submitted to place before the Court true and correct copies of sworn testimony and documents obtained or produced during discovery, as required by Fed. R. Civ. P. 56 (e)."  [Doc. 43 at 2; *see also* Doc. 39 at 3 ("In support of their motion, [Defendants] are submitting the true and correct copies of the deposition transcripts of Michael Stepski . . . ; Geal Roderick . . . ; and Benjamin Schober"); *id.* at 4 ("Defendants also are submitting the true and correct copies of the deposition transcripts of Captain Kowalewski; ... and Adrian Calimanescu"); Doc. 41 at 2 ("Plaintiff Kirsten Stepski was deposed on April 12, 2007.  A copy of the transcript of her deposition is attached hereto as Exhibit "J").]  Deposition testimony is properly considered under Rule 56 so long as it was made on personal knowledge ands sets forth facts that are admissible in evidence.  The Plaintiffs have not challenged the authenticity of the deposition transcripts.  The Court therefore finds that the attorney affidavits and their attached exhibits are proper under Rule 56, as the attorneys had personal knowledge as to the depositions. To the extent the attorney affidavits allege facts outside the personal knowledge of Singleton or Unger, the Court will disregard the factual allegations contained in the affidavits, and will instead consider the "sworn or certified cop[ies]" of deposition transcripts  attached as exhibits. *See In re M/V Rickmers Genoa Litigation*, 622 F.Supp.2d 56, 63 n. 7 (S.D.N.Y. 2009); Fed. R. Civ. P. 56(e)(1).

The Plaintiffs also challenge the Kowalewski Declaration, saying it is unsworn and allegedly

-8-

Case No. 7:06-cv-01694
Gwin, J.

untrustworthy. Contrary to the Plaintiffs' allegations, Kowalewski's Declaration complies with the requirements of 28 U.S.C. § 1746, and such unsworn declarations made under penalty of perjury are properly considered on summary judgment. 28 U.S.C. § 1746; *LeBoeuf, Lamb, Greene & MacRae, LLP v. Worsham*, 185 F.3d 61, 66 (2d Cir. 1999).   Moreover the Court finds that Kowalewski's Declaration is relevant, and that the Plaintiffs have not set forth specific facts as required under Rule 56 so as to put Kowalewski's credibility at issue.  The Court therefore denies the Plaintiffs' motion to strike the Kowalewski Declaration.  The Court further finds that the Defendants have not submitted the Singleton and Unger Affidavits or the Kowalewski Declaration in bad faith and therefore finds that sanctions or fees are inappropriate.  Fed. R. Civ. P. 56(g).

The Court also finds admissible the USCG documents the Defendants submitted as exhibits. 46 U.S.C. § 6308 prohibits the admission in civil proceedings of any part of "a report of a marine casualty investigation conducted under section 6301 of this title, including findings of fact, opinions, recommendations, deliberations, or conclusions."  46 U.S.C. § 6308(a).  Neither the USCG press release [Doc. 39-8] nor the USCG message [Doc. 39-9] is inadmissible under this provision.  Neither document was prepared as part of the investigation report.  The USCG message was sent out on May 22, 2004 to cancel the search and rescue effort for the Ava Claire.  The USCG press release summarizes the facts surrounding Stepski, Roderick, and Schober's rescue and does not include "findings of fact, opinions, recommendations, deliberations, or conclusions" of the investigation. Moreover, the document is not hearsay as the Court may take judicial notice of a government-issued press release as a matter of public record. *Kramer v. Time Warner, Inc.*, 937 F.2d 767, 774 (2d Cir. 1991).  The Court therefore denies the Plaintiffs' motion to strike either of the challenged USCG documents.

The Court accordingly **DENIES** the Plaintiffs' motion to strike the Defendants' affidavits,

Case No. 7:06-cv-01694
Gwin, J.

declarations, and exhibits, and **DENIES** the Plaintiffs' motion for fees and/or sanctions.

*B. Applicable COLREGS*

The parties agree that the navigation of both vessels at the time of the accident was governed by the Convention on the International Regulations for Preventing Collisions at Sea, Oct. 20, 1972, 28 U.S.T. 3459 (codified at 22 U.S.C. § 1602 *et seq.*)("COLREGS"). The Defendants move for partial summary judgment, asking the Court to find as a matter of law that COLREG 19 governed the vessels' navigation. The Plaintiffs respond and argue that COLREG 18, not COLREG 19, is applicable, and further move for partial summary judgment, asking the Court to hold as a matter of law that the Defendants violated COLREGS 5 (Look-out), 6 (Safe Speed), and 7 (Risk of Collision).

COLREG 19 is captioned "Conduct of vessels in restricted visibility." 28 U.S.T. 3459 R. 19. COLREG 19 provides that the rule "applies to vessels not in sight of one another when navigating in or near an area of restricted visibility." *Id.* Under Rule 3(l), the term "'restricted visibility' means any condition in which visibility is restricted by fog, mist, falling snow, heavy rainstorms, sandstorms, or nay other similar causes." 28 U.S.T. 3459 R. 3(l). In contrast, COLREG 18 is in the section of the Rules applicable to "vessels in sight of one another." Under Rule 3(k), "[v]essels shall be deemed to be in sight of one another only when one can be observed visually from the other." 28 U.S.T. 3459 R. 3(k).

The Defendants allege that the vessels were not in sight of one another until seconds before the alleged collision due to the heavy fog and that COLREG 19 therefore applies. The Plaintiffs argue that "uncontradicted proof shows the vessels were in sight" and that the Ava Claire "could be seen." [Doc. 49 at 6.] However, the Plaintiffs offer no evidence that the Ava Claire "could be seen." To the contrary, all of the evidence before the Court suggests that visibility on the day of and at the site of the collision was extremely limited due to fog, and that the vessels could not see each other

-10-

Case No. 7:06-cv-01694
Gwin, J.

until seconds before the collision.  *See* Schober Dep. at 60 (describing "zero visibility" while working the nets); *Id.* at 67-68 (describing first seeing the large ship seconds before the collision, or when it was about 50-100 feet away); Roderick Dep. at 171 (describing visibility of "maybe a hundred feet" at the time of the collision); Stepski Dep. at 190-91 (describing thick fog conditions throughout the day of the collision); *Id.* at 184 (describing seeing the large vessel only seconds before the collision); Kowalewski Dep. at 161 (describing restricted visibility of less than 0.1 nautical miles, and at times less).

The Court finds that no genuine dispute exists as to the presence of heavy fog at the location of both vessels on May 22, 2004, and that the vessels were therefore traveling in "restricted visibility."  Furthermore, the Court finds no dispute as to the fact that the vessels were not in sight of one another, as the individuals aboard each vessel could not visually observe the other vessel until the boats were so close that the collision was mere seconds away.  Under similar circumstances, the Second Circuit has held that COLREG 19 governs vessels navigating in limited visibility due to heavy fog.  *Otal Investments Ltd. v. M.V. Clary*, 494 F.2d 40, 52-53, 55-57 (2d Cir. 2007).  See *also Maritime & Mercantile Int'l LLC v. United States*, 2007 WL 690094 (S.D.N.Y. Feb. 28, 2007)(finding violations of Rule 19 in collision involving two ships traveling in heavy fog); *Seacarriers Maritime Co. v. M/T Stolt Jade*, 823 F.Supp. 1311 (E.D. La. 1993)("due to the restricted visibility in the area, both vessels were under an obligation to comply with Rule 19 of the COLREGS until they were within visual sight of one another").  As a matter of law, the Court therefore finds that COLREG 19 is applicable to both vessels' navigation.

In reaching this holding, the Court makes no finding as to the parties' duties, or as to any violations of the applicable COLREGS.  The Court merely finds that no genuine issue of material fact exists as to the limited visibility at the time and place of the collision and therefore holds as a

-11-

Case No. 7:06-cv-01694
Gwin, J.

matter of law that COLREG 19 applies.  The Court therefore **GRANTS** the Defendants' motion for

partial summary judgment with respect to this issue.

The Court notes that it appears that COLREGS 5, 6 and 7 also likely apply to this case as

they are rules that apply "in any condition of visibility."[3/]  28 U.S.T. 3459 R. 4.  However, the

Plaintiffs have failed to meet their burden of "identifying those portions of 'the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'

which it believes demonstrate the absence of a genuine issue of material fact" as to the Defendants'

violations of these rules.  *Celotex Corp.,* 477 U.S. at 323 (quoting Fed. R. Civ. P. 56(c)).  The Court

therefore **DENIES** the Plaintiffs' motion for partial summary judgment that the Defendants' actions

violated COLREGS 5, 6, and 7, as these are questions about which there are genuine issues of

material fact that must be determined at trial.

*C. Kirsten Stepski's Claims*

1. Negligent Infliction of Emotional Distress

The Defendants move for summary judgment dismissing Kirsten Stepski's claim for

negligent infliction of emotional distress, arguing that she has failed to make out a prima facie case.

Negligent infliction of emotional distress claims are cognizable in admiralty cases and are governed

by the general maritime law.  *Chan v. Society Expeditions*, 39 F.2d 1398, (9th Cir. 1994); *Peemoller

Sultan v. Pleasure Craft Contender*, 139 F.Supp.2d 230, 234-35 (D.P.R. 2001).  In applying the

general maritime law to claims for negligent infliction of emotional distress, federal courts have

applied limitations similar to those adopted by state courts.  In *Chan v. Society Expeditions*, the

---

[3/]The Court also notes that the Second Circuit has applied other rules applicable only when vessels are "in sight of one another" in a similar situation.  *See Otal Investments*, 494 F.3d at 52-59 (finding violations of COLREG 19, as well as COLREGS 13 and 16, in collision case involving three boats traveling in fog).

Case No. 7:06-cv-01694
Gwin, J.

Ninth Circuit identified three different theories limiting the recovery of damages for infliction of emotional distress: (1) the "injury or impact" rule, which limits recovery for emotional distress to plaintiffs who suffer an accompanying physical injury or contact; (2) the "zone of danger" test, which allows a plaintiff to recover even if there is no physical contact, so long as the plaintiff (i) witnesses peril or harm to another and (ii) is also threatened with physical harm as a consequence of the defendant's negligence; and (3) the "bystander proximity" rule, which permits recovery by a plaintiff if she (i) is physically near the scene of the accident, (ii) personally observes the accident and (iii) is closely related to the victim.  39 F.3d 1398, 1409 (9th Cir. 1994); *see also Gough v. Natural Gas Pipeline Co. of America*, 996 F.2s 763, 765 (5th Cir. 1993)(adopting the "physical impact or injury rule").

The Supreme Court adopted the "zone of danger" test for negligent infliction of emotional distress claims brought under the Federal Employer Liability Act ("FELA").  *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532 (1994).  Many courts, following the Court's holding in *Gottshall*, have similarly applied the zone of danger test to claims for negligent infliction of emotional distress under the general maritime law.  *See, e.g., Smith v. Carnival Corporation*, 584 F.Supp.2d 1343, 1354-55 (S.D. Fla. 2008); *Tassinari v. Key West Water Tours, L.C.*, 480 F.Supp.2d 1318, 1320 (S.D. Fla. 2007); *Williams v. Carnival Cruise Lines, Inc.*, 907 F.Supp. 403, 406 (S.D. Fla. 1995); *see also Yballa v. Sea-Land Services, Inc.*, 919 F.Supp. 1428, 1435-36 (D. Haw. 1995)(adopting "zone of danger" test in Jones Act case).

This Court finds it unnecessary to determine what should be the applicable test in this case because "none of the theories allow recovery when the plaintiff was not present at the accident scene."  *Chan*, 39 F.3d at 1409; *see also Peemoller Sultan,* 139 F.Supp.2d at 235-36 (plaintiffs cannot recover damages for negligent infliction of emotional distress under federal maritime law

-13-

Case No. 7:06-cv-01694
Gwin, J.

where they were not physically close to scene of collision); *Kunkel v. Motor Sport, Inc.*, 349 F.Supp.2d 198, 207 (D.P.R. 2004)(dismissing wife's claim for negligent infliction of emotional distress under general maritime law where she did not witness accident).   In this case, Kirsten Stepski was not present at the site of the collision, and as such was not directly injured or impacted by the defendants' alleged negligence; was not within the "zone of danger" of the defendants' alleged negligence; and was not physically near or able to personally observe the accident.

Moreover, the Plaintiffs have presented no evidence of any physical injury or manifestation of the alleged emotional injury to Kirsten Stepski.   While case law concerning the "physical manifestation" requirement is somewhat conflicting, courts considering claims for negligent infliction of emotional distress under the general maritime have generally required that the plaintiff show either (1) an emotional injury accompanied by a physical impact or injury as a result of the defendant's conduct or (2) an objective physical manifestation in the case of a "stand-alone" emotional distress claim.   *See Tassinari*, 480 F.Supp.2d at 1323-1325; 1 Thomas J. Schoenbaum, Admiralty and Maritme Law § 5-17 (4th ed. 2004)("Neither the general maritime law nor the Jones Act recognizes a right to recover damages for negligent infliction of emotional distress unaccompanied by physical injury. . . . [T]he plaintiff must demonstrate a physical manifestation that is a direct result of the emotional injury to recover damages.");   *see also Gottshall*, 512 U.S. at 547-48 (articulating similar standard in FELA case).   The Plaintiffs do not claim that Kirsten Stepski suffered a physical impact or injury as a result of the Defendants' alleged accident, as Kirsten was not present at the site of the accident.   The Plaintiffs also fail to present any evidence of a physical manifestation of Kirsten's alleged emotional injuries.   *See* Doc. 49 at 20 (claiming that "at the time of the collision, [Kirsten] was pregnant, suffering from depression . . . [and] as an immediate result of the collision, [Kirsten's] physical condition worsened," with no citations to evidence; Kirsten

-14-

Case No. 7:06-cv-01694
Gwin, J.

Dep. at 134-35 (describing no complications with pregnancy, birth, or post-birth following the accident).

Accordingly, Kirsten Stepski's claim for negligent infliction of emotional distress fails as a matter of law.  The Court therefore finds that Plaintiff Kirsten Stepski has failed to state a claim of negligent infliction of emotional distress under the general maritime law, and accordingly grants the Defendants' motion for partial summary judgment on this claim.

  2. Loss of Consortium

The Defendants also move for partial summary judgment to dismiss Kirsten Stepski's claim for loss of consortium, arguing that loss of consortium claims, like loss of society claims, are not cognizable in maritime law.  The Defendants argue that the Supreme Court's decision in *Miles v. Apex Marine Corp.*, 498 U.S. 19 (1990), forecloses loss of consortium claims under the general maritime law.  *Miles* held that "there is no recovery for loss of society in a general maritime action for the wrongful death of a Jones Act seaman."  *Id.* at 33.  *Miles*, however, did not overrule the Court's previous holdings in *Sea-Land Services, Inc. v. Gaudet*, 414 U.S. 573 (1974)(loss of society damages available in wrongful death action in territorial waters) and *American Export Lines, Inc. v. Alvez*, 446 U.S. 274 (1980)(loss of society damages available in non-fatality accident in territorial waters).  In interpreting *Miles*, courts have generally held that, while loss of society damages are available under state law for accidents to non-seamen occurring in state territorial waters, *see Yamaha Motor Corp. v. Calhoun*, 516 U.S. 199 (1996), loss of consortium and society are not recoverable under the general maritime law for accidents occurring on the high seas.  *See Chan v. Society Expeditions, Inc.*, 39 F.3d 1398, 1407-08 (9th Cir. 1994); *Friedman v. Cunard Line Ltd.*, 996 F. Supp. 303, 313 (S.D.N.Y. 1998).  The parties do not dispute that the collision at issue took place outside the territorial waters of the state of New York and that this case is  governed by the general

Case No. 7:06-cv-01694
Gwin, J.

maritime law.  *See* Doc. 53 at 2; Doc. 37 at 19-20; Stepski Dep. at 117.  The Court therefore finds

that pursuant to *Miles,* the general maritime law does not provide Kirsten Stepski with a cause of

action for loss of society and consortium for any injury resulting from the collision.  The Court

accordingly grants summary judgment in favor of the Defendants on this claim.

Accordingly, the Court **GRANTS** the Defendants' motion for partial summary judgment

with respect to both claims brought by Kirsten Stepski and dismisses all of Kirsten Stepski's claims

against the Defendants.

*D. Punitive Damages*

The Defendants also move for summary judgment on the Plaintiffs' claims for punitive

damages.  Since the Court's decision in *Miles*, federal courts have divided over whether *Miles*

forecloses the availability of punitive damages under the general maritime law.  The Second Circuit,

in *Wahlstrom v. Kawasaki Heavy Industries, Ltd.*, held that pursuant to *Miles*'s goal of promoting

uniformity between the general maritime law and analogous federal statutes–the Death on the High

Seas Act ("DOHSA") and the Jones Act–plaintiffs should not be allowed to pursue punitive

damages claims under the general maritime law.  4 F.3d 1084, 1094 (2d Cir. 1993).   After

*Wahlstrom*, however, courts in the Southern District of New York have split over whether this is the

proper interpretation of *Miles.  Compare, e.g., O'Hara v. Celebrity Cruises*, 979 F.Supp. 254, 255-

57 (S.D.N.Y. 1998)(holding that punitive damages are not available for personal injury negligence

claims under general maritime law) *with In re Horizon Cruises Litigation*, 101 F.Supp.2d 204, 210-

14 (S.D.N.Y. 2000)(examining cases and concluding that the Jones Act does not proscribe punitive

damages claims by injured passengers on the high seas).

In a recent case, the Supreme Court has clarified that the Jones Act does not entirely preclude

the award of punitive damages under the general maritime law.  In *Atlantic Sounding Co. v.*

Case No. 7:06-cv-01694
Gwin, J.

*Townsend*, the Court held that an injured seaman who sought recovery under the Jones Act could also recover punitive damages for willful failure to provide maintenance and cure under the general maritime law.  129 S.Ct. 2561 (2009).  In reaching this conclusion, the Court held that it is wrong to interpret *Miles* as limiting recovery in maritime death or personal injury cases to those remedies available under the Jones Act and DOHSA.  *Id.* at 2571-72.  Instead, the Court said, the Jones Act and DOHSA should be read as supplementing the traditional remedies available under the general maritime law, which included punitive damages and maintenance and cure.  *Id.* at 2572-75.

Assuming that the Court's decision in *Atlantic Sounding* stands for the proposition that punitive damages are generally available under maritime law, the Court must next consider whether it may assess punitive damages against the Defendants under the undisputed facts of this case.  In order for the Court to award punitive damages, a plaintiff must show that the defendant "was guilty of gross negligence, or actual malice or criminal indifference which is the equivalent of reckless and wanton misconduct."  *In re Marin Sulphur Queen,* 460 F.2d 89, 105 (2d Cir. 1972).  The Circuit Courts are divided over the standard by which a shipowner may be vicariously liable in punitive damages for the conduct of his agent under the general maritime law.  *Compare Protectus Alpha Navigation Co. v. North Pacific Grain Growers, Inc.*, 767 F.2d 1379, 1386 (9th Cir. 1985)(adopting Restatement (Second) of Torts § 909 as standard for vicarious liability of shipowner under general maritime law and upholding award of punitive damages against owner based upon managerial employee's reckless conduct) *with CEH, Inc. v. F/V Seafarer*, 70 F.3d 694, 705 (1st Cir. 1995)(rejecting wholesale adoption of § 909(c) but allowing award of punitive damages against shipowner for actions of agent acting in managerial capacity and in the scope of employment where accompanied by some showing of fault by the principal); *In re P&E Boat Rentals, Inc.*, 872 F.2d 642, 651-53 (5th Cir. 1989)(reversing award of punitive damages against owner of vessel where no

-17-

Case No. 7:06-cv-01694
Gwin, J.

showing that owner authorized or ratified acts of master either before or after accident); *United States Steel Corp. v. Fuhrman*, 407 F.2d 1143, 1146-48 (6th Cir.1969)(same).  Neither the Second Circuit nor the Supreme Court has decided the issue.  *See Exxon Shipping Co. v. Baker*, 128 S.Ct 2605, 2615-2616 (2008)(recognizing circuit split and dividing 4-4 on the issue of whether maritime law provides vicarious liability for punitive damages based on the acts of agents acting in a managerial capacity).

This Court is inclined to follow the majority of circuits in requiring that, in order to recover punitive damages against a shipowner under the general maritime law based upon the acts of an agent, a plaintiff show either (1) that the owner ratified or authorized the agent's actions, (2) that an agent acting in a managerial capacity within the scope of his employment acted egregiously and that the principal shares blame for the wrongdoing, or (3) that the owner himself acted recklessly in employing the agent.  *See CEH*, 70 F.3d at 705; *In re P&E Boat Rentals*, 872 F.2d at 652; *Fuhrman*, 407 F.2d at 1148.

The Defendants argue that there is no evidence supporting any of these three theories of liability, and that, therefore, regardless of whether Captain Kowalewski or anyone else aboard the Norasia Alya acted recklessly, the Defendants cannot be held liable for punitive damages.  [Doc. 37 at 14-15.]  The Court agrees.  There is no evidence that the Defendants authorized or ratified Kowalewski's or any other crew member's actions before or after the accident.  There is similarly no evidence that the Defendants were themselves reckless in employing Kowalewski.  Kowalewski is an experienced seaman and had served as the master of several vessels before serving as master of the Norasia Alya in 2004.  [Doc. 40 at 1.]  Finally, there is no evidence that Kowalewski was a managing agent of the Norasia Alya's owner and manager and that the owner and manager were in any way at fault for the actions of Kowalewski and the crew on May 22.  Kowalewski did not have

-18-

Case No. 7:06-cv-01694
Gwin, J.

the "managerial capacity" most courts have required to make a principal vicariously liable for the agent's actions under the general maritime law.  *See, e.g., CEH*, 70 F.3d at 705 (allowing punitive damages award against vessel owner where captain had "total authority" to hire and fire crew, to determine location and targets of trips, to sell catch, and to set forth and implement policies for vessel's crew and operations).  Moreover, there is no evidence supporting a finding of any direct fault on the part of the Defendants.  Kowalewski was under orders from the owner and manager to comply with the COLREGS. [Doc. 40 at 4.]  The Norasia Alya's charterer requested that the vessel proceed at full speed to New York in order to arrive in time for a previously-scheduled USCG inspection. [*Id.* at 4.]  There is no evidence that the Defendants (i.e., the owner and manager) authorized, ratified, or had any knowledge of this order.  [*Id.*]

The Court therefore **GRANTS** the Defendants' motion for partial summary judgment with respect to the Plaintiffs' claims for punitive damages, and dismisses these claims with prejudice.

E.  *Failure to Mitigate Damages and Counterclaim for Contribution*

The Defendants have also moved for summary judgment (1) asking the Court to hold, as a matter of law, that the Plaintiffs have failed to mitigate their damages and (2) in favor of the Defendants' counterclaim that Michael Stepski is liable for contribution for the Ava Claire's proportional fault and for his failure to provide maintenance and cure to Roderick and Schober.

The Court agrees with the Defendants' proposition that, as a general rule, under maritime law parties are liable in proportion to their proportional fault.  *See United States v. Reliable Transfer Co.*, 421 U.S. 397, 411 ("when two or more parties have contributed by their fault to cause property damage in a maritime collision or stranding, liability for such damage is to be allocated among the parties proportionately to the comparative degree of their fault").  The Court also finds that the Defendants are not barred from presenting these defenses, as they were properly raised in the

-19-

Case No. 7:06-cv-01694
Gwin, J.

Defendants' Answer and/or Counterclaim.  However, the Court believes these claims present

inherently factual issues and are not well suited to summary judgment.  These issues are best

reserved for trial, at which the parties can present evidence of relative fault for the Court or jury to

consider in making its damages determination.

Accordingly, the Court **DENIES** the Defendants' motion for summary judgment with respect

to the contribution and failure to mitigate damages claims.

Case No. 7:06-cv-01694
Gwin, J.

## IV.  Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** the Defendants' motion for summary judgment.  The Court dismisses with prejudice Plaintiff Kirsten Stepski's claims for negligent infliction of emotional distress and for loss of consortium and Plaintiffs Michael Stepski's, Roderick's, and Schober's claims for punitive damages.  The Court also finds that no material question of fact exists as to restricted visibility at the site of the incident on May 22, 2004 and that COLREG 19 is therefore applicable as a matter of law.

The Court **DENIES** the Defendants' motion for partial summary judgment with respect to all other claims, including the Defendants' counterclaim.  The Court also **DENIES** the Plaintiffs' motions for summary judgment; to strike various of the Defendants' affidavits, declarations, and exhibits; and for fees and/or sanctions.[4]

IT IS SO ORDERED.


Dated: January 14, 2010                              s/ _____
                                                     JAMES S. GWIN
                                                     UNITED STATES DISTRICT JUDGE

---

[4] Pursuant to the Court's July 8, 2009 Stipulation and Order, the Court also **DENIES AS MOOT** the Plaintiffs' motion to amend the caption to add Niantic Fish, LLC as a plaintiff.