# EXHIBIT I
## Captain Ahlstrom's Report

Case 7:06-cv-01694-JSG   Document 68-9   Filed 02/19/10   Page 2 of 7

## *Thomas H. Healey, Esq.*

17 Battery Place - Suite 605
New York, New York 10004

Facsimile: (212) 943-3525

Telephone: (212) 943-3520

February 8, 2008

**VIA TELEFAX**

Blank Rome LLP
405 Lexington Avenue
New York, New York 10174

Attention: Alan M. Weigel, Esq.

Freehill, Hogan & Mahar
80 Pine Street
New York, New York 10005

Attention: Michael Unger, Esq.

> RE:  Michael Stepski, Kristen Stepski,
> Geal Roderick, Benjamin Schober v.
> C/V NORASIA ALYA, et al.
> 06 Civil 1694 (CM)
> Your Ref.: 101230-0001
> ------------------------------------------

Dear Sirs:

Enclosed is the report of Captain Joseph Ahlstrom, plaintiff's maritime expert.

Very truly yours,

Thomas H. Healey

THH:ac

Enc.

# Captain Joseph Ahlstrom
## 401 Howard Avenue
## Staten Island, N.Y. 10301
## 718-727-1989 (Phone)
## jahlstrom@sunymaritime.edu

February 5, 2008

### Subject: Expert Opinion: Michael Stepski v. NORASIA ALYA: Collision

By request of Mr. Thomas Healey I have reviewed the material listed below relating to a collision that involved the M/ V NORASIA ALYA and the Fishing Vessel AVA CLAIRE. This collision occurred 30 miles SSE of Montauk Point, New York on May 22, 2004 at 1230 Local Time. I have been asked to review the possibility of the accident given the below information and if any Rules of the Road were violated.

In analyzing this matter I have reviewed the following:

1. Deposition of 3/M Adrian Calimanescu 9/12/07

2. Deposition of Captain Maciej Kowalewski 9/12/07

3. Photos of M/V NORASIA ALYA while in Port Elizabeth, N.J. 5/23/04

4. M/V NORASIA ALYA Crew List 5/23/04

5. M/V NORASIA ALYA ECDIS data for time of accident extracted 5/23/04

6. Witness Statement from crew of F/V Ava Claire

7. Witness Statements from USCG Rescue Crew from Sector New York

8. Log Books from M/V NORASI ALYA 2004

9. Photo of M/V GULD FALK and remains of F/V Ava Claire after the collision

10. 406 MHZ Beacon Data (EPIRB) for May 22, 2004

11. Forensic Science Laboratory findings from State of Connecticut 7/12/04

12. USCG Report of the Marine Accident (2692) dated 5/25/04

13. E-Mail exchange regarding EPIRB by CDR. Blume USCG

1

My name is Captain Joseph F. Ahlstrom. I have sailed since 1982 from Third Mate to Master, mainly as Chief Mate and Master. I have commanded 6 separate Merchant Ships. My last command was the Training Ship Empire State, with more than 350 cadets training to be Third Mates and Third Engineers. In my job as Master I emphasized the importance of safe working conditions. I was the Chair of the Marine Transportation Department at SUNY Maritime College and am currently a tenured Associate Professor in that Department. The Courses I instruct are Global Maritime Distress and Safety System (Communications), ISM (International Safety Management) and Maritime Security. In the Graduate Program I teach Dry / Wet Bulk Cargo and Port Security. I have previously taught Tankers, P.S. 101, an entry level course involving ship orientation and safe working practices and Rules of the Road involving the International 72 COLREGS and the Inland Navigation Rules. I have also taught the Rules as part of the A/B Course and license upgrade courses at Continuing Education schools such as New York School of Seamanship. I have recently published a textbook in Vessel Security for Cornell Maritime Press.

## The Accident

In reviewing the above material it is clear that the F/V AVA CLAIRE was fishing approximately 30 nautical miles SSW of Montauk Point on May 22, 2004 when an unidentified Merchant Vessel plowed into their vessel and cut it in two. Aboard the Fishing Vessel at the time of the Collision were 3 men. The 3 men abandon ship and entered a life raft after donning immersion suits. The merchant vessel did not slow down, stop to assist or report the collision. The 3 men were rescued by a USCG helicopter at 1530 Local.

The AVA CLAIRE was a U.S. flag documented 38 foot, 18 gross ton, and uninspected commercial fishing vessel. The vessel was required to be equipped and operated in accordance with 46 CFR Subchapter C. The documented owner and operator was Niantic Fish LLC. At the time of the collision the fishing vessel was engaged in monk fishing with weighted gill nets. The AVA CLAIRE was on a Northerly Heading North of the charted Inbound Separation Scheme (Ambrose – Nantucket Safety Fairway) in an accepted safe area for pleasure craft and fishing vessels. The Captain of the AVA CLAIRE was familiar with the area, his vessel and the fishing trade. The crew was working nets in order to fish. Prior to the accident the vessel was fishing on an Easterly heading hauling and setting nets. The visibility at the time was restricted by fog making the Captain unable to see any approaching vessel.

The Captain observed on his radar an approaching target. When the target closed to less than 1.5 miles he told the crew to untie the bottom bridle while he untied the upper bridle. After untying the upper bridle he went to the wheel house changed the vessels heading to North and put the throttle ahead full in order to avoid the approaching target. In pointing the vessel north he was attempting to head further away from the traffic separation scheme which Merchant Vessels follow Inbound to New York. The Captain was displaying the proper lights for a fishing vessel. Prior to the accident he did not hear any

2

whistle signals or any calls on the VHF radio. He was monitoring Channel 13 and 16. The crew agrees that the hull of the vessel that collided with them was blue with a white house located aft. They also identified a free fall survival craft on the stern in addition they remember seeing containers on deck as it moved away. Given that the Merchant Vessel was not seen at less than 1.5 miles and after the collision the Merchant Vessel disappeared into the fog in less than a minute we can assume the visibility was restricted at less than half a mile.

The crew was fortunate enough to manually activate their EPIRB. The signal from the ACR Electronics EPIRB was picked up and identified the vessel as the F/V AVA CLAIRE (O.N. 547315) The EPIRB which utilizes a satellite system know as COSPAS-SARSAT located the Fishing Vessel in position 40-32.5 North 071-40.4 West at 1320 Local. With this information the USCG was able to dispatch a rescue helicopter to the vicinity and spot the crew at 1510 local. By 1530 Local the crew was safely hoisted aboard the helicopter.

The USCG identified 3 vessels in the vicinity of the AVA CLAIRE at the time of the collision. The vessels were the tanker GULD FALK, tanker PODRAVINA, and NORASIA ALYA. Of the 3 the PODRAVINA and NORASIA ALYA have stern launched survival craft. The PODRAVINA has a black hull and the NORASIA ALYA has a blue hull. Only the M/V NORASIA ALYA is a container ship. USCG boarded the M/V NORASIA ALYA in Port Elizabeth on May 23, 2004. They found scrapes on the vessels side and a chip of green paint on the bulbous bow that had fiberglass fibers embedded in it. They pulled information off the ECDIS which placed the NORASIA ALYA within 2 Nautical Miles of the Fishing Vessel AVA CLAIRE at the time of the collision. This was much closer than either of the other 2 vessels. The Captain of the M/V NORASIA ALYA denied colliding with the fishing vessel; he did acknowledge hearing about the collision on the radio. At this point given the proximity of the vessel and his track line placing him at the position an hour ago the prudent mariner should have contacted the USCG. He stated that he had altered course to the North West to overtake the PODRAVINA. This would have put him out of the lane and in the vicinity of the AVA CLAIRE. Photographs taken of the PODRAVINA in Wilmington, N.C. on May 26, 2004 show no scrapes on the side or any evidence of the vessel being in a recent collision.

3

## Opinion of Accident

It is my professional opinion from the information I reviewed and the ACCIDENT scenario I have provided above that the M/V NORASIA ALYA was the vessel that collided with the Fishing Vessel AVA CLAIRE and cut it in half. According to the information I have reviewed the United States Coast Guard has come to the same conclusion. Beyond that I have been asked to address the possibility that the M/V NORASI ALYA had violated the International Rules of the Road. I also feel that the M/V NORASIA ALYA did in fact violate several Rules of the Road. The Rules that the NORASIA ALYA violated on May 22, 2004 are as follows:

1. Rule 5 Look-Out

2. Rule 6 Safe Speed

3. Rule 7 (a) Risk of Collision

4. Rule 18 (a) Responsibilities between Vessels

5. Rule 19 (b) Conduct of Vessels in Restricted Visibility

6. Rule 35 (a) Sound Signals in Restricted Visibility

The Rules of the Road that applied to the M/V NORASIA ALYA between 1200-1300 on May 22, 2004 were the International Rules of the Road (72 COLREGS). The vessel was operating in what is know as the "high seas and in all waters connected therewith navigable by seagoing vessels" as described in Rule 1. Therefore the Rules the M/V NORASIA ALYA violated as described above are International Rules.

In reviewing the USCG findings it appears they also find that the M/V NORASIA ALYA violated Rule 35(a) which states "A power driven vessel making way through the water shall sound at intervals of not more than 2 minutes one prolonged blast". Although the Captain claims in his deposition that he was sounding fog signals, no entry was made in the logbook I reviewed for that day. In addition the crew of the AVA CLAIRE does not recall hearing any fog signals. Therefore I must conclude that no fog signals were sounded on the M/V NORASIA ALYA despite being in visibility described as .1 miles.

The USCG found that the M/V NORASIA ALYA also violated Rule 19(b) which states that "every vessel shall proceed at a safe speed adapted to the prevailing circumstances and conditions of restricted visibility. A power driven vessel shall have her engines ready for immediate maneuver". 22 knots in heavy fog and proceeding outside the safety fairway where small craft and fishing vessels are known to exist is not a safe speed. Further the Captain made a point of maintaining 22 knots; I see no mention of the Engines being on Stand By or of any consideration being made to slow down if necessary.

4

Case 7:06-cv-01694-JSG Document 68-9 Filed 02/19/10 Page 7 of 7

Rule 5 states, "Every vessel shall at all times maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision". In the deposition of Captain Kowalewski it is clear that watch standing procedures prior and on May 22, 2004 were different that procedures after May 23, 2004. A good look out would include posting a lookout as far forward and down low as possible especially in restricted visibility. Having 2 people on the Bridge is unacceptable for keeping an adequate lookout, while having the helm on automatic and having one mate plot the course. This situation is compounded when you are near an area of fishing vessels or pleasure craft. Departing the safety fairway even to overtake another vessel only increases the risk of collision. Furthermore the Captain would have to leave the bridge to eat or use the toilet. At that time only 1 person would be on the bridge. The USCG agreed with this point in their findings as well.

Rule 18(a) simply deals with the Responsibilities between Vessels. It states, "a power driven vessel underway shall keep out of the way of: (iii) a vessel engaged in fishing." This Rule is found in Part B Steering and Sailing Rules Section II Vessels in Sight of One Another. Rule 5, 6 and 7 are found in the Steering and Sailing Rules Section I Conduct of Vessels in Any Condition of Visibility. Rule 19 is Section III Conduct of Vessels in Restricted Visibility and Rule 35 deals with Sound Signals in Restricted Visibility. Now one may think that since the M/V NORASIA ALYA was unable to see the F/V AVA CLAIRE this rule may not apply. However if one would reference the Coast Pilot or British Admiralty Sailing Directions the possibility of such vessels existing in that area on may 22, 2004 was highly likely. Then we get back to the posting of a lookout to identify such vessels. It is clear from the crew of the F/V AVA CLAIRE that they identified the M/V NORASIA ALYA as a Power Driven Vessel just prior to the collision on May 22, 2004. As such she should have kept out of the way of the F/V AVA CLAIRE.

Rule 7(a) states, "Every vessel shall use all available means appropriate to the prevailing circumstances and conditions to determine if risk of collision exists. If there is any doubt such risk shall be deemed to exist". It is clear from the deposition of Captain Kowalewski and statements that all available means were note used to determine risk of collision. Procedures following the sinking of the F/V AVA CLAIRE clearly exhibit better methods of determining a risk of collision. The prevailing circumstances were reduced visibility (0.1 nautical miles) and presence of fishing vessels and pleasure craft. The vessel was also located outside the Safety Fairway. It was essential at this time that a lookout forward and down low was needed. It is no wonder with the minimum effort put into assessing a risk of collision that one occurred. In addition it is feasible that even after the collision with minimum look-out that a strken vessel would have been observed.

- I reserve the right to alter my position should additional information be provided

Captain Joseph Ahlstrom

5