UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x

MICHAEL STEPSKI, KIRSTEN STEPSKI, Wife,
GEAL RODERICK AND BENJAMIN SCHOBER,

                 Plaintiffs,

      -against-

                                   06 Civil 01694
The M/V NORASIA ALYA, her owners,          (JSG)
operators, etc., and MS "ALENA"
SCHIFFAHRTSGESELLSCHAFT mbH & CO. KG,
PETER DOHLE SCHIFFAHRTS-KG,

                 Defendants.

----------------------------------------x


**MEMORANDUM OF LAW IN REPLY TO DEFENDANTS'
OPPOSITION TO THE PLAINTIFFS' MOTION IN LIMINE
RE: THE BOLTON SUBMISSION AND IN OPPOSITION
TO DEFENDANTS' CROSS-MOTION**

THOMAS H. HEALEY, ESQ.
Attorney for Plaintiffs
17 Battery Place
New York, New York 10004
Telephone: 212-943-3520

## **TABLE OF CONTENTS**

TABLE OF CONTENTS...........................................ii

TABLE OF AUTHORITIES.......................................iii

EXPLANATORY STATEMENT........................................1

ISSUES OF CAUSATION..........................................5

THE LEGAL ISSUE HERE INVOLVED................................5

EXAMINATION OF BOLTON'S REPORT AND
THE DEFENDANTS' DEFENSE THEREOF..............................8

EXAMINATION OF APPENDICES AND
OTHER IMPEDIMENTA............................................9

DEFENDANTS' CROSS-MOTION FOR IN LIMINE
DETERMINATION OF THE ADMISSIBILITY OF THE
REPORT AND TESTIMONY OF PLAINTIFFS' EXPERT
CAPTAIN JOSEPH AHLSTROM.....................................10

CONCLUSION...............................................12,13

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

Arista Records LLC v. Usenet.Com, Inc.,608 F.Supp.2d 409.....7,8

Robert A. Falise v. The American Tobacco
Company, 258 F.Supp.2d 63...................................7

## EXPLANATORY STATEMENT

The Bolton testimony should be directed solely to the maritime aspects of the collision. Therefore, the issues raised by plaintiffs' motion and the defendants' response and cross-motion should be considered in the light of these established facts.

On May 22, 2004, the fishing vessel AVA CLAIRE, 42-foot, was struck and sank. The three plaintiffs who were aboard the AVA CLAIRE, Michael Stepski, Geal Roderick and Benjamin Schober, gave a description of the ramming vessel immediately to the Coast Guard. They described a large container ship, approximately 800 feet with a white afterdeck house, blue hull, red undercoat with an aft slung lifeboat. The aft lifeboat was a distinguishing feature; lifeboats were normally hung from davits over the sides.

Reference is made to photographs annexed to the Thomas H. Healey affidavit (Exhibits 1 through 6).

Exhibit photos 1 and 2 of the NORASIA ALYA show that she clearly meets the description given by the three fishermen.

On the following day, May 23rd, the Coast Guard conducted an investigation of the NORASIA ALYA in Port Elizabeth, New Jersey.

Exhibit photo 3 shows the bulbous bow of the NORASIA ALYA which bears the marks of a recent collision and bears alien paint similar to the AVA CLAIRE.

Exhibit photo 4 shows fresh scrape marks on the NORASIA ALYA bow tracking down each side of her hull, consistent with the

testimony that the AVA CLAIRE was split in two and slid down the sides of the NORASIA ALYA.

Exhibit photo 5 shows collision scrape marks, port hull; Exhibit photo 6 shows bulbous bow with collision scrape marks.

The Coast Guard sent an urgent message broadcast to all mariners on VHF giving the location of the collision (Exhibit 7) (The AVA CLAIRE EPIRB emergency signal was activated by collision with the NORASIA ALYA.)

The EPIRB signal fixed the time of the collision at approximately 12:37, (military 24-hour clock time).

Defendants have affixed in toto the U.S. Coast Guard investigation. This is questionable practice since not everything therein is automatically admissible.

But for present purposes, these U.S. Coast Guard conclusions, which are in direct contradiction to defendants' submissions,[1] are relevant:

### Conclusions

1.  It is concluded that the AVA CLAIRE was sunk as the result of a high-energy collision with another vessel that was not immediately identified.

2.  It is concluded that the EPlRB on the AVA CLAIRE was knocked free of its mounting bracket by the force of the collision and began transmitting

---

[1]    Defendants and Bolton claim reliance on the Coast Guard report for their claim that the NORASIA ALYA did not collide; it was the PODRAVINA. The Coast Guard found the exact reverse.

-2-

upon entering the water.

3.  Based on the visual description
    provided by the crew, the ECDIS
    information obtained from the
    NORASIA ALYA and the Coast Guard's
    AIS information, it is concluded
    that the NORASIA ALYA collided with
    the AVA CLAIRE sometime between
    1230Q/1630Z and 1240Q/1640Z. It is
    further concluded that neither the
    PODRAVINA nor the GULD FALK were
    involved in this collision.

4.  There is evidence to suggest that
    the AVA CLAIRE was in violation of
    the 72 COLREGS in that sound signals
    were not being sounded as required
    by 35(d).

5.  There is evidence to suggest that
    the NORASIA ALYA was in violation of
    the 72 COLREGS, Rule 19(b) in that
    the vessel was proceeding at 22
    knots in very heavy fog. Further,
    there is evidence to suggest that
    the NORASIA ALYA was in violation of
    the 72 COLREGS, Rule 5 in that the
    AVA CLAIRE was not detected by the
    ship's crew either before or after
    the collision. Further, there is
    evidence to suggest that the NORASIA
    ALYA was in violation of the 72
    COLREGS, Rule 35(a) in that sound
    signals were not being sounded as
    required. ...

(U.S. Coast Guard Report, page 9)

The master of the NORASIA ALYA, Captain Maciej Kowalewski, has
been deposed. His deposition is before the court. He confirms
that at the time in question, between 12:00 noon and 1:00 p.m., the
NORASIA ALYA was traveling in extremely restricted visibility at a
steady rate of 22.4 knots west towards New York on automatic pilot.

-3-

Her engines were not on standby maneuver.  There was no lookout.
No individual had been assigned solely to monitor radar and plot
targets.  Around 12:30, the NORASIA ALYA veered north out of  the
freeway and into adjacent fishing grounds where the collision
occurred.

Captain Kowalewski admitted he received the Coast Guard's
urgent message broadcast, {copy annexed as Exhibit 7}.  He knew he
was bound by law to proceed at top speed to render assistance.  He
did no such thing, but continued to run away from this scene
maintaining 22.4 knots.  He did not advise the Coast Guard that he
was in the vicinity.

Captain Kowaleski claims that he was unaware that the NORASIA
ALYA was the subject of investigation until the following morning,
May 23rd.  Captain Kowalewski's claim of ignorance has effectively
rendered him a non-witness to deny collision.  Defendants suggest
that he will probably be their only fact witness.

Given the clear and simple facts of collision, and with
defendants showing no other pertinent facts, it may be concluded
that defendants' purpose for Bolton is to conjure up "facts" and
confusion.

Therefore, Bolton will not assist the jury and is barred by
Federal Rules of Evidence 702.

**ISSUES OF CAUSATION**

Defendants submit that experts often testify on causation; therefore, Bolton can.

But there are two areas of causation:

(1) Who hit the AVA CLAIRE, was it the NORASIA ALYA?

(2) Did COLREGS violation contribute?

Who hit the AVA CLAIRE is a pure fact matter which the jury can handle with no "suppositions" or "scenarios" from Bolton.

Whether any parties failed to observe COLREGS is an area where an expert may opine if said expert meets the qualifications of Federal Rules of Evidence 702.

Whether Bolton may offer opinions concerning Stepski and COLREGS, plaintiffs have noted their objections in the moving papers. We now submit that defendants' reply does not carry their burden to qualify their chosen expert. Defendants' Appendix I misquotes alleged facts, but now substituting, improperly, other materials to save Bolton worsens the offer. We are now to assess Bolton on counsel's selected grounds.

**THE LEGAL ISSUE HERE INVOLVED**

Plaintiffs' motion specifically invokes Federal Rule of Evidence 702 as the standard against which Bolton must be measured, i.e. expert testimony must be based upon sufficient facts or data subject to reliable principles and methods properly applied.

The defendants' brief submits much argument and citations all

-5-

off point, to wit: (1) maritime law allows maritime experts to testify; and (2) the fact that the fact or data relied upon by the expert may be weak or in part contradicted does not preclude the expert; such weaknesses are probed on cross-examination. Plaintiffs do not argue those points.  Before reaching that issue, Federal Rules of Evidence 702 criteria must be applied to determine whether Bolton meets these threshold requirements.   Succinctly stated, the test is in the following quotes:

> Falise v. The American Tobacco Company, 258 F.Supp. 2d 63:
>
>> Fed.R.Evid. 702 (as amended Dec. 1, 2000) (amended text emphasized).  The admissibility of expert testimony is predicated upon convincing the court pursuant to Rule 104(a) that the proponent has established scientific reliability by a preponderance of the evidence. ...
>>
>> Too nitpicking an approach to find reasons to exclude expert testimony from distinguished scientists will tend to drive the best of them out of the courtroom.  The greatest danger to the courts is not the incompetent who will testify for pay, but our failure to encourage sound scientists to assist the law. ...

The converse is true; neglect of the "gatekeeper function" opens the door to incompetents who testify for pay.

> Arista Records LLC v. Usenet, Com, Inc., 608 F.Supp.2d 409:
>
>> ...Because Defendants have failed to meet their burden of demonstrating that Professor Farber's opinions about Defendants' system are based on sufficient facts or data, or are the product of reliable methods or principles, as required by Federal Rule of Evidence 702...the Court grants in part Plaintiffs' Motion. ...

-6-

Rule 702 of the Federal Rules of Evidence...
The reliability requirements were added in
2000 and were intended to codify the
requirements set forth in Daubert, 509 U.S.
579, 113 Ct. 2786...

    "While the proponent of expert testimony
has the burden of establishing by a
preponderance of the evidence that the
admissibility requirements of Rule 702 are
satisfied, the district court is the ultimate
gatekeeper." United States v. Williams, 506
F.3d 151, 160 (2d Cir. 2007)...Additionally, a
court must ensure that an expert will be
proffering opinions on issues or subject
matter that are within his area of expertise.
See, Stagl v. Delta Air Lines, Inc., 117 F.3d
76, 81 (2d Cir. 1997).

    "Next, the district court must decide
whether the proffered testimony has a
sufficiently reliable foundation to permit it
to be considered." Amorgianos v. Nat'l R.R.
Passenger Corp., 303 F.3d 256, 265 (2d Cir.
2002)...

    Expert testimony should be excluded if it
is speculative or conjectural, see In re Air
Disaster at Lockerbie Scotland, 37 F.3d 804,
824 (2d Cir. 1994), or if it is based on
assumptions that are "so unrealistic and
contradictory as to suggest bad faith."
Shatkin v. McDonnell Douglas Corp, 727 F.2d
202, 208 (2d Cir. 1984). Nevertheless,
"contentions that assumptions are unfounded 'go
to the weight, not the admissibility of the
testimony'" Boucher v. U.S. Suzuki Motor Corp.,
73 F.3d 18, 21 (2d Cir. 1996)...

    ...A minor flaw in an expert's reasoning or a
small modification to a reliable method will
nct render an opinion per se inadmissible; a
"judge should only exclude evidence where the
flaw is large enough that the expert lacks
'good grounds' for his conclusions." Id.
(citing In re Paoli R.R. Yard PCB Litig., 35
F.3d 717, 746 (3d Cir. 1994))...

-7-

## EXAMINATION OF BOLTON'S REPORT AND THE DEFENDANTS' DEFENSE THEREOF

We refer the court to the original moving papers where plaintiffs detailed Bolton's improper and scandalous remarks, (e.g. comments on medical conditions, credibility of witnesses, offering of concededly unsupported suppositions [e.g. the presence of a steel-hulled fishing boat]).  Defendants' attempt to sluff off these offenses in a memorandum footnote (page 10) where they state, "defendants agree that Captain Bolton will not express any ultimate opinions on whether the Plaintiffs are testifying truthfully. Accordingly, it is unnecessary for the Court to hold a Daubert hearing to consider this aspect of Captain Bolton's opinions. ..." This direction to the Court to ignore its "gatekeeper" responsibility is of no validity since defendants cannot deny the listed improprieties which constitutes a failure to carry their burden to qualify Bolton; the Court should carry out its Fed.R.Evid. 702/Daubert examination laid out in the motion papers.

Therefore, pages 2-14 of Bolton's submission are concededly, in part, resting upon improper material, U.S. Coast Guard findings and speculation. It is not the Court's function to sort out reliable facts or data to rewrite Bolton's opinion.

If the Court determines that on the Stepski/COLREGS issue, determination will await cross-examination, the parameters should be clarified.

-8-

The reach and effect of the COLREGS is for the maritime courts, not for mariners; an expert must accept the COLREGS as defined by the Court. An example of Bolton's improperly distorting the COLREGS is Rule 5 Lookout. The law is clear. There is an absolute obligation on a vessel such as the NORASIA ALYA to maintain at all times a proper lookout, i.e. an experienced seaman properly positioned with no other responsibilities. Radar is not a substitute. Bolton's statement that "specifics of how to fulfill the requirements of this rule are generally left up to the master..." is wrong and misleading to a jury.

### **EXAMINATION OF APPENDICES AND OTHER IMPEDIMENTA**

At page 14, Bolton submits, "The NORASIA ALYA---Not the Colliding Vessel." This is based on admitted assumptions and warping of the U.S. Coast Guard specific findings.[2]

The defendants say (page 13-memorandum) that Bolton is qualified and that this is a "fact plaintiffs apparently do not dispute." Plaintiffs have disputed, and demonstrated, that Bolton is not qualified under Federal Rules of Evidence 702.

Appendix I, Bolton's analysis of the COLREGS, is, as we pointed out, an improper invasion of the court's province. The

---

[2]    The reasoning is patently false; e.g. their premise is that if the NORASIA ALYA hit the AVA CLAIRE, she would be destroyed. Counsel joins by pointing out that after the AVA CLAIRE was split in two, the stern sunk, but the bow bobbed for a while--from which offer, AVA CLAIRE was not destroyed. The argument is subject to "reductio ad absurdum."

defendants make no response.

In another Appendix, Bolton comments on Captain Ahlstrom's report. They are not analytic, they are not based on maritime principles, and they attack Captain Ahlstrom's credibility (which defendants say they won't do).

Defendants make no response.

The Bolton Supplementary Report of May 14, 2008:

This is not a matter of expert opinion, but is an attempt to submit hearsay testimony and unidentified documents. The defendants make no response.

## THE DEFENDANTS' CROSS-MOTION FOR IN LIMINE DETERMINATION OF THE ADMISSIBILITY OF THE REPORT AND TESTIMONY OF PLAINTIFFS' EXPERT CAPTAIN JOSEPH AHLSTROM

The issue whether Captain Ahlstrom's qualifications should be subject to an in limine Daubert hearing is raised by defendants' cross-motion and then effectively abandoned.

Not one fact, legal authority or argument is presented in favor of such hearing.

Defendants' conclusion is that if the Court strikes Bolton in whole or in part, then do the same to Captain Ahlstrom. There is no showing of identity between Bolton's and Captain Ahlstrom's methods, subject matter, data or conclusion.

The defendants' prayer for relief is impossible.

Defendants having chosen to abandon their motion for an in

-10-

limine hearing should proceed by cross-examination on trial.

At page 4 of the memorandum, the defendants reference a supplemental Ahlstrom report and state:

> ...Defendants shortly will be filing a motion to strike this late report on the grounds that its submission at this late date violates the discovery schedule set in this case...

The supplemental report was in response to defendants' request.

It violated no discovery schedule; tellingly defendants' cite no schedule.

The supplement, by definition, expanded only upon materials in the original. The subject, vessel courses and EPIRB, have been issues from the beginning, and were covered in defendants' deposition of Captain Ahlstrom. Defendants have a counter-expert, Bolton.

There is no possible prejudice to defendants.

Defendants have raised no particular objection to Captain Ahlstrom's main report, _a fortiori_, they have no objection to the supplement.[3]

---

[3]    The affidavit of Richard Singleton states that both Ahlstrom reports, original and supplemental, are moved against:

> ...defendants cross-move for an Oder[sic] striking the expert reports of Plaintiffs' maritime expert, Captain Joseph Ahlstrom, and precluding Captain Bolton from testifying...

Defendants cannot make another motion, not even "shortly."

-11-

Defendants do not come with clean hands.  At the telephonic scheduling conference, (January 28, 2010), defendants represented they were prepared for trial.

Defendants aborted settlement discussions begun on February 3, 2010 by:

(a) writing to question counsel's integrity by demanding written confirmation that plaintiffs had been advised of any issues involving potential conflict, otherwise, defendants would seek remedy from the Court.

Defendants have been given such writing, not because their position had any merit, but to remove an artificial cover for more motions and delay.

(b) Immediately thereafter, defendants, without leave of Court and in violation of Federal Rules of Civil Procedure 33, and Local Rule 33.3, served extensive interrogatories, dated February 19, 2010.

**CONCLUSION**

As to plaintiffs' motion pursuant to Fed.R.Evid. 702 to strike all or part of the Bolton Report and testimony, plaintiffs pray for an order:

(1) Striking the improper and scandalous matter, the findings of fact of U.S. Coast Guard report conceded by defendants as improper and "suppositions" and scenarios in Bolton report;

-12-

(2) Striking the Bolton appendices, COLREGS Analysis;

(3) Strike Bolton's comments about Captain Ahlstrom;

(4) Strike Bolton's "The NORASIA ALYA - Not the Colliding Vessel" (pages 14-16);

(5) Strike Bolton's Supplemental Report;

(6) Strike Bolton's conjecture re: Stepski/COLREGS (pages 2-13) for lack of required factual/data base and failure to apply accepted maritime principles-or-strike conceded improper matter and leave final determination for trial after cross-examination.


As to defendants' cross-motion, plaintiffs pray for an order denying it in its entirety.

DATED: NEW YORK, NEW YORK
       February 24, 2010

                        Yours, etc.

                        THOMAS H. HEALEY, ESQ.
                        Attorney for Plaintiffs


                BY:
                        Thomas H. Healey (THH-3093)
                        17 Battery Place - Suite 605
                        New York, New York 10004
                        (212)943-3520

TO:   BLANK ROME LLP
      Attorney for Defendants
      405 Lexington Avenue
      New York, New York 10174

      FREEHILL, HOGAN & MAHAR
      80 Pine Street
      New York, New York 10005

-13-