UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x

MICHAEL STEPSKI, KIRSTEN STEPSKI, Wife,
GEAL RODERICK and BENJAMIN SCHOBER,

                            Plaintiffs,

        -against-

The M/V NORASIA ALYA, her owners,
operators, etc. and MS "ALENA"
SCHIFFAHRTSGESELLSCHAFT mbJ & CO., KG
PETER DOEHLE SCHIFFAHARTS-KG,

                          Defendants.

--------------------------------------------------------------x

**JOINT PRE-TRIAL
ORDER**

7:06-CV-1694
HON. JAMES S. GWIN

## I. APPEARANCES:

FOR PLAINTIFFS:

Thomas H. Healey
THOMAS H. HEALEY, ESQ.
17 Battery Place
New York, New York 10004
212-943-3520

FOR DEFENDANTS:

Richard V. Singleton
Alan M. Weigel
BLANK ROME, LLP
405 Lexington Avenue
New York, New York 10174
212-885-5000

Michael Unger
FREEHILL, HOGAN & MAHAR
80 Pine Street
New York, New York 10005
212-425-1900

## II. NATURE OF ACTION AND JURISDICTION

A.  This is an action for money damages by the plaintiffs for general and special damages for injuries resulting from a collision at sea between fishing vessel AVA CLAIRE and a 800-foot container ship.

B.  The jurisdiction of the Court is invoked under 28 U.S. Code 1302 (diversity of citizenship). The applicable law is general maritime law, including the "Rules of the Road", COLREGS, 33 U.S. C. 1602.

C.  This jurisdiction of the Court is undisputed.

## III. TRIAL INFORMATION

A.  The estimated length of trial is 4-5 days.

B.  Trial to the jury is set for week of March 22, 2010.

## IV. AGREED STATEMENTS AND LISTS

### A. General Nature of the Claims of the Parties

#### (1) PLAINTIFFS' CLAIMS:

The NORASIA ALYA collided with, and sank the AVA CLAIRE due to failure in navigation of the NORASIA ALYA to observe the general maritime standard for proper seamanship.

In violating COLREGS, Rules 2, 5, 6, 7, 8, 19, 35 which violations contributed to the collision.

(Rule 10 is not mandatory to this fairway, but has relevance as to good practice.)

(Rule 18's application is not determined by ruling that Rule 19 applies as a matter of law.)

NORASIA ALYA willfully violated its duty to render assistance to one in distress.  See, SOLAS, Chapter IV, Reg. 17.; U.S. Code Chapter 23.

Plaintiffs' claim that they have suffered severe injury and disability, diagnosed with Post-traumatic Stress Disorder which is permanent and incurable.

In addition to the general damages past and future for pain and suffering, plaintiffs claim special damages for loss of income and future medical expenses.

Michael Stepski's claims for replacement value of AVA CLAIRE.

\* \* \* \* \* \* \* \* \* \*

### (2) DEFENDANTS' CLAIMS:

Defendants deny liability as asserted in all counts. Defendants will prove that NORASIA ALYA was not the vessel that collided with AVA CLAIRE. The evidence shows that NORASIA ALYA was at least 2.5 miles away from the location of AVA CLAIRE when the collision is alleged to have occurred. The plaintiffs' eye-witness testimony concerning the vessel that allegedly collided with AVA CLAIRE is not credible and the physical evidence collected from the bow of NORASIA ALYA does not match AVA CLAIRE.

Even if the jury finds that NORASIA ALYA was the vessel that collided with AVA CLAIRE, defendants as affirmative defenses assert that plaintiff Michael Stepski, as master and owner of AVA CLAIRE and in charge of its navigation at the time of the alleged collision, was contributorily negligent as follows:

(a) He failed to insure that the person in charge of navigating AVA CLAIRE were competent, fit for duty and/or attentive to their duties;

(b) He failed to require that AVA CLAIRE was seaworthy for the fishing voyage in question by equipping it with all safety equipment required by United States law and regulations and by the standards of prudent seamanship by failing to equip AVA CLAIRE with a proper radar reflector or an Automatic Identification System ("AIS");

(c) He failed to exercise the good seamanship required by the ordinary practice of seaman or by the special circumstances of the case as required by Rule 2 of the International Regulations for the Prevention of Collisions, 33 U.S.C. §1602, et seq. ("COLREGS"), in that he failed, among other

omissions, to make use of his VHF radio to alert the approaching vessel of his position and intentions;

(d) He failed to keep a proper lookout by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions as required by Rule 5 of the COLREGS in that he failed to maintain a continuous watch on AVA CLAIRE's radar;

(e) He failed to make proper and efficient use of AVA CLAIRE's radar as required by Rule 7(b) of the COLREGS in that he failed to conduct long range scanning and failed to make a radar plot or equivalent systematic observations;

(f) He failed to determine that a close quarters situation was developing and/or risk of collision existed as required by Rules 7(a), 7(d) and 19(d) of the COLREGS in that he failed to calculate the closest point approach of the approaching vessel and failed to appreciate that the compass bearing of the approaching vessel was not changing;

(g) He failed to take action in ample time to avoid the risk of collision as required by Rules 8(a) and 19(d) of the COLREGS in that he did not maneuver AVA CLAIRE in time to avoid the collision;

(h) He failed to have due regard to the prevailing circumstances and conditions of restricted visibility as required by Rules 7(a) and 19(e) of the COLREGS in that he failed to account for the conditions of near zero visibility and that AVA CLAIRE was not visible as a radar target;

(i) He failed to sound fog signals in or near the area of restricted visibility as required by Rule 35(c) of the COLREGS; and

(j) He failed to sound proper whistle signals as required by Rule 34(d) of the COLREGS in that he failed to sound five short and rapid blasts on AVA CLAIRE's whistle when he was in doubt that the approaching vessel was taking sufficient action to avoid collision.

Even if the jury finds that NORASIA ALYA was the vessel that collided with AVA

CLAIRE, defendants as affirmative defenses assert that plaintiffs' alleged damages, if any, all of

which are expressly denied, were caused or contributed to by faults of third persons over whom

defendants neither had nor exercised any control and for which defendants are not liable.

Even if the jury finds that NORASIA ALYA was the vessel that collided with AVA

CLAIRE, defendants as affirmative defenses assert that plaintiffs' alleged damages, if any, all of

which are expressly denied, were the result of pre-existing conditions suffered by plaintiffs and/or were caused in whole or in part by plaintiffs' own gross negligence and/or by their own deliberate acts of indiscretion and/or by their own willful acts, defaults, omission or misbehavior and/or have been aggravated by plaintiffs' failure to use reasonable diligence to mitigate them.

Defendants deny that plaintiffs suffered any injury or disability and expressly dispute the claim that they suffer from post-traumatic stress disorder. Defendants also deny that plaintiffs are entitled to any damages. Notwithstanding the foregoing, to the extent such damages may be awarded, the quantum of damages should be minimal in respect to the "pain and suffering" portion of the claim attributable to post traumatic stress disorder.

Defendants allege that any injuries or damages sustained by plaintiffs were caused in whole or in part by the negligence of plaintiff Michael Stepski and in the event that plaintiffs recover judgment against defendants, then such defendant(s) is/are entitled to contribution or indemnity from plaintiff Michael Stepski.

**B. Uncontroverted Facts**

The following facts are established by depositions, Plaintiffs' and Defendants' documents and documents obtained from the United States Coast Guard ("USCG" or "Coast Guard"):

1.    Defendants MS "Alena" Sciffahrtsgesellschaft mbH & Co. KG and Peter Dochle Schiffahrts-KG, both German entities, own and manage NORASIA ALYA.

2.    NORASIA ALYA is a 800-foot, steel-hulled container vessel that is currently on long-term charter to CSAV Norasia.

3.    NORASIA ALYA is 220.5 meters (723 feet) long, has a beam of 32.3 (106 feet) meters and has a draft of 12.14 meters (40 feet).

4.     NORASIA ALYA is equipped with an S-band and an X-band radar, both fitted with Automatic Radar Plotting Aids ("ARPA") and an Automatic Identification System ("AIS").

5.     NORASIA ALYA's radar had a "blind zone" immediately to her front of five degrees on either side of the bow out to a range of 200 meters (218 yards) as shown in vessel diagram.

6.     Both of the ARPAs and the AIS are connected to an electronic charting display system ("ECDIS").The ECDIS automatically records and plots NORASIA ALYA's position and course as well as all targets acquired by the ARPAs or the AIS. ARPA targets will be acquired automatically if they meet the criteria set as collision threats. They also can be manually acquired by the operator. The operator can stop the ECDIS from continuing to record a target, but cannot erase a voyage path or a target that has been acquired and recorded.

7.     NORASIA ALYA is also equipped with a "talk-back" system which consists of a microphone on the forecastle and a speaker on the bridge. The microphone on the forecastle can be left on continuously, allowing the bridge watchstanders to hear fog signals coming from ahead of the vessel.

8.     On May 15, 2004, NORASIA ALYA departed Hamburg, Germany bound for Port Elizabeth. New York.

9.     During the voyage, Captain Maciej Kowalewski ("Kowalewski") acted as the vessel's master.

10.     On May 22, 2004, NORASIA ALYA encountered heavy fog as it approached the East Coast of the United States.

11.     By 1000 (10:00 a.m.), NORASIA ALYA had entered the westbound lane of the Ambrose-Nantucket Safety Fairway, used by large commercial vessels approaching New York and was proceeding westbound on a course of 264˚ and a speed of 22 knots.

12.     The Ambrose-Nantucket Safety Fairway ran generally east to west.

13.     NORASIA ALYA maintained constant speed of 22.5 knots.

14.     Between 11:00 a.m. and 1:00 p.m., NORASIA ALYA detected and passed two westbound vessels that were in the Safety Fairway.

15.     The two vessels were detected on radar and by AIS ahead of NORASIA ALYA.

16.     By 11:00 a.m., NORASIA ALYA had overtaken and passed one of these vessels.

17.     By 1200, NORASIA ALYA began to approach the second westbound vessel, which was later identified as M/V PODRAVINA, a 27,533 ton, 183.4 meter (602 feet) long chemical/oil tanker.

18.     At approximately 1227 (12:27 p.m.), NORASIA ALYA altered course nine degrees to the right, from 268 degrees to 277 degrees, and at 1234 (12:34 p.m.) altered course ten degrees to the right, from 276 degrees to 286 degrees, to pass PODRAVINA at a distance of two (2) miles to port, taking NORASIA ALYA temporarily outside the Northern boundary of the Safety Fairway.

19.     At 1234 hours, NORASIA ALYA left the Safety Fairway.

20.     During this time, Captain Kowalewski detected by radar one other boat that passed approximately 7 miles astern of NORASIA ALYA.

21.     Captain Kowalewski did not detect any other vessels during this time.

22.     NORASIA ALYA continued on course 286 degrees until 1246. At 1300, NORASIA ALYA was still outside of the Safety Fairway.

23.     AVA CLAIRE was an 18 ton, 42 foot long, fiberglass hulled fishing vessel built in 1973 and upgraded by Michael Stepski iu 2003.

24.     AVA CLAIRE was equipped with a Furuno radar, a chart-plotter, two VHF radios and carried a 406 MHz EPIRB.

25.     An appraisal of AVA CLAIRE estimated that the upgraded vessel had a fair market value at the time of the accident of about $86,600.

26.     AVA CLAIRE departed New London, Connecticut at about 0438 on May 22, 2004 to retrieve catch from nets that Stepski had previously set off the southern coast of Long Island.

27.     Approximately six hours later, AVA CLAIRE arrived at the first line of nets.

28.     The visibility at the site of the nets was extremely limited due to fog.

29.     AVA CLAIRE was not sounding fog signals as required by COLREGS Rule 35(d).

30.     After working the first string of nets, Plaintiffs re-set the nets and proceeded to the second line of nets.

31.     Around the time that they began working the second line, Stepski observed a target on AVA CLAIRE's radar screen at a distance of approximately six miles.

32.     The VHF radio on AVA CLAIRE was set to monitor Channels 13 and 16. Stepski did not attempt to contact the approaching vessel on the radio.

33.     The Coast Guard rescued Stepski, Roderick, and Schober at approximately 3:20 p.m.

34.     A 406 MHz signal from an EPIRB, with a signal/beacon identification number of ADECO 216FD 41801 was first detected by the COSPAS-SARSAT system at 1237 (1237 p.m.) on

May 22, 2004. EPIRB identification number ADECO 216-FB 41801 was registered as being on board the fishing vessel AVA CLAIRE.

35.    At 1239Q (12:39 p.m.), the COSPAS-SARSAT satellite detected the EPIRB beacon in position 40 degrees 32.0 minutes North, 071 degrees 41.7 minutes West.

36.    The COSPAS-SARSAT 1237 information was reported to the Coast Guard First District at 1241Q (12:41 p.m.) on May 22, 2004.

37.    At 1233, NORASIA ALYA's position as recorded by the ECDIS was 40 degrees 32.476 minutes North, 071 degrees 38.080 minutes West, 2.8 miles from the 1239 EPIRB position.

38.    At 1237, when AVA CLAIRE's EPIRB signal first activated, NORASIA ALYA's position as recorded by the ECDIS was 40 degrees 32.857 minutes North, 071 degrees 39.959 minutes West, 1.58 miles from the EPIRB position.

39.    Photographs of NORASIA ALYA taken by the Coast Guard on 23 May 2004 show scrape marks on the bow and sides of NORASIA ALYA.

40.    On May 23, 2004, the Coast Guard recovered paint samples from the bulbous row of NORASIA ALYA.

41.    Plaintiff Stepski visited with psychologist Dr. Gloria Small on 7 occasions over the course of eight months in 2004 and early 2005.

42.    Roderick visited Dr. Small 3 times within eight weeks of the incident and then twice more in 2006.

43.    Roderick stopped attending the sessions with Dr. Small claiming he could not afford to pay for more treatment.

44.    Schober did not undergo any treatment with any mental health professional following the claimed collision.

### C. Issues of Fact and Law

(1)   **Plaintiffs' Contested Issues of Fact:**

The contested issues of fact remaining for decision are:

(a)   Defendants deny NORASIA ALYA was involved in the collision with AVA CLAIRE.

(b)   Was the NORASIA ALYA's navigation unreasonable by normal standards of seamanship?

(c)   Applicable COLREGS and what COLREGS were violated.

(d)   Nature and extent of injury and illness suffered by plaintiffs.

(e)   Special damages, including plaintiffs' lost earnings, past and future and medical expenses.

(f)   On May 22, 2004, AVA CLAIRE commenced hauling its nets, north of the Ambrose Nantucket Fairway each string angled to east/northeast.

(g)   AVA CLAIRE's EPIRB automatically self-activated at the time of the collision.

(h)   Stepski, Roderick and Schoher saw the vessel that hit the AVA CLAIRE. They described her as a large container carrier about 800-feet long with an aft positioned lifeboat, blue hull, white super structure.

(i)   On May 22, 2004 between 11:00 and 15:00, no crew member of the NORASIA ALYA was posted as lookout with no other duties.

(j)   During this period, no crew was assigned to continuously monitor NORASIA ALYA's radar and plotting targets.

(k)   NORASIA ALYA was on auto-pilot. There was no helmsman.

(l)   According to NORASIA ALYA's log, fog signal was not activated.

(m)   The NORASIA ALYA'S radars were capable of targeting and tracking a fishing boat such as the AVA CLAIRE.

(n)   The United States Coast Guard emergency message was broadcast on

standard VHF Channel 16.

    (o)    The message was received on board the NORASIA ALYA.

    (p)    The message sent on May 22, 2004 at 13:18 reads:

Sent: Saturday, May 22, 2004 13:18
Subject: O 221702Z May 04, URGENT MARINE
INFORMATION BROADCAST, COMCOGARDGRU
MORICHES NY

O 221702Z MAY 04 ZUI ASN-A01143000054
FM COMCOGARDGRU MORICHES NY
TO CCGDONE BOSTON MA
INFO COGARD STA SHINNECOCK NY
COGARD STA MONTAUK NY
COMCOGARDGRU LONG ISLAND SOUND
 NEW HAVEN CT
BT
UNCLAS //N16130//
SUBJ: URGENT MARINE INFORMATION
BROADCAST
1. THE FOLLOWING URGENT MARINE
INFORMATION BROADCAST HAS BEEN
INITIATED: QUOTE "THE COAST GUARD IS
RECEIVING AN EMERGENCY SIGNAL FROM
A 406 MHZ EMERGENCY POSITION INDICATING
RADIO BEACON FROM THE FISHING VESSEL
AVA CLAIRE IN POSITION 40-32.0N, 071-41.7W,
APPROXIMATELY 30 NM SOUTH OF MONTAUK
POINT, NY. ALL MARINERS ARE REQUESTED TO
KEEP A SHARP LOOKOUT FOR VESSELS IN DISTRESS,
ASSIST IF POSSIBLE AND REPORT ALL SIGHTINGS
TO THE UNITED STATES COAST GUARD." UNQUOTE.

    (q)    The NORASIA ALYA did not proceed to the assistance of the EPIRB signals.

    r)    After the collision and the loss of the AVA CLAIRE, Michael Stepski was afflicted with Post-Traumatic Stress Disorder.

    (s)    Geal Roderick is suffering from Post-Traumatic Stress Disorder.

-10-

(t)　　Ben Schober is suffering from Post-Traumatic Stress Disorder.

(u)　　The AVA CLAIRE was sunk as the result of a high-energy collision with another vessel that was not immediately identified.

(v)　　The EPIRB on the AVA CLAIRE was knocked free of its mounting bracket by the force of the collision and began transmitting upon entering the water.

(w)　　The visual description provided by the crew, the ECDIS information obtained from the NORASIA ALYA and the Coast Guard's AIS information, show that the NORASIA ALYA collided with the AVA CLAIRE sometime between 1230Q/1630Z and 1240Q/1640Z. Neither the PODRAVINA nor the GULD FALK were involved in this collision.

(x)　　There is evidence to suggest that the NORASIA ALYA was in violation of the 72 COLREGS, Rule 19(b) in that the vessel was proceeding at 22 knots in very heavy fog. Further, there is evidence to suggest that the NORASIA ALYA was in violation of the 72 COLREGS, Rule 5 in that the AVA CLAIRE was not detected by the ship's crew either before or after the collision. Further, there is evidence to suggest that the NORASIA ALYA was in violation of the 72 COLREGS, Rule 35(a) in that sound signals were not being sounded as required.

(2)　　**Defendants' Contested Issues of Fact:**

The contested issue of fact remaining for decision are:

(a)　　Whether AVA CLAIRE was insured for a value of $35,000 at the time of the accident.

(b)　　Whether AVA CLAIRE's nets were located in or north of the Ambrose Nantucket Fairway.

(c)　　Whether AVA CLAIRE was sunk as the result of a collision with another vessel that was not immediately identified.

(d)　　Whether Stepski's, Roderick's or Schober's descriptions of the vessel that allegedly collided with AVA CLAIRE as a large container carrier about 600 to 700 feet long with an aft positioned lifeboat, blue hull, white super structure are accurate.

(e)　　Whether Stepski ordered Roderick and Schober to cast the net free, went into the wheelhouse, turned AVA CLAIRE to the north and put the engine full ahead.

(f)　　Whether Stepski and Schober both physically observed the other ship just

seconds before the collision.

        (g)     Whether Roderick ever saw the ship before it hit AVA CLAIRE.

        (h)     Whether AVA CLAIRE was broken in two by the force of the collision.

        (i)     Whether AVA CLAIRE's stern section quickly sank as a result of the collision and the bow stayed afloat for at least a day after the collision.

        (j)     Whether Stepski, Roderick, and Schober all entered the water, then climbed into a life raft and donned survival suits.

        (k)     Whether the paint samples recovered from NORASIA ALYA and a sample of the paint used on AVA CLAIRE were tested by the State of Connecticut Forensic Science Laboratory and were found to exhibit dissimilar characteristics.

        (l)     Whether NORASIA ALYA was the vessel which collided with AVA CLAIRE.

        (m)    Whether the persons in charge of navigating AVA CLAIRE were competent, fit for duty and/or attentive to their duties.

        (n)     Whether AVA CLAIRE was equipped with an Automatic Identification System.

        (o)     Whether AVA CLAIRE was equipped with a radar reflector meeting the requirements of 46 CFR §28.235.

        (p)     Whether the radar reflectors on the net buoys satisfied the requirements of 46 CFR §28.235.

        (q)     Whether fishing within one mile of a heavily traveled shipping lane in dense fog in a vessel that was not equipped with an AIS or a radar reflector complied with the standards of prudent seamanship and the ordinary practice of seaman.

        (r)     Whether the failure to equip AVA CLAIRE with an AIS or a proper radar reflector was a violation of COLREGS Rule 2.

        (s)     Whether equipping AVA CLAIRE with an AIS or a radar reflector would have avoided the collision.

        (t)     Whether the failure to equip AVA CLAIRE with an AIS or a radar reflector was a contributing factor in the collision.

(u)     Whether the standards of prudent seamanship and the ordinary practice of seaman required Stepski to use AVA CLAIRE's VHF radio to alert the approaching vessel of his position and intentions.

(v)     Whether the failure to use AVA CLAIRE's VHF radio to alert the approaching vessel of his position and intentions was a violation of COLREGS Rule 2.

(w)     Whether using AVA CLAIRE's VHF radio to alert the approaching vessel of his position and intentions would have avoided the collision

(x)     Whether the failure to use AVA CLAIRE's VHF radio to alert the approaching vessel of his position and intentions was a contributing factor in the collision.

(y)     Whether, while hauling the nets, Stepski operated the net hauler controls and the auxiliary engine and rudder control located aft of the wheelhouse on AVA CLAIRE's starboard side.

(z)     Whether to properly haul the nets, Stepski had to carefully coordinate the speed of the hauler with AVA CLAIRE's engine speed to keep the proper amount of net on the table and minimize the strain between the hauler and portion of the net still in the water.

(aa)     Whether while working the net hauler, Stepski observed the radar, which was located on the overhead of the wheelhouse in the vicinity of the wheel.

(bb)     Whether, to mark contacts, change scales, or otherwise adjust the radar display, Stepski had to go either over or under the net table and enter the wheelhouse through a door located in the aft bulkhead.

(cc)     Whether, while working the nets, AVA CLAIRE's radar was set on the 6 mile scale, in "heads-up" mode.

(dd)     Whether, when Stepski first noticed the contact, he went in to the wheelhouse and observed the radar to determine if the approaching vessel was on a collision course by watching which direction the target was moving with respect to AVA CLAIRE's heading line.

(ee)     Whether, when Stepski first observed the target, he believed it was on course to pass on the starboard side of AVA CLAIRE.

(ff)     Whether Stepski made a plot of the radar target or attempted to calculate the target's course, speed or closest point of approach ("CPA").

(gg)     Whether, after watching the radar contact, Stepski remained in the wheelhouse continuously or left the wheel house to continue to haul the second string of nets.

(hh)     Whether Stepski returned to the wheel house, changed the radar to the 3 mile scale and observed that the contact was less than 3 miles to the east of AVA CLAIRE.

(ii)     Whether Stepski eventually returned to the wheelhouse a final time and observed that the contact was less than 1.5 miles away from AVA CLAIRE and on a collision course.

(jj)     Whether a vessel approaching AVA CLAIRE at 22 knots would cover 1.5 miles in 4 minutes.

(kk)     Whether the standards of prudent seamanship and the ordinary practice of seaman required Stepski to comply with COLREGS Rule 5 by maintaining a continuous watch on AVA CLAIRE's radar.

(ll)     Whether Stepski's manner of monitoring the radar while he was stationed at the net hauler aft of the wheel house and responsible for maintaining the boat's speed, maintaining the right speed for the net hauler and watching the crew as they pulled fish out of the nets complied with the standards of prudent seamanship and the ordinary practice of seaman.

(mm)     Whether Stepski's manner of monitoring the radar permitted him to keep a proper lookout by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions as required by Rule 5 of the COLREGS.

(nn)     Whether Stepski's manner of maintaining a look out could not have been a cause of the collision.

(oo)     Whether Stepski's use AVA CLAIRE radar on a six mile range scale or less or only to observe which direction the on-coming target was moving with respect to AVA CLAIRE's heading line complied with the standards of prudent seamanship and the ordinary practice of seaman.

(pp)     Whether Stepski's use AVA CLAIRE radar on a six mile range scale or less or only to observe which direction the on-coming target was moving with respect to AVA CLAIRE's heading line and his failure to make a plot of the approaching radar target or attempt to calculate the approaching target's course, speed or closest point of approach ("CPA") complied with the requirement of Rule 7(b) of the COLREGS to conduct long range scanning and to make a radar plot or equivalent systematic observations.

(qq)     Whether Stepski's manner of using AVA CLAIRE's radar could not have been a cause of the collision.

(rr)     Whether prudent seamanship and the ordinary practice of seaman required Stepski to calculate the CPA of the approaching vessel and to appreciate that the compass bearing of the approaching vessel was not changing.

(ss)     Whether a close quarters situation was developing and/or risk of collision existed between AVA CLAIRE and the approaching vessel at the time Stepski detected the approaching vessel on AVA CLAIRE's radar, or at any time thereafter.

(tt)     Whether Stepski's maneuver of AVA CLAIRE was taken in ample time to avoid the risk of collision as required by Rules 8(a) and 19(d) of the COLREGS.

(uu)     Whether Stepski's failure to rake timely action to avoid a close quarters situation with the approaching vessel was a cause of the collision.

(vv)     Whether prudent seamanship and the ordinary practice of seaman required Stepski to account for the conditions of near zero visibility and that AVA CLAIRE was not visible as a radar target.

(ww)   Whether Stepski failed to have due regard to the prevailing circumstances and conditions of restricted visibility as required by Rules 7(a) and 19(c) of the COLREGS in that he failed to account for the conditions of near zero visibility and that AVA CLAIRE was not visible as a radar target.

(xx)     Whether Stepski's failure to sound fog signals in or near an area of restricted visibility was a violation of Rule 35(c) of the COLREGS.

(yy)     Whether Stepski's failure to sound fog signals in or near an area of restricted visibility could not have been a cause of the collision.

(zz)     Whether Stepski's failure to sound five short and rapid blasts on AVA CLAIRE's whistle was a violation of Rule 34(d) of the COLREGS.

(aaa)   Whether Stepski's failure to sound five short and rapid blasts on AVA CLAIRE's whistle could not have been a cause of the collision.

(bbh)   Whether AVA CLAIRE's EPIRB was knocked free of its mounting bracket by the force of the collision and began transmitting automatically upon entering the water.

(ccc)   Whether proceeding at a speed of 22 knots while transiting the Safety Fairway and passing PODRAVINA outside of the Safety Fairway complied with the standards of prudent seamanship and the ordinary practice of seaman.

(ddd)   Whether proceeding at a speed of 22 knots while transiting the Safety Fairway and passing PODRAVINA outside of the Safety Fairway was a violation of Rules 6 and 19(b) of the COLREGS

(ccc)   Whether NORASIA ALYA proceeding at a speed of 22 knors was cause of the collision.

(fff)     Whether a fishing boat such as AVA CLAIRE would be detectable by NORASIA ALYA's radars.

(ggg)     Whether NORASIA ALYA's radar had automatic target acquisition set for any target approaching less than 6 nautical miles and the ARPA alarm set for any target with a CPA of less than 0.5 nm.

(hhh)     Whether, when the visibility became restricted, Captain Kowalewski navigated the ship using radar and continuously monitored both of NORASIA ALYA's radars.

(iii)     Whether, with the radars set on a six mile range scale, Captain Kowalewski periodically adjusted the range scale to search for distant or close in targets.

(jjj)     Whether NORASIA ALYA's talk-back system was energized to listen for fog signals ahead of the vessel.

(kkk)     Whether, with NORASIA ALYA on auto-pilot without a helmsman, Captain Kowalewski was stationed within reach of the controls for the auto-pilot which could be disengaged and the vessel's course altered within a few seconds.

(lll)     Whether Captain Kowalewski's manner of monitoring NORASIA ALYA's radar complied with the standards of prudent seamanship and the ordinary practice of seaman.

(mmmm)Whether Captain Kowalewski's manner of monitoring NORASIA ALYA's radars complied with the requirements of Rule 5 of the COLREGS to keep a proper lookout by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions.

(nnn)     Whether stationing a lookout at the bow would have provided Captain Kowalewski with any information he did not have from monitoring NORASIA ALYA's radars.

(ooo)     Whether Captain Kowalewski's manner of monitoring NORASIA ALYA's radars complied with the requirements of Rule 7 of the COLREGS to conduct long range scanning and to make a radar plot or equivalent systematic observations.

(ppp)     Whether stationing the absence of a lookout on NORASIA ALYA's bow could not have been a cause of the collision.

(qqq)     Whether NORASIA ALYA was sounding fog signals.

(rrr)     Whether Stepski is culpable or blameworthy for his violations of the COLREGS which are found to have caused or contributed to the collision.

(sss)     Whether NORASIA ALYA is culpable or blameworthy for its violations

of the COLREGS which are found to have caused or contributed to the collision.

(ttt)    What apportionment of liability between Stepski and NORASIA ALYA fairly reflects their relative culpability for the collision.

(uuu)    Whether any of the Plaintiffs suffered any physical injuries as a result of the claimed collision.

(vvv)    Whether Michael Stepski was afflicted with and continues to suffer from Post-Traumatic Stress Disorder ("PTSD") as a result of the collision and the loss of AVA CLAIRE.

(www)    Whether Michael Stepski failed to mitigate his damages by not continuing his treatment by with Dr. Small who had agreed to treat him subject to potential receipt of payment in the future.

(xxx)    Whether Michael Stepski suffered any loss of income as a result of the collision and the loss of AVA CLAIRE, and in what amount.

(yyy)    Whether Geal Roderick was afflicted with and continues to suffer from PTSD as a result of the collision and the loss of AVA CLAIRE.

(zzz)    Whether Geal Roderick failed to mitigate his damages by not continuing his treatment by with Dr. Small who had agreed to treat him subject to potential receipt of payment in the future.

(aaaa)    Whether Geal Roderick suffered any loss of income as a result of the collision and the loss of AVA CLAIRE, and in what amount.

(bbbb)    Whether Benjamin Schober was afflicted with and continues to suffer from PTSD as a result of the collision and the loss of AVA CLAIRE.

(cccc)    Whether Benjamin Schober suffered any loss of income as a result of the collision and the loss of AVA CLAIRE, and in what amount.

(dddd)    Whether Stepski offered or agreed to pay for or provide mental health treatment for Roderick or Schober.

(3)    **Plaintiffs' Contested Issues of Law:**

The contested issues of law, in addition to those implicit in the foregoing issues of fact are:

(a)    Application of SOLAS/COLREGS.

(b)    Pennsylvania Rule; 86 U.S. (19 Wall) 125 et al.

(c)    Pre-judgment interest in maritime law.

(d)    Intervening/superseding cause; Exxon v. Sofec, 517 U.S. 830.

(e)    Measure of damage for situations "in extremis"; a full exposition of the applicable law is to be submitted in plaintiffs' Trial Brief and Requests to Charge.

(4)    **Defendants' Contested Issues of Law:**

The contested issue of law in addition to those implicit in the foregoing issues of fact are:

(a)    Whether the standards of prudent seamanship and the ordinary practice of seaman required AVA CLAIRE to be equipped with an Automatic Identification System ("AIS").

(b)    Whether AVA CLAIRE was required to be equipped with a radar reflector meeting the requirements of 46 CFR §28.235.

(c)    Whether Stepski was required by Rule 5 of the COLREGS to keep a proper lookout by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions.

(d)    Whether Stepski was required by Rule 7(b) of the COLREGS to use AVA CLAIRE's radar to conduct long range scanning and to make a radar plot or equivalent systematic observations;

(e)    Whether Stepski was required to determine if a close quarters situation was developing and/or risk of collision existed as required by Rules 7(a), 7(d) and 19(d) of the COLREGS.

(f)    Whether Stepski was required to take action in ample time to avoid the risk of collision as required by Rules 8(a) and 19(d) of the COLREGS.

(g)    Whether Stepski was required to have due regard to the prevailing circumstances and conditions of restricted visibility as required by Rules 7(a) and 19(c) of the COLREGS.

(h)    Whether NORASIA ALYA was required by Rules 6 and 19(b) of the COLREGS to reduce its speed.

(i)    Whether NORASIA ALYA was required by Rule 5 of the COLREGS to station a lookout at the bow.

(j)    Whether the Court's ruling that COLREGS Rule 19 applies as a matter of law precludes the application of COLREGS Rule 18 to the actions of AVA CLAIRE and NORASIA ALYA.

(k)    Whether proof of liability is governed by the *Pennsylvania* rule, which provides that when a vessel is in violation of a statutory rule intended to prevent collisions, the burden is on the offending vessel to prove not merely that its fault might not have been one of the causes, or that it probably was not, but that it could not have been.

(l)    Whether Plaintiffs are entitled to offer evidence concerning the duty to render assistance and NORASIA ALYA's actions after allegedly receiving the Coast Guard's Urgent Marine Information Broadcast.

(m)    Whether Plaintiff Michael Stepski's recovery of damages for the loss of AVA CLAIRE is limited to its fair market value at the time of the loss.

(n)    Whether Stepski, as employer of Roderick and Schober, breached his obligation to provide maintenance and cure (medical treatment) for the "injuries" claimed to have resulted while working aboard AVA CLAIRE.

(o)    Whether to the extent Stepski failed in his obligation to arrange and pay for treatment for injuries suffered by Roderick and Schober, including psychological treatment and prescription medication, Defendants are entitled to indemnity and/or contribution for that portion of the damages which may be awarded to Roderick and Schober resulting from their failure to obtain treatment for their claimed PTSD.

(p)    Whether the circumstances of the collision entitle Plaintiffs to any enhancement of their damages.

(q)    Whether Stepski is liable in indemnity or contribution to Defendants for any liability that Defendant my have to Roderick or Schober that exceeds Defendants' proportional share of fault for the collision.

### D.   Witnesses

(1) Plaintiffs and Defendants will call or will have available for testimony at trial those witnesses whose names are set forth on the attached witness list (See Appendix C).

### E.   Expert Witnesses

Plaintiffs will offer two expert witnesses:

#### (1) CAPTAIN JOSEPH AHLSTROM: In person

Captain Joseph Ahlstrom is a Coast Guard licensed captain and is a professor of nautical science at the State University of New York at Fort Schuyler. He will offer testimony as to the proper maritime practice in order to comply with COLREGS. He will explain the ECDIS printouts on board the NORASIA ALYA. He will explain the mechanics, function and capacity of EPIRB (Emergency Position Indicating Radio Beacon).

#### (2) DR. ARNOLD MERRIAM : In person

Dr. Arnold Merriam is a diplomat in Psychiatry and Neurology, American Board of Psychiatry and Neurology. Professor of Psychiatry and Neurology, Albert Einstein College of Medicine. He will testify as to his findings, diagnosis and prognosis based upon his psychiatric assessment of Michael Stepski, Geal Roderick and Benjamin Schober including explanation of etiology and nature of post-traumatic stress disorder.

\* \* \* \* \* \* \* \* \*

Defendants will offer two expert witnesses:

(1)   CAPTAIN JAY BOLTON: In person. Captain Bolton is a trained, qualified and experienced vessel master who for many years served at sea and commanded large ocean going commercial vessels. Captain Jay Bolton will offer testimony on, among other things, seamanship, ship handling, shipboard officer and crew responsibilities, watch standing, vessel performance, the vessels' navigation equipment and how it functions, the parties' ability to use such equipment, whether actions taken by the vessels comport with principles of good seamanship, and whether the vessels properly observed the COLREGS.

(2)   DOCTOR RUBENSTEIN: In person. Dr. Mark Rubinstein is a diplomate in Psychiatry and Neurology of the American Board of Psychiatry and Neurology. He is also a Clinical Assistant Professor of Psychiatry at Weill Medical College, Cornell University and an Attending Psychiatrist at Payne Whitney Clinic of New York Presbyterian Hospital. He will testify as to his findings, assessments and conclusions based upon his review of records and his examinations of each Plaintiff that none suffers from Post Traumatic Stress Disorder (or any other psychological impairment) resulting from the incident aboard AVA CLAIRE as claimed.

**F.      Trial to the Court**

NOT APPLICABLE

**G.      Trial to a Jury**

Plaintiffs' and defendants' proposed voir dire questions and proposed jury instructions will be filed in accordance with the scheduling order.

Plaintiffs submit that the standard voir dire questions re: independence and fairness suffice.

**H.      Use of Depositions**

(1) Testimony of the following witnesses will be offered by deposition:

Plaintiffs will offer parts of the deposition of Third Officer Adrian Calimanescu.

If Captain Maciej Kowalewski fails to appear, plaintiffs will offer parts of his deposition.

Defendants will offer parts of the deposition of Dr. Gloria Small.

Defendants reserve the right to offer parts of the deposition testimony of Third Officer Calimanescu in response to testimony offered by plaintiffs.

At appointed time, plaintiffs and defendants will submit copies of depositions with sections to be read delineated.

**I.      Exhibits**

The parties will offer as exhibits those items listed herein as follows:

(1) Joint Exhibits - Appendix B (Roman Numerals);

(2) Plaintiffs' Exhibits - Appendix B (Arabic Numerals);

(3) Defendants' Exhibits - Appendix B (Letters).

**J.      Pending Motions**

Plaintiffs' motion re: Federal Rules of Evidence 702 and defendants' cross-motion and motion thereto.

The parties reserve the right to move re: evidence or exhibits if necessary.

**K.      Modification of Order**

NOT APPLICABLE

**L.      Settlements Efforts**

Parties met February 3, 2010. Plaintiffs made an opening demand which was negotiable. The Court referred the matter to Magistrate Michael H. Dolinger for settlement discussion purposes.

**IT IS SO ORDERED.**

Dated: March 15, 2010

JUDGE JAMES S. GWIN
UNITED STATES DISTRICT JUDGE

THOMAS H. HEALEY
COUNSEL FOR PLAINTIFFS

RICHARD V. SINGLETON

ALAN WEIGEL
COUNSEL FOR DEFENDANTS

MICHAEL UNGER
COUNSEL FOR DEFENDANTS

-22-

Michael Stepski, Kirsten Stepski, Wife,
Geal Roderick, and Benjamin Schober,
Plaintiffs,

vs.

CASE NO. 06 CV 01694

The M/V NORASIA ALYA, her owners,
operators, etc. and MS "Alena"
Schiffahrtsgesellschaft mbH & Co., KG,
Peter Doehle Schiffaharts-KG
Defendants.

JUDGE JAMES S. GWIN

---------------------------------------------------------------------

## PLAINTIFFS' WITNESSES

### NAME

### SYNOPSIS OF TESTIMONY

**MICHAEL STEPSKI**

(In Person)   Mr. Stepski will testify to the events leading up to, including and the collision by the NORASIA ALYA. Navigation and operation of the AVA CLAIRE.   Observations concerning the movements of the NORASIA ALYA before and after the collision. Survival efforts until rescued by the Coast Guard. He will testify as to his pain and suffering up to date, the effects of post traumatic stress disorder and it effects on family life, loss of life's pleasures. He will testify as to destruction of his business, impairment of earning capacity and resulting financial loss.   He will testify on medical expenses.

**KIRSTEN STEPSKI**

(In Person) The observations of her husband's suffering, pain and inappropriate behavior and physical decline.   The nature and extent of the Stepski business, Niantic Fish, LLC, and the resulting financial loss.

**GEAL RODERICK**

( In Person) Mr. Roderick will testify to the events leading up to the collision and thereafter. He will testify as to the survival efforts. He will testify as to his pain and suffering up to date, the effects of post traumatic stress disorder and its effects on family life, loss of life's pleasures, impairment of earning capacity and resulting financial loss. He will testify on medical expenses. He will testify as to the location of nets.

**BENJAMIN SCHOBER**

( In Person) Mr. Schober will testify to the events leading up to the collision and thereafter. He will testify as to the survival efforts. He will testify as to his pain and suffering up to date, the effects of post

traumatic stress disorder and its effects on family life, loss of life's pleasures, impairment of earning capacity and resulting financial loss. He will testify on medical expenses.

MACIEJ KOWALEWSKI   (In person) Plaintiffs will question Captain Kowalewski about the navigation of the NORASIA ALYA, including visibility, speed, condition of maneuvering of the engine, lack of look-out, conditions on the bridge. Receipt of Coast Guard urgent message and conduct thereafter.

Plaintiffs will call and cross-examine Captain Kowalewski as a witness for their direct case. Defendants will thereafter be entitled to conduct an unlimited direct examination of Captain Kowalewski. Plaintiff's re-cross-examination thereafter will be limited to the issued raised by Defendants' direct examination. Defendants' re-direct examination will be limited to the issues raised by Plaintiffs' re-cross examination.

(In person) Defendants will question Captain Kowalewski about navigation of NORASIA ALYA, including visibility, vessel's speed, status and operation of the helm and engine controls, status and use of the radar and electronic navigation equipment, status of the look out, the use of fog signals, and conditions and manning on the bridge. Receipt of Coast Guard messages and conduct thereafter.

If defendants fail to produce Captain Kowalewski, plaintiffs will use his deposition as marked and filed with Court.

ADRIAN CALIMANESCU   (By Deposition) Third Officer Adrian Calimanescu will testify to the standard practice aboard the NORASIA ALYA to keep a written record of all messages sent and received plus a radio log containing all such messages, which is part of the ship's file.

He will confirm that failure to render assistance to a person in distress is unacceptable seamanship.

The NORASIA ALYA knew it was approaching fishing grounds.

CAPTAIN KEN JOHNSON   (In Person) Johnson Marine Services, LLC (or similarly situated fishing boat dealer). Replacement cost/value of AVA CLAIRE type and equipped fishing boat.

## DEFENDANTS' WITNESSES

DR. GLORIA SMALL   (By deposition) Concerning her treatment of plaintiffs.