BLANK ROME LLP
Attorneys For Defendants
The Chrysler Building
405 Lexington Avenue
New York, New York  10174-0208
Telephone:  212-885-5000
Richard V. Singleton
Alan M. Weigel

FREEHILL HOGAN & MAHAR LLP
Attorneys For Defendants
80 Pine Street
New York, New York 10005-1759
Telephone: 212-425-1900
Michael Unger

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------------X
MICHAEL STEPSKI, KIRSTEN STEPSKI, Wife,  :
GEAL RODERICK and BENJAMIN SCHOBER,      :
                                         :
                    Plaintiffs,          :
                                         :
        -against-                        :
                                         :
The M/V NORASIA ALYA, her owners,        :
operators, etc., and MS'ALENA'           :
SCHIFFAHRTSGESELLSCHAFT mbH & CO. KG,     :
PETER DOEHLE SCHIFFAHARTS-KG,            :
                                         :
                    Defendants.          :
----------------------------------------------------------------------X

ECF CASE

06 CV 01694 (CM)

**DEFENDANTS' REQUEST
TO CHARGE**

        Defendants,  MS "ALENA"  Schiffahrts Gesellschaft  mbH  &  CO.  KG  and  Peter  Doehle

Schiffaharts-KG, by their attorneys, Blank Rome LLP and Freehill Hogan & Mahar LLP, hereby

request the Court charge the jury according to the following.

## PRELIMINARY STATEMENT

Defendants respectfully submit that when exercising admiralty jurisdiction, a Federal District Court may rely on the general maritime law as decided by courts in Circuits other than its own.  *See The Lottawanna*, 88 U.S. 558, 572-78 (1874) (federal courts authorized to draw upon and to continue the development of the substantive, common law of admiralty); *Southern Pacific Co. v. Jensen*, 244 U.S. 205, 215 (U.S. 1917) ("the general maritime law as accepted by the federal courts constitutes part of our national law applicable to matters within the admiralty and maritime jurisdiction"); *Pope & Talbot, Inc. v. Hawn*, 346 U.S. 406, 409 (U.S. 1953) (right of recovery for unseaworthiness and negligence is rooted in federal maritime law).  See also Steven F. Friedell, 1 *Benedict on Admiralty* §105 (7th ed. 2007).

Defendants reserve the right to supplement or amend the final instructions to the jury upon the completion of submission of evidence.

Defendants reserve the right to submit a proposed Special Verdict form at the charging conference.

## PRELIMINARY INSTRUCTIONS AT THE START OF TRIAL

1.     Now that you have been sworn, I have the following preliminary instructions for your guidance as jurors in this case.  You will hear the evidence, decide what the facts are, and then apply those facts to the law that I will give to you.  You and only you will be the judges of the facts. You will have to decide what happened. I play no part in judging the facts. You should not take anything I may say or do during the trial as indicating what I think of the evidence or what your verdict should be. My role is to be the judge of the law. I make whatever legal decisions have to be made during the course of the trial, and I will explain to you the legal principles that must guide you in your decisions. You must follow that law whether you agree

with it or not.  KEVIN F. O'MALLEY ET AL., FEDERAL JURY PRACTICE AND INSTRUCTIONS §101.01 (5th ed. 2000).

2.       In this case, Plaintiffs assert that Defendants' vessel, NORASIA ALYA, collided with, and sank Plaintiff Michael Stepski's fishing vessel, AVA CLAIRE, due to the negligent failure by the persons in charge of NORASIA ALYA' navigation to comply with the general maritime standards for proper seamanship and to properly follow the nautical rules of the road, known as the collision regulations or the "COLREGS."  Defendants deny that NORASIA ALYA was the vessel that collided with AVA CLAIRE.  Defendants also deny any violation of the standards of proper seamanship or the collision regulations.  Defendants allege in what is known as an affirmative defense and counter-claim, that Michael Stepski, himself, negligently failed to exercise prudent seamanship and violated the collision regulations.  Thus, Defendants argue that even if you find that NORASIA ALYA was the vessel that collided with AVA CLAIRE and that there were violations of the standards of proper seamanship or the collision regulations on the part of NORASIA ALYA, responsibility for the collision should be apportioned, or shared, between Michael Stepski and Defendants.  I will give you detailed instructions on the law at the end of the case, and those instructions will control your deliberations and decision. But in order to help you follow the evidence, I will now give you a brief summary of the elements that Plaintiffs must prove to make their case and that Defendants must prove to prevail on their affirmative defense:

a.       Plaintiffs must prove that NORASIA ALYA was the vessel that collided with AVA CLAIRE.   Plaintiffs also must prove that NORASIA ALYA did not have a proper lookout stationed, that it was proceeding at an unsafe speed in the fog, that it was not sounding

fog signals and that the officers in charge of NORASIA ALYA did not properly use the vessel's radar and that one or more of these faults caused or contributed to the collision.

       b.    To prove their affirmative defense and counter-claim, Defendants must show that Michael Stepski was not keeping a proper lookout, that he failed to use AVA CLAIRE's radar properly, that he failed to understand or appreciate the risk of collision existed, that he failed to take prompt action to avoid the collision with NORASIA ALYA, that he was required, but failed, to equip AVA CLAIRE with a radar reflector or other device which would make it visible on the radar of a commercial vessel, and that one or more of these faults, or Plaintiffs' admission that AVA CLAIRE was not sounding fog signals, caused or contributed to the collision.

       3.    Now, a few words about your conduct as jurors.  First, I instruct you that during the trial and until you have heard all of the evidence and retired to the jury room to deliberate, you are not to discuss the case with anyone, not even among yourselves. If anyone should try to talk to you about the case, including a fellow juror, bring it to my attention promptly. There are good reasons for this ban on discussions, the most important being the need for you to keep an open mind throughout the presentation of evidence.  If any lawyer, party, or witness does not speak to you when you pass in the hall, ride the elevator, or the like, remember it is because they are not supposed to talk or visit with you, either.  O'MALLEY §101.11.

       4.    Second, do not read or listen to anything related to this case that is not admitted into evidence. By that I mean, if there is a newspaper article or radio or television report relating to this case, do not read the article or watch or listen to the report. In addition, do not try to do any independent research or investigation on your own on matters relating to the case or this type of case. Do not do any research on the internet, for example. You are to decide the case upon the

evidence presented at trial.  Again, do not reach any conclusion on the claims until all of the evidence is in.  Keep an open mind until you start your deliberations at the end of the case. O'MALLEY §101.11.

5.      During the trial it may be necessary for me to talk with the lawyers out of your hearing by having a bench conference. If that happens, please be patient. We are not trying to keep important information from you. These conferences are necessary for me to fulfill my responsibility, which is to be sure that evidence is presented to you correctly under the law.  We will, of course, do what we can to keep the number and length of these conferences to a minimum. While we meet, I will invite you to stand up and stretch and take a short break or perhaps even call a recess if it is a lengthy issue, and permit you to go downstairs for a break.  I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.  O'MALLEY §101.13.

6.      The evidence from which you are to find the facts consists of the following:

(a)     The testimony of the witnesses;

(b)     Documents and other things received as exhibits;

(c)     Any facts that are stipulated--that is, formally agreed to by the parties; and

(d)     Any facts that are judicially noticed--that is, facts I say you must accept as true even without other evidence.

The following things are not evidence:

(a)     Statements, arguments, and questions of the lawyers for the parties in this case;

(b)     Objections by lawyers.

(c)     Any testimony I tell you to disregard; and

(d)     Anything you may see or hear about this case outside the courtroom.

You must make your decision based only on the evidence that you see and hear in court. Do not let rumors, suspicions, or anything else that you may see or hear outside of court influence your decision in any way. You should use your common sense in weighing the evidence. Consider it in light of your everyday experience with people and events, and give it whatever weight you believe it deserves. If your experience tells you that certain evidence reasonably leads to a conclusion, you are free to reach that conclusion. O'MALLEY § 101.40.

7.       There are rules that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence, and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. This simply means that the lawyer is requesting that I make a decision on a particular rule of evidence. You should not be influenced by the fact that an objection is made. Objections to questions are not evidence. Lawyers have an obligation to their clients to make objections when they believe that evidence being offered is improper under the rules of evidence. You should not be influenced by the objection or by the court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other. If you are instructed that some item of evidence is received for a limited purpose only, you must follow that instruction. O'MALLEY §101.49.

8.       Also, certain testimony or other evidence may be ordered struck from the record and you will be instructed to disregard this evidence. Do not consider any testimony or other evidence that gets struck or excluded. Do not speculate about what a witness might have said or what an exhibit might have shown. O'MALLEY §101.40, §101.44.

9.       There are two types of evidence that you may use in reaching your verdict. One type of evidence is called "direct evidence." An example of "direct evidence" is when a witness testifies about something that the witness knows through his own senses—something the witness

601230.00001/6838030v.1

has seen, felt, touched or heard or did. If a witness testified that he saw it raining outside, and you believed him, that would be direct evidence that it was raining. Another form of direct evidence is an exhibit where the fact to be proved is its existence or current condition. The other type of evidence is circumstantial evidence. "Circumstantial evidence" is proof of one or more facts from which you could find another fact. If someone walked into the courtroom wearing a raincoat covered with drops of water and carrying a wet umbrella, that would be circumstantial evidence from which you could conclude that it was raining. You should consider both kinds of evidence that are presented to you. The law makes no distinction in the weight to be given to either direct or circumstantial evidence. You are to decide how much weight to give any evidence.  O'MALLEY §101.42.

10.    In deciding what the facts are, you may have to decide what testimony you believe and what testimony you do not believe. You are the sole judges of the credibility of the witnesses. "Credibility" means whether a witness is worthy of belief. You may believe everything a witness says or only part of it or none of it. In deciding what to believe, you may consider a number of factors, including the following:

(a)    the opportunity and ability of the witness to see or hear or know the things the witness testifies to;

(b)    the quality of the witness's understanding and memory;

(c)    the witness's manner while testifying;

(d)    whether the witness has an interest in the outcome of the case or any motive, bias or prejudice;

(e)    whether the witness is contradicted by anything the witness said or wrote before trial or by other evidence;

(f)    how reasonable the witness's testimony is when considered in the light of other evidence that you believe; and

(g)    any other factors that bear on believability.

O'MALLEY § 101.43.

11.     The weight of the evidence to prove a fact does not necessarily depend on the number of witnesses who testify. What is more important is how believable the witnesses were, and how much weight you think their testimony deserves.  O'MALLEY §101.43.

12.     You will have the opportunity to ask questions of the witnesses in writing. When a witness has been examined and cross-examined by counsel, and after I ask any clarifying questions of the witness, I will ask whether any juror has any further clarifying question for the witness.  If so, you will write your question on a piece of paper, and hand it to my Deputy Clerk. Do not discuss your question with any other juror. I will review your question with counsel at sidebar and determine whether the question is appropriate under the rules of evidence. If so, I will ask your question, though I might put it in my own words. If the question is not permitted by the rules of evidence, it will not be asked, and you should not draw any conclusions about the fact that your question was not asked. Following your questions, if any, the attorneys may ask additional questions. If I do ask your question you should not give the answer to it any greater weight than you would give to any other testimony.  O'MALLEY §101.15.

13.     As you see, we have a court reporter here who will be transcribing the testimony during the course of the trial. But you should not assume that the transcripts will be available for your review during your deliberations. You must pay close attention to the testimony as it is given. O'MALLEY §101.18.

14.     You may not take notes during the course of the trial. There are several reasons for this. It is difficult to take notes and, at the same time, pay attention to what a witness is saying and the witness's manner while testifying. One of the reasons for having a number of persons on the Jury is to gain the advantage of your individual and collective memories so that you can then deliberate together at the end of the trial and reach agreement on the facts. While

-8-

some of you might feel comfortable taking notes, other members of the Jury may not feel as comfortable and may not wish to do so. Notes might be given too much weight over memories, especially the memories of those who do not take notes. So, for those reasons, I ask that you not take notes during the trial. O'MALLEY §101.14.

15.     This is a civil case.   Plaintiffs are the parties who brought this lawsuit. Defendants are the parties against which the lawsuit was filed.  Plaintiffs have the burden of proving their case by what is called the preponderance of the evidence.   That means Plaintiffs have to prove to you, in light of all the evidence, that what they claim is more likely so than not so.   To say it differently: if you were to put the evidence favorable to Plaintiff and the evidence favorable to Defendants on opposite sides of the scales, Plaintiffs would have to make the scales tip somewhat on their side. If Plaintiffs fail to meet this burden, the verdict must be for Defendants. If you find after considering all the evidence that a claim or fact is more likely so than not so, then the claim or fact has been proved by a preponderance of the evidence.   In determining whether any fact has been proved by a preponderance of evidence in the case, you may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.   You may have heard of the term "proof beyond a reasonable doubt." That is a stricter standard of proof and it applies to criminal cases. It does not apply in civil cases such as this. So you should put it out of your mind.  O'MALLEY §101.41.

16.     The trial will proceed in the following manner:  First, attorneys for Plaintiffs will make an opening statement to you. Next, attorneys for Defendants may make an opening statement. What is said in the opening statements is not evidence, but is simply an outline to help you understand what each party expects the evidence to show.  A party is not required to make

an opening statement.  After the attorneys have made their opening statements, I will instruct you on the applicable law and then each party is given an opportunity to present its evidence. Plaintiffs go first because Plaintiffs have the burden of proof. Plaintiffs will present witnesses whom counsel for Defendants may cross-examine, and Plaintiffs may also present evidence. Following Plaintiffs' case, Defendants may present evidence.  Counsel for Plaintiffs may cross-examine witnesses for the defense. After all the evidence has been presented, I will instruct you on the law and then the attorneys will present to you closing arguments to summarize and interpret the evidence in a way that is helpful to their clients' positions. As with opening statements, closing arguments are not evidence. After that you will retire to the jury room to deliberate on your verdict in this case. [At this point the court may wish to inform the jury of the scheduling and length of the trial, and other logistical information.]

## GENERAL INSTRUCTIONS FOR USE DURING TRIAL

17.     Judicial Notice.  The rules of evidence permit the judge to accept facts that cannot reasonably be disputed. This is called judicial notice. I have decided to accept as proved the fact that [state the fact that the court has judicially noticed], even though no evidence has been introduced to prove this fact. You must accept this fact as true for purposes of this case. O'MALLEY §102.20.

18.     Stipulation of Testimony.  The parties have agreed that if [witness's name] were called as a witness, [he/she] would testify that [state the stipulated testimony]. This testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if [name of witness] had been present to testify. You must accept the fact that [name of witness] would have given that testimony. However, it is for you to determine the effect or weight to be given to that testimony.  O'MALLEY §102.10.

19.    <u>Stipulation of Fact</u>.  The parties have agreed that [set forth stipulated fact or facts] [is/are] true.  [The parties have stipulated that certain facts are true, and those stipulations have been read to you during this trial.]  You must therefore treat [this fact] [these facts] as having been proved for the purposes of this case.  O'MALLEY §102.11.

20.    <u>Use of Deposition</u>.  A deposition is the sworn testimony of a witness taken before trial.  The witness is placed under oath and swears to tell the truth, and lawyers for each party may ask questions.  A court reporter is present and records the questions and answers.  The deposition of [name of witness], which was taken on [date], is about to be [has been] presented to you by reading the transcript.  Deposition testimony is entitled to the same consideration and is to be judged, insofar as possible, in the same way as if the witness had been present to testify.  Do not place any significance on the behavior or tone of voice of any person reading the questions or answers.  O'MALLEY §102.23.

21.    <u>Use of Interrogatories</u>.  You will now hear [have heard] answers that [name of party] gave in response to written questions submitted by the other side.  The written questions are called "interrogatories."  The written answers were given in writing and under oath, before the trial.  You must consider [name of party]'s answers to interrogatories in the same manner as if the answers were made from the witness stand.  O'MALLEY §102.24.

22.    <u>Striking Evidence</u>.  I have ordered that [describe the evidence] be struck from the record and I am instructing you that you must disregard that information [testimony].  That means that when you are deciding the case, you must not consider that information [testimony] in any way.  O'MALLEY §101.40.

23.    <u>Evidence Admitted for a Limited Purpose</u>.  You [have heard] [will now hear] evidence that was received for [a] particular limited purpose[s].  [This evidence can be considered

by you as evidence that (describe limited purpose)]. It may not be used for any other purpose. [For example, you cannot use it as proof that (discuss specific prohibited purpose)].  O'MALLEY §102.40.

24.     <u>Opinion Testimony</u>.   You have heard [will hear] testimony containing opinions from [name of witness]. In weighing this opinion testimony, you may consider [his/her] qualifications, the reasons for [his/her] opinions, and the reliability of the information supporting those opinions, as well as the factors I have previously mentioned for weighing the testimony of any other witness. The opinion of [name of witness] should receive whatever weight and credit, if any, you think appropriate, given all the other evidence in the case.  O'MALLEY §104.40.

25.     <u>Bias</u>.   In deciding whether to accept or rely upon the opinion of [name of witness], you may consider any bias that [name of witness] may have, including any bias that may arise from evidence that [name of witness] has been or will be paid for reviewing the case and testifying [or from evidence that [name of witness] testifies regularly and makes a large portion of [his/her] income from testifying in court].  *Davis v. Alaska*, 415 U.S. 308 (1974).

26.     <u>Recess Admonition</u>.   We are about to take [our first] [a] recess [and I remind you of the instruction I gave you earlier]. During this recess and any other recess, you must not discuss this case with anyone, including your fellow jurors, members of your family, people involved in the trial, or anyone else. If anyone tries to talk to you about the case, do not tell your fellow jurors but tell me about it immediately. [Do not read, watch or listen to any news reports of the trial, or conduct any research or investigation, including on the Internet]. Finally, remember to keep an open mind until all the evidence has been received and you have heard the views of your fellow jurors.  If you need to speak with me about anything, simply give a signed

-12-

note to [identify court personnel] to give to me. [I will not repeat these admonitions each time we recess or adjourn, but you will be reminded of them on occasion.] O'MALLEY §102.01.

## GENERAL INSTRUCTIONS PRIOR TO DELIBERATIONS

27.     Members of the jury, now that you have heard the evidence and the argument, it becomes my duty to give you the instructions of the Court as to the law applicable to this case.  It is your duty as jurors to follow the law as I shall state it to you, and to apply that law to the facts as you find them from the evidence in the case.  You are not to single out one instruction alone as stating the law, but must consider the instructions as a whole.  Neither are you to be concerned with the wisdom of any rule of law stated by me.  Nothing I say in these instructions is to be taken as an indication that I have any opinion about the facts of this case, or what that opinion is. It is not my function to determine the facts, but rather yours.  You must perform your duties as jurors without bias or prejudice as to any party.  The law does not permit you to be governed by sympathy, prejudice or public opinion.  All parties expect that you will carefully and impartially consider all of the evidence, follow the law as it is now being given to you, and reach a just verdict, regardless of the consequences.  DEVITT, BLACKMAR AND WOLFF, FEDERAL JURY PRACTICE AND INSTRUCTIONS § 71.01 (4th ed. 1987).

28.     This case should be considered and decided by you as an action between persons of equal standing in the community, of equal worth, and holding the same or similar stations of life.   The Defendants in this case are corporations.  The fact that corporations are involved as parties must not affect your decision in any way.  A corporation is entitled to the same fair trial at your hands as a private individual.  All persons, including corporations, stand equal before the law, and are to be dealt with as equals in a court of justice.  DEVITT § 71.04.

29.    When a corporation is involved, of course, it may act only through people as its employees; and, in general, a corporation is responsible under the law for any of the acts and statements of its employees that are made within the scope of their duties as employees of the company.  DEVITT § 80.16.

30.    Statements and arguments of counsel are not evidence in the case.  When, however, the attorneys on both sides stipulate or agree as to the existence of a fact, the jury must, unless otherwise instructed, accept the stipulation and regard that fact as proved.  The Court may take judicial notice of certain facts or events.  When the Court declares it will take judicial notice of some fact or event, the jury must, unless otherwise instructed, accept the Court's declaration as evidence, and regard as proved the fact or event which has been judicially noticed.  Unless you are otherwise instructed, the evidence in the case always consisted of the sworn testimony of the witnesses, regardless of who may have called them; and all exhibits received in evidence, regardless of who may have produced them; and all facts which may have been admitted or stipulated; and all facts and events which may have been judicially noticed.  Any evidence as to which an objection was sustained by the Court, and any evidence ordered stricken by the court, must be entirely disregarded.  DEVITT § 71.08

31.    The law of the United States permits the judge to comment to the jury on the evidence in the case.  Such comments are only the expression of the judge's opinion as to the facts; you may disregard them entirely, since you as jurors are the sole judges of the facts. DEVITT § 71.11

32.    If a lawyer asks a witness a question which contains an assertion of fact, you may not consider the assertion as evidence of that fact.  The lawyer's statements are not evidence. DEVITT § 71.12

33.     The burden is on the plaintiff in a civil action, such as this, to prove every essential element of his claim by a preponderance of the evidence.  If the proof should fail to establish any essential element of plaintiff's claim by a preponderance of the evidence in the case, the jury should find for the defendant as to that claim.  To "establish by a preponderance of the evidence" means to prove that something is more likely so than not so.  In other words, a preponderance of the evidence in the case means such evidence as, when considered and compared with that opposed to it, has more convincing force, and produces in your minds belief that what is sought to be proved is more likely true than not true.  This rule does not, of course, require proof to an absolute certainty, since proof to an absolute certainty is seldom possible in any case.  In determining whether any fact in issue has been proved by a preponderance of the evidence in the case, the jury may, unless otherwise instructed, consider the testimony of all witnesses, regardless of who may have called them, and all exhibits received in evidence, regardless of who may have produced them.  DEVITT § 72.01

34.     There are, generally speaking, two types of evidence from which a jury may properly find the truth as to the facts of a case.  One is direct evidence such as the testimony of an eyewitness.  The other is indirect or circumstantial evidence -- the proof of a chain of circumstances pointing to the existence or non existence of certain facts.  As a general rule, the law makes no distinction between direct or circumstantial evidence, but simply requires that the jury find the facts in accordance with the preponderance of all the evidence in the case, both direct and circumstantial.  DEVITT § 72.03

35.     You are to consider only the evidence in the case.  But in your consideration of the evidence you are not limited to the bald statements of the witnesses.  In other words, you are not limited to what you see and hear as the witnesses testify.  You are permitted to draw, from

-15-

facts which you find have been proved, such reasonable inferences as seem justified in the light of your experience.  DEVITT § 72.04

36.     The rules of evidence ordinarily do not permit witnesses to testify as to opinions or conclusions.  An exception to this rule exists as to those whom we call "expert witnesses." Witnesses who, by education and experience, have become expert in some art, science, profession, or calling, may state their opinions as to relevant and material matters, in which they profess to be expert, and may also state their reasons for the opinion.  You should consider each expert opinion received in evidence in this case, and give it such weight as you may think it deserves.  If you should decide that the opinion of an expert witness is not based upon sufficient education and experience, or if you should conclude that the reasons given in support of the opinion are not sound, or if you feel that it is outweighed by other evidence, you may disregard the opinion entirely.  DEVITT § 72.08

37.     To have evidentiary weight, an expert's opinion must be based upon proven facts; therefore, unless you find that all of the assumed facts upon which an expert opinion is based and which were essential to that opinion, you cannot properly accept or rely upon that expert opinion. *Herman Shwabe, Inc. v. United Shoe Machinery Corp.*, 297 F. 2d 906 (2d Cir. 1962); *Syracuse Broadcasting Corp. v. Newhouse*, 319 F. 2d 683 (2d Cir. 1963); *Rewis v. U.S.*, 1369 F. 2d 595 (5th Cir. 1966).

38.     You are not bound to decide any issue of fact in accordance with the testimony of any number of witnesses which does not produce in your minds belief in the likelihood of truth, as against the testimony of a lesser number of witnesses or other evidence which does produce such belief in your minds.  The test is not which side brings the greater number of witnesses, or

presents the greater quantity of evidence; but which witness, and which evidence, appeals to your minds as being most accurate, and otherwise trustworthy.  DEVITT § 72.13

39.     The testimony of a single witness which produces in your minds belief in the likelihood of truth is sufficient for the proof of any fact, and would justify a verdict in accordance with such testimony, even though a number of witnesses may have testified to the contrary, if, after consideration of all the evidence in the case, you hold greater belief in the accuracy and reliability of the one witness.  DEVITT § 72.14

40.     You, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves.  You may be guided by the appearance and conduct of the witness, or by the manner in which the witness testifies, or by the character of the testimony given, or by evidence to the contrary of the testimony given.  You should carefully scrutinize all the testimony given, the circumstances under which each witness has testified, and every matter in evidence which tends to show whether a witness is worthy of belief.  Consider each witness' intelligence, motive and state of mind, and demeanor or manner while on the stand.  Consider the witness' ability to observe the matters as to which he has testified, and whether he impresses you as having an accurate recollection of these matters.  Consider also any relation each witness may bear to either side of the case; the manner in which each witness might be affected by the verdict; and  the extent to which, if at all, each witness is either supported or contradicted by other evidence in the case.  Inconsistencies or discrepancies in the testimony of a witness, or between the testimony of different witnesses, may or may not cause the jury to discredit such testimony.  Two or more persons witnessing an incident or a transaction may see or hear it differently; and innocent misrecollection, like failure of recollection, is not an uncommon experience.   In weighing the effect of a discrepancy, always consider whether it pertains to matter of importance

-17-

or an unimportant detail, and whether the discrepancy results from innocent error or intentional falsehood.  After making your own judgment, you will give the testimony of each witness such weight, if any, as you may think it deserves.  You may, in short, accept or reject the testimony of any witness in whole or in part.  Also, the weight of the evidence is not necessarily determined by the number of witnesses testifying to the existence or non existence of any fact.  You may find that the testimony of a small number of witnesses as to any fact is more credible than the testimony of a larger number of witnesses to the contrary.  DEVITT § 73.01

41.     If you are satisfied that plaintiff, or any of his witnesses, failed to tell the truth, or if you find that the testimony of plaintiff, or any of his witnesses, is inherently improbable due to its inaccuracy, uncertainty, interest or bias, you may disregard such testimony.  *Penn-Texas Corporation v. Morse*, 242 F. 2d 243 (7th Cir. 1957).  In short, you may accept or reject the testimony of any witness in whole or in part.

42.     In determining the weight to be given plaintiff's testimony, you may consider the fact that plaintiff is interest in the litigation and stands to gain financially from a favorable verdict.  *Westchester Fire Insur. v. Tantalo*, 273 F. Supp. 25 (D. Conn. 1967).

43.     During the trial of this case, certain testimony has been presented to you by way of deposition, consisting of sworn recorded answers to questions asked of the witness in advance of the trial by one or more of the attorneys for the parties to the case.  The testimony of a witness who, for some reason, cannot be present to testify from the witness stand may be presented in writing under oath.  Such testimony is entitled to the same consideration, and is to be judged as to credibility, and weighed, and otherwise considered by the jury, in so far as possible, in the same way as if the witness had been present, and had testified from the witness stand.  DEVITT § 73.02

44.     A witness may be discredited or impeached by contradictory evidence; or by evidence that at some other time the witness has said or done something, or has failed to say or do something which is inconsistent with the witness' present testimony.  If you believe any witness has been impeached and thus discredited, it is your exclusive province to give the testimony of that witness such credibility, if any, as you may think it deserves.  If a witness is shown knowingly to have testified falsely concerning any material matter, you have a right to distrust such witness's testimony in other particulars and you may reject all the testimony in other particulars and you may reject all the testimony of that witness or give it such credibility as you may think it deserves.  An act or omission is "knowingly" done, if voluntarily and intentionally, and not because of mistake or accident or other innocent reason.  DEVITT § 73.04

45.     Evidence that at some other time a witness, not a party to this action, has said or done something which is inconsistent with the witness' testimony at the trial, may be considered for the sole purpose of judging the credibility of the witness but may never be considered as evidence of proof of the truth of any such statement.  Where, however, the witness is a party to the case, and by such statement, or other conduct, admits some fact or facts against his interest, then such statement or other conduct, if knowingly made or done, may be considered as evidence of the truth of the fact or facts so admitted by such party, as well as for the purpose of judging the credibility of the party as a witness.  An act or omission is "knowingly" done, if done voluntarily and intentionally, and not because of mistake or accident or other innocent reason. DEVITT § 73.09

46.     Your verdict must be based on common sense and reasonable beliefs and must be supported by the credible evidence and not mere speculation.  *Miller v. Farell Lines*, 247 F. 2d

503 (2d Cir. 1957); *Kubuski v. New York Central Railroad Co.*, 359 F. 2d 90 (2d Cir. 1966), *cert. denied*, 386 U.S. 1036 (1967).

47.     The verdict must represent the considered judgment of each juror.  In order to return a verdict, it is necessary that each juror agree.  Your verdict must be unanimous.  It is your duty, as jurors, to consult with one another, and to deliberate with a view to reaching an agreement, if you can do so without violence to individual judgment.  You must each decide the case for yourself, but only after an impartial consideration of the evidence in the case with your fellow jurors.  In the course of your deliberations, do not hesitate to reexamine your own views, and change your opinion, if convinced it is erroneous.  But do not surrender your honest conviction as to the weight or effect of evidence, solely because of the opinion of your fellow jurors, or of the mere purpose of returning a verdict.  Remember at all times that you are not partisans.  You are judges of the facts.  Your sole interest is to seek the truth from the evidence in the case.  DEVITT §  74.01

48.     Upon retiring to the jury room, you will select one of your number to act as your foreperson.  The foreperson will preside over your deliberations, and will be your spokesman here in Court.  A form of special verdict has been prepared for your convenience.  You will take this form to the jury room.  [Form of special verdict read.]  You will note that each question calls for a 'Yes' or 'No' answer.  The answer to each question must be the unanimous answer of the jury.  Your foreperson will write the unanimous answer of the jury in the spaced provided opposite each question.  Fed.R.Civ.P., Rule 49(a); DEVITT § 74.05

49.     It is proper to add the caution that nothing said in these instructions and nothing in any form of verdict prepared for your convenience is meant to suggest or convey in any way or

-20-

manner any intimation as to what verdict I think you should find.  What the verdict shall be is your sole and exclusive duty and responsibility.  DEVITT § 74.07

50.     If it becomes necessary during your deliberations to communicate with the Court, you may send a note by a bailiff, signed by your foreperson or by one or more members of the jury.  No member of the jury should ever attempt to communicate with the Court by any means other than a signed writing, and the Court will never communicate with any member of the jury on any subject touching the merits of the case otherwise than in writing, or orally here in open Court.  You will note from the oath about to be taken by the bailiffs that they too, as well as all other persons, are forbidden to communicate in any way or manner with any member of the jury on any subject touching the merits of the case.  Bear in mind also that you are never to reveal to any person not even to the Court how the jury stands, numerically or otherwise, on the questions before you, until after you have reached unanimous verdict.  DEVITT § 74.08

## GENERAL NEGLIGENCE CHARGES

51.     Plaintiffs in this case claim damages for personal injuries alleged to have been suffered as a result of Defendants' negligence in its operation of its vessel, NORASIA ALYA. O'MALLEY § 120.01.  In this case, "negligence" is the doing of some act a reasonably prudent mariner would not do, or the failure to do something a reasonably prudent mariner would do, when prompted by considerations that ordinarily regulate the conduct of the navigation of a vessel.  In other words, it is the failure to use the "ordinary care" that reasonably prudent mariners exercise in the management of their vessels in order to avoid injury to themselves or their property, or to avoid injury to persons or the property of others. O'MALLEY § 120.02, §120.10.

52.     In order to prove the essential elements of plaintiffs' claim, the burden is on Plaintiffs to establish by a preponderance of the evidence: First, that Defendants were negligent

in one or more of the particulars alleged; and second, that Defendants' negligence was a proximate [legal] cause of some injury and consequent damage sustained by plaintiff. O'MALLEY § 120.03.

53.    Ordinary care is not an absolute term, but a relative one. In deciding whether ordinary care was exercised in a given case, the conduct in question must be viewed in the light of all the surrounding circumstances as shown by the evidence in the case. O'MALLEY § 120.11.

54.    The standard of care in collision cases also is provided by specific statutory provisions and by the requirements of good seamanship, which I will discuss in a moment. *Bernert Towboat Co. v. USS Chandler (DDG 996)*, 666 F. Supp. 1454, 1457 (D. Or. 1987).

55.    The mere fact that an accident happened, standing alone, does not permit the jury to draw the inference that the accident was caused by anyone's negligence. O'MALLEY § 120.20.

56.    Plaintiffs allege that the conduct of the persons in charge of NORASIA ALYA's navigation, at the time and place in question, was negligent in the following particulars: NORASIA ALYA collided with, and sank AVA CLAIRE due to the failure of the persons in charge of the navigation of NORASIA ALYA to observe the general maritime standard for proper seamanship and to comply with Rules 2, 5, 6, 7, 8, 19, 35 of the collision regulations, which violations contributed to the collision.

57.    Defendants allege that the conduct of the persons in charge of AVA CLAIRE's navigation, at the time and place in question, was negligent in the following particulars: AVA CLAIRE was involved in the collision due to the failure of the persons in charge of the navigation of AVA CLAIRE to observe the general maritime standard for proper seamanship and to comply with Rules 2, 5, 6, 7, 8, 19, 35 of the collision regulations, which violations contributed to the collision.

## COLREGS INSTRUCTIONS

58.     The statutory provisions that apply in a collision between two vessels on the high seas are the COLREGS.  33 USC § 1601, et. seq.  At all relevant times, the navigation of AVA CLAIRE and NORASIA ALYA was governed by the COLREGS.

59.     These nautical rules of navigation are binding enactments that must be adhered to closely by all vessels.  THOMAS J. SCHOENBAUM, 2 ADMIRALTY AND MARITIME LAW 92 (4th ed. 2004).  They are obligatory on all vessels which are approaching each other starting from the time the necessity for precaution begins, and they continue to be obligatory as the vessels advance, so long as they have the means and opportunity to avoid danger.  *The Johnson*, 76 U.S. 146, 153 (1869).  The question of when the need for precaution arises is to be determined by you by applying objective standards.  The fact that one of the vessels in this case did not understand its obligations under the collision regulations or perceive or understand the need for care is not a defense and does not matter in your determination of fault.  *Ocean Marine Ltd. v. United States Lines Co.*, 300 F.2d 496, 498 (2d Cir. 1962).

60.     The COLREGS are the nautical equivalent to rules of the road and are to be read together with no specific rule superseding any other rule.  *Maritrans Operating Partners L.P. v. M/T Faith I*, 800 F. Supp. 133, 138 (D.N.J. 1992).  You are required to consider all rule violations that could have caused the collision and are to assess fault upon a finding that one or both of the vessels has violated one or more of the COLREGS.  *Id.*

61.     Aside from the official rules of navigation and statutory directions contained in the COLREGS, prudent seamanship is demanded of the mariner at all times.  The failure to exercise prudent seamanship is negligence.  The basic principle that arises from the requirement of prudent seamanship that is relevant to this case is that a collision course that is reasonably

observable, visually or otherwise, must be avoided. *Miller v. Semet-Solvay Div., Allied Chem. Co.*, 406 F.2d 1037, 1038 (4th Cir. 1969); *National Shipping Co. of Saudi Arabia v. United States*, 95 F. Supp. 2d 482, 490 (E.D. Va., 2000).

62.     Liability in a collision case is also governed by a rule known as the *Pennsylvania* rule, so-called because of the name of the vessel involved in a collision which gave rise to the rule.   The *Pennsylvania* rule provides that when a vessel is in violation of a statutory rule intended to prevent collisions, the burden is on the offending vessel to prove not merely that its fault might not have been one of the causes, or that it probably was not, but that it could not possibly have been. *See, e.g., Stolt Achievement, Ltd. v. Dredge B.E. Lindholm*, 447 F.3d 360, 364 (5th Cir. 2006) (*citing The Pennsylvania*, 86 U.S. 125, 136 (1873).)

63.     This so-called *Pennsylvania* rule does not itself impose liability.  Instead, the rule presupposes that fault has first been proved and then it shifts the burden of proof as to the cause of a collision on the party in violation of the applicable rule. *Mar. & Mercantile Int'l L.L.C. v. United States*, No. 02-Civ-1446, 2007 U.S. Dist. LEXIS 19792, *62 (S.D.N.Y. Feb. 28, 2007).

64.     This first collision regulation I will instruct you on is Rule 2(a), commonly referred to as the "rule of good seamanship." Rule 2(a) provides that: "Nothing in these Rules shall exonerate any vessel, or the owner, master or crew thereof, from the consequences of any neglect with these Rules or of the neglect of any precaution which may be required by the ordinary practice of seamen, or by the special circumstances of the case." Rule 2(a) provides the standard for evaluating the conduct of the vessels under the COLREGS. NICHOLAS J. HEALY & JOSEPH C. SWEENEY, THE LAW OF MARINE COLLISION 74–75 (1998).

65.     While the COLREGS spell out specific duties and responsibilities of those operating vessels at sea, they cannot spell out every act or omission of a master or crew member

that could conceivably be held poor seamanship.  Thus, in applying Rule 2(a) you may find a party liable for negligent seamanship even if you find no other violation of the collision regulations.  *Elenson v. S.S. FORTALEZA*, No. 90 Civ. 0437, 1991 U.S. Dist. LEXIS 16853, at *14 (S.D.N.Y. Nov. 21, 1991).  What this means in the present case, is that you may find that a vessel is in violation of Rule 2(a)'s requirement to use prudent seamanship by failing to use its VHF radio to warn an on-coming vessel of its intentions in time for the other vessel to take evasive action, especially where there is no indication that the approaching vessel is aware of the circumstances.  *In re Complaint of G & G Shipping Co.*, 767 F. Supp. 398, 411 (D.P.R. 1991).  If you find such an action to be prudent seamanship, you may find a violation which caused the collision even if there is no specific rule requiring the use of the VHF radio.

66.     In addressing the question of prudent seamanship and negligence under Rule 2(a), you may consider the evidence which was presented concerning the custom in the industry concerning the carriage of certain safety devices on fishing vessels.  If you find that there were such customs, they may indicate recognition of a hazard and of means to avoid it, which you may consider as one indication of what may be reasonable in a given situation.  On the other hand, you may find that an industry custom does not reflect the level of care which a reasonably prudent person would take and that, although an industry custom or safety rule was followed, the party who followed it was negligent.  DEWITT, Instruction 90-22.

67.     Under the carriage requirements established by the Coast Guard, fishing vessels are usually exempt from the requirement to carry AIS.  Accordingly, it is not customary for fishing vessels, such as the AVA CLAIRE, to carry AIS.  The practice in the fishing industry not to carry an AIS, however, would not, in itself, absolve AVA CLAIRE of liability.  Conformity to custom is not in itself the exercise of due care.  *Troupe v. Chicago, Duluth & Georgian Bay*

*Transit Co.*, 234 F.2d 253, 260 (2d Cir. 1956).  The standard of care in a negligence action is not limited to complying with usual practices in the industry or trade.  *June T., Inc. v. King*, 290 F.2d 404, 406 (5th Cir. 1961)  There may be precautions so imperative that even their universal disregard by an entire industry will not excuse their omission.  *The T. J. Hooper*, 60 F.2d 737, 740 (2d Cir. 1932).  Similarly, governmental regulations do not necessarily measure the scope of duty.  *Schlichter v. Port Arthur Towing Co.*, 288 F.2d 801, 804-805 (5th Cir. 1961).  In some situations, standards of prudent seaworthiness call for an owner to supply more than the minimum equipment required  by statutory or regulatory law.  *Walker v. Harris*, 335 F.2d 185, 196-197 (5th Cir. 1964).  If you find that a reasonably prudent mariner, who regularly fishes near a heavily traveled shipping lane and that regularly does so in dense fog, would have equipped his vessel with an AIS, then you may find that Michael Stepski's failure to equip the AVA CLAIRE with an AIS was negligent.

68.    Rule 5 provides that"[e]very vessel shall at all times maintain a proper look-out by sight and hearing as well as by all available means appropriate in the prevailing circumstances and conditions so as to make a full appraisal of the situation and of the risk of collision."

69.    The duty of the lookout is of the highest importance.  *Afran Transport Co. v. The Bergechief*, 170 F. Supp. 893, 900 (S.D.N.Y. 1959), *aff'd*, 274 F.2d 469 (1960).  Violation of the lookout rule is a serious fault.  *S.S. FORTALEZA*, 1991 U.S. Dist. LEXIS 16853 at *7.  A moment's negligence on the part of the lookout can result in the loss of vessel.  *The Ariadne*, 80 U.S. 475, 478 (1871).  The performance of the lookout duty is one of the most important requirements of prudent navigation.  *Nicholes v. M/V Maya*, 949 F. Supp. 391, 398 (D.S.C. 1996).

70.     The obligation to maintain a proper lookout applies equally to small vessels and fishing vessels as it does to large vessels.  *SS FORTALEZA*, 1991 U.S. Dist. LEXIS 16853 at *6; *In re Complaint of Interstate Towing Co.*, 717 F.2d 752, 755 (2d Cir. 1983).

71.     The lookout is to be vigilantly maintained by a competent person of suitable experience.  An inefficient lookout is equivalent to none.  *Id. at* 717, 752.

72.     The required lookout must have no other duties which distract from the keeping of a proper lookout.  *Alaska Packers Ass'n, Inc. v. O/S East Point*, 421 F. Supp. 48, 52 (W.D. Wash. 1976); *Dahlia Maritime Co. v. M/S Nordic Challenger*, No. 90-2398, 1993 U.S. Dist. LEXIS 10170, at *10 (E.D. La. Jul. 12 1993); *The Montrose*, 47 F. Supp. 719, 724 (E.D.N.Y. 1942).  A lookout simultaneously performing many functions is insufficient.  *Complaint of Flota Merchante Grancolombiana, S.A.*, 440 F. Supp. 704, 715 (S.D.N.Y. 1977)

73.     Rule 5 does not specifically address where on the vessel the lookout must be positioned.  To comply with standards of prudent seamanship, the lookout should be posted where he can best perform his duties.  *Granholm v. TFL Express*, 576 F. Supp. 435, 448-449 (S.D.N.Y. 1983).

74.     The absence of a lookout on the bow does not require a finding of fault if the lookout might not have seen the other vessel in fog any better on the bow than from the wheelhouse.  *Moran Towing & Transp. Co. v. City of New York*, 620 F.2d 356, 357 n.1 (2d Cir. 1980).  Also, the absence of a lookout on the bow is not a fault if the watch officer on the bridge already has all the information that a lookout could have provided.  *Ellis Towing & Transp. Co. v. Socony Mobil Oil Co.*, 292 F.2d 91, 96 (5th Cir. 1961).  Thus, even if you find that there was a breach of the duty to keep a proper lookout, if you find that the lookout could not have prevented

the collision, you should not find liability on that basis.  *In re O. L. Schmidt Barge Lines, Inc.*, 475 F.2d 428, 431 (7th Cir. 1973).

75.     A vessel found at fault for not maintaining a proper lookout has the burden under the *Pennsylvania* rule of proving that its failure could not have been a cause of the collision. *Hygrade Operators, Inc. v. Tug Tahchee*, 307 F. Supp. 2d 626, 631 (D.N.J. 2003).

76.     Rules 6 and 19(b) require that vessels travel at a safe speed in the fog. Rule 6 requires that "[e]very vessel shall at all times proceed at a safe speed so that she can take proper and effective action to avoid collision and be stopped within a distance appropriate to the prevailing circumstances and conditions." In determining what the safe speed is in the "prevailing circumstances," the factors that should be taken into account include: "the state of visibility; the traffic density, including concentrations of fishing vessels or any other vessels; the manoeuverability of the vessel . . [and] the state of wind, sea and current, and the proximity of navigational hazards." (Rule 6(a)(i)-(iii), (v)).  Rule 19(b) requires "[e]very vessel . . . [to] proceed at a safe speed adapted to the prevailing circumstances and conditions of restricted visibility."

77.     Additionally, vessels equipped with an operational radar are required to consider: "the characteristics, efficiency and limitations of the radar equipment; any constraints imposed by the radar range scale in use; the effect on radar detection of the sea state, weather and other sources of interference; the possibility that small vessels . . . and other floating objects may not be detected by radar at an adequate range; [and] the number, location and movement of vessels detected by radar." (Rule 6(b)(i)-(iii), (v)).

78.     The question of what constitutes a "safe speed" is relative and depends on the situation confronting the vessel at any given moment or the peculiar circumstances of each case.

-28-

*Ching Sheng Fishery Co. v. U.S.*, No. 93 Civ. 1634, 1996 U.S. Dist. LEXIS 4287, at \*36 (S.D.N.Y. Apr. 8, 1996); *Polarus S.S. Co. v. T/S Sandefjord*, 236 F.2d 270 (2d Cir. 1956).

79.     A vessel found to be in violation of the safe speed rule has the burden under the *Pennsylvania* rule of showing that the violation could not have caused or contributed to the collision. *Mar. & Mercantile Int'l L.L.C. v. United States*, 2007 U.S. Dist. LEXIS 19792 at \*72.

80.     Rules 7 and 19 govern the requirement for a vessel to determine if a risk of collision exists or a close-quarters situation is developing.   Rule 7 generally governs the avoidance of the risk of collision.   Rule 7(a) provides that "[e]very vessel shall use all available means appropriate to the prevailing circumstances and conditions to determine if risk of collision exists.   If there is any doubt such risk shall be deemed to exist."   Rule 7(c) bars a vessel "from making assumptions on scanty information, especially scanty radar information."   Thus, any doubt about radar target's course and intentions creates a presumption of risk of collision.   *In re Nat'l Shipping Co. of Saudi Arabia*, 147 F. Supp. 2d 425, 438 (E.D. Va. 2000).   Rule 19 (d) provides that a vessel "which detects by radar alone the presence of another vessel shall determine if a close-quarters situation is developing and/or risk of collision exists."

81.     Rules 7 and 19 are intended to prevent the risk of collision as well as collision itself.   *Ocean Marine Ltd.*, 300 F.2d at 499.   It is not necessary for a collision to be imminent, or even probable, before the obligations imposed by the COLREGS becomes operative.   *Esso Standard Oil Co. v. Oil Screw Tug Maluco I*, 332 F.2d 211, 214 (4th Cir. 1964).   It is the risk of collision, not just the collision itself, that must be avoided.   *Ocean S.S. Co. of Savannah v. U.S.*, 38 F.2d 782, 784 (2d Cir. 1930)).

82.     What constitutes a close-quarters situation or risk of collision is not defined in the COLREGS.   It is determined based on the location of the vessels, their relative speeds, weather

conditions, and the space in which they have to maneuver. *See, e.g., In re G & G Shipping Co.*, 767 F. Supp. at 410. Accordingly, the question of when the need for precaution arises is to be determined by the application of objective standards. *Ocean Marine Ltd.* 498. Applying such objective standards, the existence of close-quarters between vessels approaching each other in fog ranges from two miles to almost five miles. *Hellenic Lines, Ltd. v. Prudential Lines, Inc.*, 730 F.2d 159, 164 (4th Cir. 1984); *Alkmeon Naviera, S.A. v. M/V "Marina L"*, 633 F.2d 789, 795 n. 10 (9th Cir. 1980); *Socony Vacuum Transp. Co. v. Gypsum Packet Co.*, 153 F.2d 773, 775-76 (2d Cir. 1946); *In re Nat'l Shipping Co. of Saudi Arabia*, 147 F. Supp. 2d at 436-37.

83.     One way to determine whether there is a risk of collision is through the use of radar. Rule 7(b) governs the use of radar to determine risk of collision. Rule 7(b) provides that each vessel "shall" make "[p]roper use . . . of radar equipment . . . including long-range scanning to obtain early warning of risk of collision and radar plotting or equivalent systematic observation of detected objects."

84.     Where radar is present and functional it must be used and used properly. *In re Complaint of Cameron Boat Rentals, Inc.*, 683 F. Supp. 577, 583-584 (D. La. 1988). It is a violation of Rule 7(b) to fail to effectively use radar. *Ching Sheng Fishery Co. v. U.S.*, 124 F.3d 152, 160 (2d Cir. 1997). A vessel's captain who fails to use radar intelligently and fully must prove that such fault did not contribute to the collision. *Williamson Leasing Co. v. Am. Commercial Lines, Inc.*, 616 F. Supp. 1330, 1340 (E.D. La. 1985); *Trinidad Corp. v. S.S. KEIYOH MARU*, 845 F.2d 818, 826 (9th Cir. 1988).

85.     Determining whether a particular method of radar observation is "equivalent to" radar plotting requires comparison of the information provided by the method with that provided by radar plotting. A mariner fails to comply with Rule 7(b), for example, where the radar plot of

-30-

an approaching vessel's course is incomplete, *Potomac Transp., Inc. v. OMI Corp.*, 741 F. Supp. 395, 403 (S.D.N.Y. 1989), *aff'd in part, vacated in part on other grounds*, 909 F.2d 42 (2d Cir. 1990), or where personnel fail to use radar equipment effectively to track the approach of an oncoming vessel, *Ocean Foods Boat Co. v. M/V Tosca*, 692 F. Supp. 1253, 1262-63 (D. Or. 1988), or where the method of radar observation does not determine the course, speed, and relative motion of the approaching vessel, *Hellenic Lines, Ltd.* 730 F.2d at 163, or where the master did not plot contacts with his radar or systematically observe them, or where he barely observed the radar at all.  *Paterakis v. United States*, 849 F. Supp. 1106, 1112 (E.D. Va. 1994). There are examples.  You must determine if the radar has been used in a manner equivalent to radar plotting.

86.     Under the *Pennsylvania* rule, a vessel which has been found to be in violation of Rule 7 must show that the violation could not have contributed to the collision.  *Ocean Foods Boat Co.*, 692 F. Supp. at 1263.

87.     If a vessel makes radar contact with another vessel, then Rule 8 and Rule 19(d) come into play to guide the mariners' actions.  Among other things, Rule 8 requires that any action to avoid collision "be positive, [be] made in ample time and with due regard to the observance of good seamanship," and be such as to "result in passing at a safe distance." Rule 19(d) requires that:  "A vessel which detects by radar alone the presence of another vessel shall determine if a close-quarters situation is developing and/or risk of collision exists. If so, she shall take avoiding action in ample time."

88.     Under these rules, where a vessel, even if acting in substantial compliance with all other  appropriate navigational rules, appreciates or should appreciate that an impending problem or risk of collision exists yet negligently fails to act to avert it, if it may have done so safely, the

vessel is liable. *Movible Offshore, Inc. v. M/V Wilken A. Falgout*, 471 F.2d 268, 274 (5th Cir.

1973). Put another way, when safe means of avoidance of risk of collision are obviously and

readily at hand, their neglect is inexcusable. *United States v. M/V Wuerttemberg*, 330 F.2d 498,

504 (4th Cir. 1964). Thus, a vessel that has both the time and sea room to avoid a collision

violates Rules 8 and 19 by failing to take action in ample time to avoid collision. *Zim Israel*

*Navigation Co. v. Special Carriers, Inc.*, 611 F. Supp. 581, 586-87 (E.D. La. 1985).

89. Rule 35 requires vessels operating in what is known as restricted visibility, such

as the fog that was encountered in this case, to sound certain periodic signals using their vessels'

fog horn. Rule 35(a) requires that "[i]n or near an area of restricted visibility . . . [a] power-driven

vessel making way through the water shall sound intervals of not more than 2 minutes one

prolonged blast." Rule 35(c) requires that "in or near an area of restricted visibility, whether by

day or night" a vessel engaged in fishing, whether underway or at anchor shall sound whistles

signals at intervals of not more than 2 minutes consisting of "three blasts in succession; namely,

one prolonged followed by two short blasts."

90. Plaintiffs have conceded that AVA CLAIRE failed to sound any fog signals. This

admission establishes a violation of Rule 35 on the part of AVA CLAIRE. *In the Matter of the*

*Complaint of Waterstand Marine, Ltd.*, No. 87-1516, 1988 U.S. Dist. LEXIS 7760, at *8 (E.D.

Pa. July 26, 1988).

91. A vessel in violation of Rule 35 has the burden under the *Pennsylvania* rule to

demonstrate that its failure to sound fog signals could not have caused the collision even where

other vessel was negligently navigated. *Mar. & Mercantile Int'l L.L.C. v. United States*, 2007

U.S. Dist. LEXIS 19792, at *103-104; *The Edward E. Loomis*, 86 F.2d 705, 708 (2d Cir. 1936);

*The Papoose*, 85 F.2d 54, 55-56 (2d Cir. 1936).

92.     The exercise of prudent seamanship also requires mariners to comply with United States Coast Guard regulations.  One of the regulations relevant in this case requires that "[e]xcept for a vessel rigged with gear that provides a radar signature from a distance of 6 miles, each non-metallic hull vessel must have a radar reflector." 46 C.F.R.  § 28.235(b).  The Coast Guard have found that many small nonmetallic hull vessels have been struck while fishing, especially in inclement weather, because their radar signatures were inadequate to allow them to be detected. 56 Fed. Reg. 40364 (Aug. 14, 1991).  No specific standards are published for radar reflectors. Instead, the Coast Guard requires that vessel owners satisfy themselves that the radar reflector installed will allow their vessel to be detected by radar from a distance of at least six miles in all expected conditions of operation.  *Id.*

93.     Because everyone is required to act with knowledge of what the law forbids and what the law requires to be done, the provisions of law set forth in the statutes and regulations just read to you are to be considered by you as one of the circumstances in evidence in the case, surrounding the conduct of both Plaintiff and Defendant.  O'MALLEY § 120.40

94.     If you find from a preponderance of the evidence in the case that Plaintiffs or Defendants, by some act or failure to act, violated the provisions of the statutes or regulation, such conduct in violation of the law is presumed negligent.  This presumption of negligence is not conclusive, but may be overcome or outweighed by evidence in the case satisfying your minds that, notwithstanding any failure to comply with the provisions of law in question, Plaintiffs or Defendants acted as a reasonably prudent mariner would have acted under all the surrounding circumstances shown by the evidence in the case. O'MALLEY § 120.41

**PROXIMATE CAUSE**

95.     A finding of negligence based upon a violation of law will not justify a verdict in favor of Plaintiffs, unless the violation of law was a proximate or legal cause of an injury or damage found by you to have been suffered by Plaintiffs.  *Id.*

96.     When the negligent acts or omissions of two or more persons contribute concurrently, and as proximate causes, to the injury and damage of another, each of such persons is liable. This is true regardless of the relative blame or fault of each.  O'MALLEY § 120.50.

97.     Since a corporation can act only through its employees or other agents, the burden is on Plaintiffs to establish by a preponderance of the evidence that the negligence of one or more employees or other agents of Defendants was a proximate cause of any injuries and consequent damages sustained by Plaintiffs.  Any negligent act or omission of an employee or other agent of a corporation, in the performance of that person's duties, is held in law to be the corporation's negligence.  O'MALLEY § 120.51

98.     An injury or damage is proximately caused by an act or a failure to act whenever it appears from the evidence that the act or failure to act played a substantial part in bringing about or actually causing the injury or damage, and that the injury or damage was either a direct result or a reasonably probable consequence of the act or omission.  O'MALLEY § 120.60

99.     The law does not recognize only one proximate cause of an injury or damage, consisting of only one factor or thing, or the conduct of only one person. On the contrary, many factors or things, or the conduct of two or more persons, may operate at the same time, either independently or together, to cause injury or damage; and in such a case, each may be a proximate cause.  O'MALLEY § 120.61

**<u>CONTRIBUTORY NEGLIGENCE CHARGE:</u>**

100.    I have already explained that you may find Defendant liable to Plaintiff if Defendants were negligent, and if such negligence played a part in causing Plaintiffs' injuries.  In this case, however, Defendants have contended that Plaintiffs' injuries were due, at least in part, to Plaintiffs' own negligence, in particular, Michael Stepski's negligence.  This is referred to as "contributory negligence."  By the defense of contributory negligence, a defendant in effect alleges that, even though the defendant may have been guilty of some negligent act, the plaintiff himself, by his own failure to use ordinary care under the circumstances for his own safety, at the time and place in question, also contributed one of the proximate causes of any injuries and damages plaintiff may have suffered.  The burden is on the defendant alleging the defense of contributory negligence to establish, by a preponderance of the evidence in the case, the claim that the plaintiff himself was also at fault, and that, subject to the *Pennsylvania* rule which I have already discussed, such fault contributed to one of the proximate causes of any injuries and consequent damages the plaintiff may have sustained.  DEVITT, § 80.22.

101.    However, even if you find that Plaintiffs were negligent under the standards that I will describe in a moment, that does not prevent Plaintiffs from recovering damages if you find that Defendant's negligence also played a part in causing Plaintiffs' injuries.  Rather, it would result in a reduction of Plaintiffs' damages in proportion to the amount of negligence attributable to Plaintiffs, as I will explain in detail shortly.  DEVITT, § 90.03.

102.    If you find that both vessels violated the COLREGS and that those violations caused the collision, you are required to allocate liability between the two vessels proportionately to their comparative degrees of their fault.  *United States v. Reliable Transfer Co.*, 421 U.S. 397, 410(1975).  In apportioning liability, the analysis hinges on the relative culpability of the parties' actions, rather than their respective degrees of physical causation.  *In re Ocean Foods Boat Co.*,

692 F. Supp. at 1264; *Moore v. Matthews*, 445 F. Supp. 2d 516, 522 (D. Md. 2006); *Complaint of Seiriki Kisen Kaisha*, 629 F. Supp. 1374, 1381 n.3 (S.D.N.Y. 1986).  By this I mean, you are to determine relative liability based on the blameworthiness of each party relative to the other.  It is the quality of the collective errors of each party and not the quantity that determines relative fault.  *Mar. & Mercantile Int'l L.L.C.*, 2007 U.S. Dist. LEXIS 19792 at *66.

103.   Now, assuming that you find by a preponderance of the evidence that the Defendants were negligent and that their negligence played a part in causing Plaintiffs' injuries; and assuming that you find by a preponderance of the evidence that Plaintiffs were negligent and that their negligence played a part in causing their own injuries, you must then determine the percentage to which Plaintiffs' negligence, if any, contributed to their injuries.  You will report this percentage on the special verdict form and then after you return your verdict, I will decrease the amount of damages you have found, if any, by the percentage by which you find their negligence contributed to their own injuries.

104.   As I will remind you when I discuss damages in detail, if you reach the issue of damages, you should address the question of damages as a separate matter from the issue of comparative negligence.  DEVITT § 90.29

105.   If you find that Michael Stepski's negligence was the sole case of his and Geal Roderick's and Benjamin Schober's injuries, then you must enter judgment in favor of Defendants.  *Johannessen v. Gulf Trading & Transportation Co.*, 633 F. 2d 653, 655 (2d Cir. 1980); *Sotell v. Maritime Overseas Inc.*, 474 F. 2d 794, 796 (2d Cir. 1973); *Passantino v. States Marine Lines, Inc.*, 299 F. Supp. 12523, 1255-6 (S.D.N.Y. 1969); *Lombas v. Moran Towing & Transportation Co., Inc.*, 899 F. Supp. 1089, 1095 (S.D.N.Y. 1995).

## DAMAGES CHARGE:

601230.00001/6838030v.1

106.    You reach the issue of damages only if you find that the Plaintiffs have established by a preponderance of the evidence that the Defendants were negligent, and that such negligence played a part in bringing about Plaintiffs' injuries.

107.    The fact that I charge you on the issue of damages does not mean that Plaintiffs are entitled to prevail -- that is for you to decide.  I instruct you on this subject only in the event that you decide that Plaintiffs have sustained their burden of proof as to negligence.  DEVITT § 90.42.

108.    Plaintiffs cannot recover damages from Defendants for any physical condition, disability or consequential damages which were not proximately caused by any negligence of the Defendants.  You are not to award damages for any injury or condition from which the Plaintiffs may have suffered or may now be suffering, unless it has been established by a preponderance of the evidence that such injury or condition was proximately caused by the accident in question. DEVITT § 85.15; *Evan v. S.J. Groves & Sons*, 315 F. 2d 335 (2d Cir. 1963); *Akers v. Norfolk v. Western Ry. Co.*, 417 F. 2d 632 (4th Cir. 1969); *Jury Instructions and Forms for Federal Civil Cases*, 28 F.R.D. 401, 446.

109.    Your award must be fair and just.  It should neither be excessive nor inadequate; it should be reasonable in light of the facts which you find to have been proven by the evidence presented.  DEVITT, Instruction 90-42.  In other words, if you find that one or more of the Plaintiffs sustained any damages which were caused by any negligence of the Defendants, your verdict may award such Plaintiff only such damages as will fairly and reasonably compensate him for the injuries and consequential damages which you find, from a preponderance of all the credible evidence in the case, he has sustained as a result of such negligence.  Each Plaintiff must prove the amount of his recoverable damages with reasonable certainty; you are not permitted to

award speculative damages.  This means you are not to include in your verdict any amount for any loss which, although possible, is wholly remote or is supported only by conjecture and not evidence.  DEVITT § 78.08; *W.L. Harley & Co. v. County of Niagara*, 388 F. 2d 746 (2d Cir. 1967).

110.    Under the maritime law, Plaintiffs, if they have sustained their burden of proof, may recover for:

   a.    Loss of earnings from the time of the accident to the present, and in the future;

   b.    Pain, suffering and mental anguish, including the effect of his injury on the normal pursuits and pleasures of life, experienced from the date of the accident to the present; and

   c.    Pain, suffering and mental anguish, if any, as you may reasonably find he is likely to endure in the future as a result of his injury.

DEVITT § 90.43.

111.    If you find that one or more of the Plaintiffs had a pre-existing condition, and that that condition would eventually worsen, the Defendants are entitled to have the Plaintiffs damages discounted to reflect the proportion of damages that would have been suffered even in the absence of the subsequent injury on board the vessel.  *Maurer v. United States*, 668 F.2d 98, 100 (2d Cir. 1981).

112.    You are instructed that any person who claims damages as a result of an alleged wrongful act of another has a duty under the law to use reasonable diligence under the circumstances to "mitigate," or minimize, those damages.  O'MALLEY § 128.50.

113.    A Plaintiff must exercise reasonable diligence in attempting to secure gainful employment, or his alleged loss of earnings will be considered to result from his own choice rather than from the injury claimed.  *Burden v. Evansville Materials, Inc.*, 636 F.Supp. 1022 (W.D. Ky. 1986).

114.    Plaintiffs' duty to mitigate their losses includes utilizing their prior skills and education to secure the best available employment within their respective limitations.  *Williams v. United States*, 712 F. Supp. 1132, 1129 (S.D.N.Y. 1989).

115.    The law also imposes on an injured person the duty to take advantage of reasonable opportunities he may have to obtain treatment so as to prevent the aggravation of his injuries, so as to reduce or minimize the loss or damage.  If you find the Defendants are liable and that one or more of the Plaintiffs have suffered damages, the Plaintiffs may not recover for any item of damage they could have avoided through such reasonable effort.  If the Plaintiffs unreasonably failed to take advantage of an opportunity to lessen their damages, you should deny recovery for those damages which he would have avoided had they taken advantage of the opportunity.  O'MALLEY § 128.50.

116.    Bear in mind that the question whether the Plaintiffs acted "reasonably" with respect to the mitigation of damages is one for you to decide, as sole judges of the facts.  [CITE]

117.    In deciding whether to reduce Plaintiffs' damages due to some failure to mitigate you must weigh all the evidence in light of the particular circumstances of the case, using sound discretion in deciding whether the Defendants have satisfied their burden of proving that the Plaintiffs' conduct was not reasonable.  DEVITT § 77.7.

118.    There are two categories of lost earnings: past lost earnings, that is, from the date of injury to trial; and future lost earnings, that is, from the date of trial into the future.  In awarding past lost earnings you must determine what Plaintiffs' usual compensation would have been between the time of the accident and now, after taxes.  DEVITT § 90.47.

119.    In considering lost future earnings, it is assumed that if the injured party had not been disabled, he would have continued to work and to receive wages for some period of time.

The purpose of this element of damages is to compensate the worker for the loss of that income. To determine the award for this element, if any, you must determine how many additional years each Plaintiff would have worked, as well as what his annual compensation would have been during each (future) year. Regarding the number of years which each Plaintiff would have worked, it is for you to determine how many additional years the Plaintiff would have worked. DEVITT § 90.48.

120.    If you find that one or more of the Plaintiffs is entitled to an award of damages for loss of future earnings, there are two particular factors you must consider. First, you should consider loss after deduction of income taxes; that is, you should determine the actual or net income that each Plaintiff has lost or will lose, taking into consideration that any past or future earnings would be subject to income taxes. You must award the Plaintiff only his net earnings after tax. This is so because any award you may make here is not subject to income tax. The federal or state government will not tax any amount which you award on this basis. DEVITT § 90.50; O'MALLEY § 128.90.

121.    Second, an amount to cover a future loss is more valuable to the Plaintiff if he received the amount today than if he received the same amount in the future. Therefore, if you decide to award any Plaintiff an amount for damages which you reasonably believe he will suffer in the future, you must discount the future damages to their present value by considering what return would be realized on a relatively risk free investment. *Jones & Loughlin Steel Corp. v. Pfeifer*, 462 U.S. 523 (1983).

122.    Once you have determined the appropriate discount rate, if any, you should apply it to the damages awarded for future losses for each year separately. The sum of all of the

-40-

different annual figures after discounting equals the award for future losses.  *Jones & Loughlin, supra.*

123.    If you should find that one or more of the Plaintiffs are entitled to a verdict, in fixing the amount of your award you may not include in, or add to an otherwise just award, any sum for the purpose of punishing the Defendants, or to serve as an example or warning for others.  Nor may you include in your award any sum for court costs or attorneys' fees.  DEVITT § 85.16.

124.    If you make any award of damages, such award is not subject to federal income taxes and you should not consider such taxes in determining the amount of damages, if any.  DEVITT § 90.42.

125.    If you find that one or more of the Plaintiffs is entitled to a verdict in accordance with these instructions, but do not find that the Plaintiff has sustained substantial (actual) damages, then you may return a verdict for the Plaintiff in some nominal sum such as one dollar (on account of actual damages).  DEVITT § 85.18.

## MAINTENANCE AND CURE CHARGE

126.    Defendants have alleged that Plaintiff Michael Stepski failed to provide "maintenance and cure" for his crew men, Plaintiffs Geal Roderick and Benjamin Schober.  The employer of a seaman who suffers injury while in the service of the ship has a non-delegable duty to provide his employee with medical care and treatment (cure) as well as the means of maintaining himself while recuperating (cure).  *Vaughn v. Atkinson*, 369 U.S. 527 (1962); *Alvarez v. Bahamas Cruise Line, Inc.*, 898 F. 2d 312 (2d Cir. 1990).

127.    A seaman is entitled to maintenance and cure even though he may not have been injured as a result of any negligence on the part of his employer. To recover maintenance and

cure, the Plaintiff need only show that he suffered injury or illness while in the service of the vessel on which he was employed as a seaman, without willful misbehavior on his part. *Calmar S.S. Corp. v. Taylor*, 303 U.S. 525 (1938).

128.    The "cure" to which a seaman may be entitled includes the cost of medical attention, including the services of physicians, psychologists and medicines.  *Moran Towing v. Lombas*, 53 F. 3d 24 (2d Cir. 1995).

129.    Maintenance is the cost of food and lodging, and transportation to and from a medical facility. *Vaughn v. Atkinson*, 369 U.S. 527 (1962); *Alvarez v. Bahamas Cruise Line, Inc.*, 898 F. 2d 312 (2d Cir. 1990).

130.    A seaman is entitled to receive maintenance and cure from the date he leaves the vessel until he reaches the point of what is called "maximum cure." Maximum cure is the point at which no further improvement in the seaman's medical condition is reasonably expected. Thus, if it appears that a seaman's condition is incurable, or that the treatment will only relieve pain but will not improve a seaman's physical condition, he has reached maximum cure. The obligation to provide maintenance and cure usually ends when qualified medical opinion is to the effect that maximum possible cure has been accomplished.  *Farrell v. United States*, 336 U.S. 511, 513 (U.S. 1949); *Desmond v. United States*, 217 F.2d 948 (2nd Cir. 1954), *cert denied*, 404 U.S. 825 (1971).

131.    If you decide that Plaintiffs Roderick and Schober were entitled to maintenance and  cure  from  Plaintiff  Stepski  you  must  determine  when  Stepski's  obligation  to  pay maintenance began and when it ends. One factor you may consider in determining when the period ends is the date when the seaman resumed his employment, if he did so. However, if the evidence supports a finding that economic necessity forced the seaman to return to work prior to

reaching maximum cure, you may take that finding into consideration in determining when the period for maintenance and cure ends.  *Vaughn*, 369 U.S. at 538; *Colburn v. Bunge Towing, Inc.*, 883 F.2d 372 (5th Cir.1989).

132.    If you find that Plaintiff Stepski failed in his obligation to provide maintenance and the condition of Plaintiffs Roderick and/or Schober was worsened as a result, you should consider what damages may be reasonably awarded to Roderick and Schober as a result of the failure of Stepski to provide the required maintenance and cure and report same on the special verdict form.

Dated:        New York, New York
              March 15, 2010

                                        BLANK ROME LLP

                                        //s//Richard V. Singleton
                                        Richard V. Singleton
                                        Attorneys For Defendants
                                        The Chrysler Building
                                        405 Lexington Avenue
                                        New York, New York  10174-0208

                                        FREEHILL HOGAN & MAHAR LLP

                                        //s// Michael Unger
                                        Michael Unger
                                        Attorneys For Defendants
                                        80 Pine Street
                                        New York, New York 10005-1759

601230.00001/6838030v.1